**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | Case No. 8:16-cv-02549-EAK-TBM |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GABY FRAIFER, TELE-CENTER, INC., | ) | |
| and PLANET TELECOM, INC., | ) | |
| individually and together d/b/a | ) | |
| UlaiTV, PlanetiTV, and AhlaiTV, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Plaintiff DISH Network L.L.C. ("DISH") moves under Fed. R. Civ. P. 12(b)(6) to dismiss

all three counterclaims filed by Defendants Gaby Fraifer, Tele-Center, Inc., and Planet Telecom,

Inc. because they fail to state a claim upon which relief can be granted.

## I.    INTRODUCTION

DISH initiated this action for direct copyright infringement against Defendants based upon

their unauthorized retransmission of international television channels that are licensed exclusively

to DISH.  (Dkts. 1, 62 [original and amended complaints].)  Defendants answered the amended

complaint, and asserted counterclaims against DISH for conversion, trespass to chattel, and breach

of contract.  (Dkts. 77-79.)[1]

Defendants' claims are peppered with vague references to DISH allegedly converting their

"channels," intercepting and hacking their "URLs," and violating and trespassing into their "black

boxes." [2]  Nowhere do Defendants identify these channels and URLs or DISH's conduct allegedly

---

[1] References to "Countercl." means the counterclaim portion of each Defendant's consolidated answers, affirmative defenses, and counterclaims filed at Dkts. 77-79, which contain identical allegations and paragraph numbers.

[2] "Black boxes" presumably refers to Defendants' UlaiTV and AhlaiTV branded set-top boxes.  The term "black box" generally means an unauthorized device used to receive television services without making the required payment for the services.  *See, e.g.*, *CSC Holdings, Inc. v. Kimtron, Inc.*, 47 F. Supp. 2d 1361, 1363 (S.D. Fla. 1999).

constituting conversion, interception, hacking, or trespass with respect to these unnamed channels, URLs, and the black boxes.  It is unclear whether Defendants are complaining that DISH accessed the URLs, viewed the channels, retransmitted the channels to DISH's subscribers, sent copyright take down notices to third parties based on evidence gathered by non-parties using the black boxes, or something entirely different.  All of these theories of liability are equally tenuous, but in no case do Defendants explain their claims or the alleged facts underlying those claims.

Defendants' conversion claim should be dismissed because they deny having a possessory interest in the unidentified "channels" and "URLs" that were allegedly converted.  Defendants also fail to state any facts supporting their allegation that DISH converted the channels and URLs, and they do not allege that DISH deprived them of the channels or URLs, as required to plead a conversion claim.  Defendants' trespass claim also fails because they do not claim any possessory interest in the black boxes and URLs underlying that claim, and they do not allege that DISH's purported trespass resulted in disposition, loss of use, or impairment of any black boxes or URLs.

Defendants' breach of contract claim should also be dismissed.  Defendants do not allege that DISH had knowledge of and assented to the unsigned "contracts," which appear to be versions of the terms of use posted on secondary pages of Defendants' websites.  Also, Defendants neither identify any provision of the "contracts" that was allegedly breached, nor DISH's conduct claimed to constitute a breach of that provision.  The idea that DISH entered into a contract with Defendants is directly at odds with their outright denial of being involved with the websites from which these "contracts" appear to originate, as well as Fraifer's claim that he has done nothing in his individual capacity concerning UlaiTV and AhlaiTV.

Altogether, Defendants' counterclaims consist of a bare recital of some of the elements of a cause of action for conversion, trespass to chattel, and breach of contract.  And, these unsupported

allegations largely conflict with other allegations that Defendants make in this case in an effort to escape liability on DISH's copyright infringement claim. Defendants' counterclaims are properly dismissed.

## II.   ARGUMENT & AUTHORITIES

### A.   Legal Standard

"Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Acosta v. United Rentals (N. Am.), Inc.*, No. 8:12-cv-01530-EAK-TGW, 2013 WL 869520, at *2 (M.D. Fla. Mar. 7, 2013). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' … Nor does a complaint suffice it if tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, the claim must include "[f]actual allegations [that are] enough to raise a right to relief above the speculative level," that is "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### B.   Defendants' Counterclaim For Conversion Should Be Dismissed

"Under Florida law, a conversion is 'an unauthorized act which deprives another of his property permanently or for an indefinite time.'" *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001) (quoting *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla. Dist. Ct. App. 1984)).

Defendants allege the following in support of their counterclaim for conversion:

- DISH "converted … the channels contained in the black boxes of Defendants;"

- "DISH intercepted the URL from or off of the black boxes of Defendants;"

- "DISH took the URL and/or channels off of the black boxes of Defendants;"

- DISH "converted [the channels] to its own use and possession;"

- "[T]he channels and/or the URLs were the property of Defendants;"

- DISH "owes to Defendants the value of the channels that it converted."

(Countercl. ¶¶ 4-7.)  For several reasons, Defendants' conclusory allegations fail to state a claim for conversion.

*First*, Defendants are required to have "possession or an immediate right to possession of the converted property at the time of conversion."  *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005) (applying Florida law).  The alleged property underlying Defendants' conversion claim is the "channels" and "URLs" supposedly taken "off of the black boxes of Defendants."  (*Id.* ¶¶ 4-6.)  The channels and URLs, however, are not named or otherwise identified by Defendants. Nor do Defendants identify their alleged "property" interest in the channels and URLs.  Defendants cannot have pleaded sufficient facts to show they have any possessory interest in the channels and URLs when they fail to even identify the channels and URLs at issue.

Furthermore, Defendants make a number of specific allegations directly contradicting their claim of holding a possessory interest in the channels that are accessible using their black boxes. Defendants refer to these channels as "publicly broadcast channels."  (Dkts. 77-79, Defs.' Second Affirmative Defense.)  They also state that "Defendants do not transmit the subject channels."  (*Id.*, Defs.' Third Affirmative Defense.)  Defendants claim to do "nothing more than sale [sic] a box" that is "already programmed by another entity" to access the channels.  (*Id.*, Defs.' Third and Sixth Affirmative Defenses.)  The "contracts" attached to Defendants' counterclaims further allege that Defendants are "not responsible for the content and do[] not guarantee nor claims [sic] <u>any rights</u>

to the content," and are only providing links to "the channels as they are available on the Internet" from "third-party streaming providers." (*Id.* at pp. 16, 25 [emphasis added].) These allegations, if accepted as true, demonstrate that Defendants did not have "possession or an immediate right to possession of the [channels] at the time of conversion." *Bailey*, 419 F.3d at 1212.[3]

Defendants also make numerous specific allegations that are inconsistent with their general claim that the URLs constitute their "property." Defendants allege that the black boxes from which DISH purportedly acquired these URLs are "pre-programmed before the purchase of the box by Defendants." (Dkts. 77-79, Sixth Affirmative Defense.) According to Defendants, they "did not program the boxes," "were not involved in any programming," and are "the mere seller of a box" that is "pre-arranged and pre-programmed." (*Id.*, Sixth and Seventh Affirmative Defenses.) The "contracts" attached to the counterclaim similarly allege that Defendants' black boxes "contain[] several links to third-party streaming providers," but Defendants have "no control over [and are] not responsible for … any such streaming link." (*Id.* at pp. 16, 25 [emphasis added].) Wherever Defendants have actually asserted facts concerning any URL, they disclaimed having a possessory interest in that URL, as required to plead a conversion claim. *See Bailey*, 419 F.3d at 1212.

In sum, Defendants' bald allegation that the channels and URLs are their "property" does not save their conversion claim, especially in light of the more specific allegations in Defendants' exhibits and other portions of their pleading that deny any such property interest. *See Gross*, 340 F. App'x at 533 (stating that, in the motion to dismiss context, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control") (quotations

---

[3]The "contracts" attached to Defendants' counterclaim and their affirmative defenses are properly considered in ruling on this motion. *See Gross v. White*, 340 F. App'x 527, 533 (11th Cir. 2009) (finding court "may consider not only the complaint but also the exhibits attached to it" in deciding a motion to dismiss); *La. Mach. Co. v. Devon Shipping, Inc.*, No. 3:09-cv-957-J-32JRK, 2010 WL 1523032, at *2 (M.D. Fla. Apr. 15, 2010) (stating court may consider defendant's answer and affirmative defenses when ruling on a motion to dismiss counterclaims).

omitted); *Anthony Sterling, M.D. v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) ("While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent … .") (Kovachevich, J.); *Casey v. Fl. Coastal Sch. of Law, Inc.*, No. 3:14-cv-01229-J-39PDB, 2015 WL 10818746, at *2 (M.D. Fla. Sept. 29, 2015) (adopting magistrate's finding that allegations in the complaint were "internally inconsistent and need not be considered in deciding the Motion to Dismiss," noting that the "ruling is consistent with precedent in this district").

    *Second*, Defendants do not plead any facts to support their conclusory assertions that DISH engaged in conduct amounting to conversion, i.e., an "unauthorized act" that deprived Defendants of the channels or URLs. *Fogade*, 263 F.3d at 1291. Defendants allege that DISH "converted" or "took" the unnamed channels, and "intercepted" or "took" the unidentified URLs. (Countercl. ¶¶ 4-7.) Nowhere do Defendants state what DISH allegedly did to convert these channels and URLs. And, as explained above, Defendants' allegations are subject to various interpretations. *See supra* Part I. Defendants' allegations of an "unauthorized act" are nothing more than "naked assertion[s] devoid of further factual enhancement," and therefore fail to plead a conversion claim. *Iqbal*, 556 U.S. at 678 (quotations omitted).

    Additionally, Defendants' broad allegations of conversion are contradicted by Defendants' pleadings and common sense. Defendants erroneously contend that channels are "contained in the black boxes of Defendants," and DISH "took the … channels off of the black boxes." (Countercl. ¶¶ 4, 6.) Defendants' black boxes do not store the channels; rather, the channels are streamed over the Internet to the black boxes from remote servers. (*Id.*, Sixth and Seventh Affirmative Defenses; "contracts" at pp. 16, 25.) Defendants' references to "URLs" and "URLs for particular channels"

further recognize that the channels do not reside within the black boxes, but are retransmitted from outside locations using the Internet.  (*See id.* ¶¶ 5, 11.)  Defendants' allegation that channels were taken off the black boxes is fundamentally flawed, and provides no basis for a conversion claim.[4]

*Finally*, Defendants do not allege that DISH's conduct "deprive[d]" Defendants or anyone else of the channels or URLs either "permanently or for an indefinite time.'"  *Fogade*, 263 F.3d at 1291.  Defendants merely allege that the channels (but not the URLs) were put into DISH's "own use and possession," without providing any supporting facts.  (Countercl. ¶ 4.)  Defendants do not plead that DISH did anything to render the channels inaccessible to Defendants or users of their black boxes.  If Defendants' theory of "use and possession" is that DISH purportedly watched the channels or copied the channels by retransmitting them to DISH subscribers (which DISH certainly did not do), such alleged actions would not deprive Defendants or their users of the channels.  *See, e.g., Santilli v. Cardone*, No. 8:07-cv-308-T-23MSS, 2008 WL 2790242, at *5 (M.D. Fla. July 18, 2008) (dismissing conversion claim because "copying a plaintiff's work amounts to an invasion of an intangible property right but fails to deprive the plaintiff of his property").[5]  There is no need to guess what Defendants mean by "use and possession" because it is clear that Defendants fail to plead any deprivation of property to support a conversion claim.  *See Fogade*, 263 F.3d at 1291; *Stewart v. Sotolongo*, No. 8:07-cv-54-T-24 MAP, 2007 WL 1796545, at *12 (M.D. Fla. June 21, 2007) (dismissing conversion claim for failure to allege deprivation of property).

---

[4]Defendants' allegation that "DISH intercepted the URL" is likewise illogical.  "Intercept" generally means to acquire or interrupt something during transit.  *See* https://www.merriam-webster.com/dictionary/intercept.  A URL is simply an address for a resource located on the Internet, and therefore is not susceptible to being "intercepted."

[5]Preemption under the Copyright Act may also preclude a conversion claim based on DISH allegedly retransmitting the channels to its subscribers without authorization.  *See id.* at *5 n.3 (noting conversion claim was likely preempted by section 301(a) of the Copyright Act); *Jaggon v. Rebel Rock Entm't, Inc.*, No. 09-61144-Civ., 2010 WL 3468101, at *3-4 (S.D. Fla. Sept. 1, 2010) (dismissing conversion claim as preempted under the Copyright Act).

**C.      Defendants' Counterclaim For Trespass Should Be Dismissed**

"Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. Dist. Ct. App. 2001) (quotations and citation omitted); *see* Restatement (Second) of Torts § 217 (1965) (stating trespass to chattel requires "dispossessing another of the chattel" or "using or intermeddling with a chattel in the possession of another").

Defendants' trespass claim is based on the following allegations:

- "Defendants owned and controlled the contents of the black boxes;"

- DISH "purchased the right to use a black box from Defendants;"

- DISH "went into the black box and violated the black box … by 'hacking' the URLs for particular channels;

- DISH "used modern technology to convert the Apps/Channels to its own use;"

- "By entering the black box …, [DISH] committed a trespass into the computer technology and the actual black box of Defendants;"

- "Defendants suffered damages as a result of [DISH's] hacking and trespass."

(Countercl. ¶¶ 9-14.)  Defendants' trespass claim should be dismissed for at least two reasons.

*First*, Defendants do not plead that DISH trespassed with respect to *their* personal property. Defendants' allegation is that DISH trespassed "[b]y entering the black box."  (*Id.* ¶ 13; *see also* ¶ 11 [stating DISH "went into the black box and violated the black box"].)  The black box, however, was allegedly "purchased" by DISH.  (*Id.* ¶ 10.)  Therefore, Defendants' own allegations show the black box is not personal property in the possession of Defendants.  Defendants also deny having any possessory interest in the URLs allegedly contained in these black boxes.  *See supra* Part II.B. As a consequence, Defendants' allegation that DISH "'hack[ed]' the URLs for particular channels" likewise does not support a trespass claim.  (Countercl. ¶ 11.)

8

*Second*, Defendants do not plead that DISH's alleged trespass resulted in disposition, loss of use, or impairment of any personal property.  *See* Restatement (Second) Torts § 218 (1965) (stating that trespass to chattel requires disposition, loss of use, or impairment of the chattel; bodily harm to the possessor; or harm to another person or object in which the possessor has a protectable interest).  Defendants' only allegation even remotely applicable states that "Defendants suffered damages."  (Countercl. ¶ 14.)  Noticeably absent are any supporting facts, including any allegation that DISH interfered with Defendants' use or possession of a black box, URL, or other personal property of Defendants, or otherwise damaged any personal property of Defendants.

## D.   Defendants' Counterclaim For Breach Of Contract Should Be Dismissed

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."  *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)).  "To prove the existence of a contract, [Defendants] must plead:  (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms."  *Kolodziej v. Mason*, 774 F.3d 736, 740-41 (11th Cir. 2014) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Defendants make the following allegations in support of their breach of contract claim:

- "Defendants had a Contract with the customer for … the black box which was to watch and not violate[hack] into the apps of the black box;"

- DISH "purchased a black box from Defendants thereby accepting the customer offer of the contract with Defendants;"

- "As part of the purchase of the black box …, [DISH] agreed to, or accepted, the terms of the customer contract;"

- DISH "breached its contract with Defendants by 'hacking' into the black box;"

- "As a result of said breach of the contract, the Defendants suffered damages."

(Countercl. ¶¶ 16-20.)  Examples of the alleged "contracts" are also attached as exhibits.  (*Id.*, Exs. 1(a) and 1(b).)[6]  Defendants do not state a claim for breach of contract for a number of reasons.

*First*, Defendants fail to plead the existence of a valid contract with DISH.  Defendants do not identify the source of the EULA, nor is it apparent from the face of the document.  The EULA appears to be a copy of the "User Agreement" found on Defendants' websites.[7]  The EULA is not executed by DISH or Defendants.  Further, there is nothing in the EULA that indicates DISH was required to click on an "I agree" box or take any other affirmative action to accept the EULA, and Defendants do not plead any facts to the contrary.  Accordingly, the EULA is at best a browsewrap agreement.  *See Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. Dist. Ct. App. 2017) ("A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process.").

As observed in *Vitacost.com*, "'[b]rowsewrap' agreements have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonable prudent person on inquiry notice."  *Id.* (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)).  Consequently, a plaintiff must plead "sufficient facts to plausibly establish that defendants … were on actual or constructive notice of the terms and conditions posted on [its] website."  *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937-38 (E.D. Va. 2010).

Defendants do not plead that DISH had any knowledge of the EULA, which is fatal to their breach of contract claim.  *See id.* (dismissing breach of contract claim based on browsewrap

---

[6]The documents are identified as an end user license agreement and terms of use for the AhlaTV/AhlaiTV set-top box and service (Ex. 1(a)) and UlaiTV set-top box and service (Ex. 1(b)).  The documents are substantially the same for purposes of this motion, and collectively referred to herein as the "EULA."

[7]*See* http://www.ulaitv/ulaitv/agreement.html  and  http://www.planeitv.com.au/iptv/user-agreement.html.  For purposes of this motion to dismiss, however, it is sufficient to note that Defendants fail to identify how the alleged "contracts" came into being.

agreement); *Be In, Inc. v. Google, Inc.*, No. 12-cv-03373-LHK, 2013 WL 5568706, at *8-9 (N.D. Cal. Oct. 9, 2013) (granting motion to dismiss and finding allegations that "Defendants agreed to [the browsewrap agreement] when they used and/or visited the … website," which had a "link" to that agreement, were "insufficient to establish contract formation"); *Olney v. Job.com, Inc.*, No. 1:12-cv-01724-LJO-SK, 2014 WL 4660851, at *4 (E.D. Cal. Sept. 17, 2014) (dismissing breach of contract claim and finding allegations that website provided a link to the browsewrap agreement insufficient to plead "notice of term's existence or that [defendants] assented to them by virtue of their use of the website alone").  Dismissal is especially appropriate here because Defendants fail to plead *any* facts concerning DISH's purported knowledge of or assent to the EULA.[8]

  *Second*, Defendants fail to allege any material breach of the EULA by DISH.  Defendants must plead a "particular contract term and precisely how [DISH] materially breached it."  *Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 957 (11th Cir. 2014) (affirming the dismissal of breach of contract claim); *Whitney Nat'l Bank v. SDC Cmtys., Inc.*, No. 8:09-cv-01788-EAK-TBM, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010) (Kovachevich, J.) (dismissing claim for breach of contract where plaintiff failed "to allege the specific provision of the contract allegedly breached"); *Cruz v. Underwriters at Lloyd's London*, No. 8:14-cv-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached.").  Defendants do not plead any specific term of the EULA that was allegedly violated, and therefore fail to state a claim for breach of contract.[9]

---

[8]Courts have found browsewrap agreements isolated from the point of purchase unenforceable for lack of knowledge.  *See Vitacost.com*, 210 So. 3d at 765-66; *Herman v. Seaworld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 WL 7447555, at *4-6 (M.D. Fla. Aug. 26, 2016); *IT Strategies Group, Inc. v. Allday Consulting Group, L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013).

[9]Defendants also appear to be unsure which version of the EULA, if any, was accessible on their websites at the time of DISH's alleged purchase of the black box.  Defendants do not expressly claim that DISH entered the EULA; rather, Defendants claim this is the type of agreement entered by their customers.  (Countercl. ¶¶ 16-17.)

*Third*, Defendants do not sufficiently identify DISH's conduct purportedly constituting the breach.  The only allegation is that DISH "breached its contract with Defendants by 'hacking' into the black box."  (Countercl. ¶ 19.)  Defendants provide no explanation or factual support for this alleged "hacking."  Defendants' only other reference to "hacking" is located in the trespass claim and concerns DISH allegedly "'hacking' the URLs for particular channels."  (*Id.* ¶ 11.)  Defendants do not expound on what it means to "hack" a URL, nor is this allegation consistent with common use of the term "hack."[10]  Defendants fail to state "precisely how [DISH] materially breached" the EULA.  *Hearn*, 588 F. App'x at 957; *see Mackroy-Snell v. Lake Wales Charter Sch.*, No. 8:06-cv-1380-T-30MAP, 2006 WL 2864317, at *5 (M.D. Fla. Oct. 5, 2006) (dismissing breach of contract claim because, among other things, plaintiff "failed to specifically describe the alleged breach, set forth the term of the contract that was breached, or explain how Defendant's [conduct] constitutes a breach").

*Finally*, Defendants' own pleadings contradict their allegations of contract formation.  The EULA is found on the websites www.ulaitv.com and www.planetitv.com.au.  The EULA alleges that the agreement is with "AhlaTV" and "UlaiTV," and does not reference Defendants by name.  (*Id.* at pp. 10, 17.)  Defendants outright deny DISH's allegations regarding their use of the fictitious business names AhlaiTV and UlaiTV, and further deny involvement with the websites from which the EULA appears to originate.  (Answer ¶¶ 7, 14-15.)  Defendant Gaby Fraifer has also repeatedly denied engaging in any activity regarding UlaiTV or AhlaiTV in his individual capacity.  (*See id.*, First, Fifth, Eighth, and Fifteenth Affirmative Defenses.)  Thus, where Defendants have provided specific facts bearing on potential contract formation, in the form of their denials, those facts are inconsistent with the conclusory allegation that a contract exists between Defendants and DISH.

[10]"Hack" means "to gain access to a computer illegally."  https://www.merriam-webster.com/dictionary/hack.  A URL is an address for a resource located on the Internet, such as a computer, and therefore itself cannot be "hacked."

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' counterclaims for conversion, trespass, and breach of contract are not adequately alleged, and what is alleged conflicts with other positions advanced by Defendants.  Defendants' counterclaims should be dismissed.

Dated:  May 5, 2017

<div style="margin-left: 40%;">

/s/ Timothy M. Frank
Joseph H. Boyle (*pro hac vice*)
Timothy M. Frank (*pro hac vice*)
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile: (713) 758-0146
Email:  joe.boyle@hnbllc.com
Email:  timothy.frank@hnbllc.com

James A. Boatman, Jr.
Florida Bar No. 0130184
THE BOATMAN LAW FIRM PA
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone:  (239) 330-1494
Facsimile:  (239) 236-0376
Email:  jab@boatman-law.com

Attorneys for Plaintiff DISH Network L.L.C.

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 5, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide notice to Defendants Gaby Fraifer, Tele-Center, Inc., and Planet Telecom, Inc.

/s/ Timothy M. Frank
Timothy M. Frank (*pro hac vice*)
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile:  (713) 758-0146
Email:  timothy.frank@hnbllc.com

Attorney for Plaintiff DISH Network L.L.C.