## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., ) | Case No. 8:16-cv-02549-EAK-TBM |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| GABY FRAIFER, TELE-CENTER, INC., ) | |
| and PLANET TELECOM, INC., ) | |
| individually and together d/b/a ) | |
| UlaiTV, PlanetiTV, and AhlaiTV, ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S MOTION FOR CONTEMPT AND TO COMPEL DISCOVERY

Plaintiff DISH Network L.L.C. ("DISH") moves for a finding of contempt pursuant to Fed. R. Civ. P. 37(b)(2)(A) because Defendants Gaby Fraifer ("Fraifer") and Tele-Center, Inc. ("TCI") failed to comply with this Court's May 24, 2017 order granting in part DISH's motion to compel discovery (the "Order"). (Dkt. 90.) The Court should award attorney's fees to DISH, direct Fraifer and TCI to provide the discovery required by the Order, and compel Fraifer, TCI, and Defendant Planet Telecom, Inc. ("PTI") to provide discovery similar to that previously ordered by the Court.

### I.   INTRODUCTION

DISH asserts a claim for direct copyright infringement against Defendants based on their unauthorized retransmission of international television channels licensed exclusively to DISH (the "Protected Channels"). (Dkt. 62, Am. Compl. ¶¶ 1, 28-29.) Defendants capture broadcasts of this programming abroad, and then retransmit the programming over the Internet to customers of their UlaiTV and AhlaiTV services in the United States, using a network of servers that they control. (*Id.* ¶¶ 18-24.)[1] Defendants profit from the scheme by selling UlaiTV and AhlaiTV set-top boxes

---

[1] DISH's original complaint asserted a direct copyright infringement claim against Fraifer and TCI based upon the UlaiTV service. The amended complaint added PTI and the AhlaiTV service. The discovery requests at issue in the motion to compel were served prior to the amendment, and thus only pertained to Fraifer and TCI and referred to the UlaiTV service. Fraifer and TCI were more

and service plans to their customers. (*Id.* ¶¶ 14-17, 20.) Fraifer is personally liable for his own infringing acts and the infringing activity of his companies, co-defendants TCI and PTI, which he controlled and financially benefitted from. (*Id.* ¶¶ 4-7.)

Defendants answered the amended complaint claiming they "do not transmit the subject channels" and, at most, TCI "only sales a box that is already programmed by another entity." (Dkt. 77-79, at Third Affirmative Defense.) Defendants claim to "own no server at all other than the server" at their place of business, which "is used exclusively for the day to day operations" of TCI. (*Id.*) Defendants reiterate that they "did nothing more than sale a box" and are "the mere seller of a box." (*Id.*, at Sixth and Seventh Affirmative Defenses.) Fraifer and TCI maintained that same position in their original discovery responses, while also refusing to identify the persons allegedly transmitting the Protected Channels on their UlaiTV service or supplying the UlaiTV products to them. Fraifer and TCI similarly refused to disclose their profits relating to UlaiTV, which DISH is entitled to recover as damages on its claim for copyright infringement.

DISH filed its motion to compel discovery from Fraifer and TCI on March 21, 2017. (Dkt. 64.) The Court granted the motion in substantial part on May 24, 2017, compelling Fraifer and TCI to provide three categories of discovery to DISH: (1) discovery concerning distribution of the Protected Channels; (2) discovery concerning manufacturers, suppliers, and resellers; and (3) discovery concerning their profits. (Order at 3-7.) The responses provided by Fraifer and TCI are incomplete as to each category of discovery compelled by the Court, and in many instances those responses are demonstrably false.

For example, Defendants now claim to have control of one server used in transmitting the Protected Channels to their UlaiTV set-top boxes. While certainly a step in the right direction, as

---

recently served with similar discovery concerning the AhlaiTV service, while PTI was served with similar discovery concerning both the AhlaiTV and UlaiTV services.

before Defendants were claiming to be simple resellers of the set-top boxes, that response remains inaccurate. Subpoena responses link Fraifer to multiple servers used in transmitting the Protected Channels on the UlaiTV service. Fraifer also refuses to identify the source or location from which he acquired the Protected Channels, despite evidence showing he was actively involved in adding, removing, and monitoring channels on the UlaiTV service, and therefore has the ability to respond. There are a number of other areas where Fraifer is withholding information concerning the channel distribution process, in direct violation of the Order.

TCI and Fraifer are also withholding information regarding the persons that are facilitating the transmission of the Protected Channels and selling, reselling, and distributing the set-top boxes and service plans. Reference is made to "vendors" assisting in the channel retransmission process, but TCI and Fraifer refuse to identify them by name. TCI and Fraifer also have not identified their resellers or their sources or suppliers of the service plans, and have not produced communications with the sources or suppliers of the service plans or set-top boxes.

Turning to profits, TCI has produced profit and loss statements addressing only part of the relevant time period, and has not produced or even identified the documents on which the revenues and costs set forth in these statements are based. The limited documents TCI has produced show that the costs claimed in the statements are grossly overstated. TCI is also signaling an attempt to carve out a significant percentage of the revenue in the statements on the basis that it corresponds with sales outside the United States, yet provides no records concerning the actual sale of set-top boxes and services plan that may be used to evaluate this claim.

The Court should order Fraifer and TCI to provide the discovery materials required by the Order. The Court should also compel responses to discovery requests that mirror those identified in the Order but pertain to the AhlaiTV service or are directed to PTI, both of which were added

in the amended complaint and thus were not part of DISH's previous motion to compel. Finally, Fraifer and TCI were warned that DISH would be awarded its attorney's fees if they failed to fully comply with the Order. (Order at 7.) Fraifer and TCI have not complied, despite several meet and confer attempts, and therefore attorney's fees are appropriately awarded to DISH. (Declaration of Timothy Frank ¶¶ 8-9, 13, Exs. 10-11, 23 [meet and confer efforts].)

## II.   ARGUMENT

**A.   Fraifer And TCI Refuse To Comply With The Court's Order Compelling Discovery**

### 1.   Discovery Concerning Channel Distribution

Fraifer was required to answer Interrogatory Nos. 4 and 6 by "providing his full knowledge of the servers as well as the processes inquired about." (Order at 5.) Fraifer claims to have no responsive information in his individual capacity, nothing in his capacity as President of TCI, and that in his capacity as President of PTI, Fraifer is aware that PTI "is using one (1) server, starting at the end of 2014 which hosts the software that manages the UlaiTV service." (Frank Decl., App. at 2.)[2] Fraifer alleges that "all of the subject channels came Free to Air (over the internet) to the software hosted by [this] server," and that the "set-top box is pointed back to the server software to play any channel over the TV." (*Id.*)

Fraifer's response is incomplete as he does not identify the IP address or physical location of the server referenced in the response, as required by No. 4. (App. at 2; Dkt. 64 at 4.) Fraifer's answer to No. 4 is also false and incomplete because there is more than one server responsive to this request, for example:

- Fraifer is the customer using the Tulix server with the IP address 162.212.178.189. (App. at 144-146.)

---

[2] "App. at _" is a reference to the Appendix of exhibits attached to the Frank Declaration, and the corresponding page number in the Appendix where the cited material is located.

4

- Fraifer retained Sajid Maqsood of Unisoft Services to provide "network consulting and support," and a second Tulix server having the IP address 162.212.176.79 was used on a demo account held by Maqsood a/k/a "Planet iTV." (App. at 44-45, 148-150.)

- Tulix reported the foregoing demo account "might be abused," "[l]ooks like Arab Content," and gives the IP address 91.151.145.43. (App. at 150.) The corresponding Whois record shows this IP address was assigned to Cetel Gmbh and that Fraifer is the customer of Cetel GmbH that uses the server for "IPTV-STREAMING." (App. at 213-214; *see* App. at 210-211 [payments from PayPal account associated with Defendants to Cetel GmbH].)

- Fraifer made payments to S.S. Telecom & Hosting Group Ltd., noting invoices for a "servers lease" and "Servers and Bandwidth services." (App. at 207-208.)

- Fraifer made payments to JoDi Hosting Service Ltd., noting invoices "for server hosting" and "for UlaiTV Server lease." (*Id.*)

- Webzilla provided customer support communications concerning the server having the IP address 204.155.145.98, which include an email from Fraifer stating "<u>Our server</u> . . . is down since last night, And all the network related to it." (App. at 166 [emphasis added].)

- Akamai provided customer support communications regarding its content delivery network ("CDN") services, including one from Adib Sfeir, an apparent employee of PTI based on his @planet-telecom.com email address, copying Fraifer, stating "we are sending the same exact media profile / stream everywhere and this STB is all on <u>our live production server</u>." (App. at 161 [emphasis added].)

The Tulix, Webzilla, and Akamai servers were all used in the transmission of the Protected Channels on the UlaiTV service. (Frank Decl. ¶ 15.) Fraifer also used the CDN service and server infrastructure provided by Internap and Verizon to transmit the Protected Channels. (*Id.*; App. at

5

170-180, 182-200; *see also* App. at 201-202 [Verizon correspondence indicating Fraifer's account was terminated in light of repeated copyright infringement].)  Simply put, Fraifer's claim of having just one server cannot be reconciled with the evidence in this case.

Furthermore, Fraifer's response to No. 6, generally claiming the Protected Channels "came Free to Air (over the Internet)," is incomplete because he does not identify the source or location where the Protected Channels are acquired, or persons other than Defendants involved in acquiring and transmitting the Protected Channels.  (App. at 2; Dkt. 64 at 4.)  Fraifer is able to identify the sources or locations from which the Protected Channels are acquired, as indicated by the following examples that show Fraifer is actively involved in adding, removing, and monitoring channels on the UlaiTV service:

- Fraifer responded to an infringement notice that DISH sent to Tulix, stating "the Stream in question . . . ha[s] been stopped streaming, and removed from our list."  (App. at 147.)

- Fraifer asked Internap to "[l]et us reactivate the test account, and set couple of streams . . . to retest the network again."  (App. at 172.)  Fraifer also informed Internap there was freezing "on all the streams that we set . . . up on your CDN."  (App. at 180.)

- Fraifer was copied on correspondence wherein Sfeir, the believed employee of PTI, informed Internap that he was "pushing" channels to the Internap CDN service.  (App. at 178.)

- Fraifer was also copied on correspondence wherein Sfeir informs Akamai that he "added Akamai streams on the boxes."  (App. at 160.)

- Fraifer was copied on a number of communications that Sfeir sent to Internap and Akamai to troubleshoot issues concerning retransmission of the Protected Channels, wherein Sfeir provided specific URLs for streams of the Protected Channels.  (App. at 158, 178-179.)

6

- Fraifer informed Internap when channels were working and not working, including MBC, MTV, LDC, and OTV which are among the Protected Channels. (App. at 173-177.)

Fraifer also allegedly has knowledge of persons or entities other than TCI and PTI that are involved in acquiring and transmitting the channels on the UlaiTV service because, as an example, he answered similar discovery served on PTI referencing undisclosed "vendors" allegedly assisting in these processes. (App. at 132 ¶¶ 4, 9, 11.) Fraifer was asked to identify these vendors on the basis that the information is required by the Order, but Fraifer refuses to do so. (App. at 69.)

Moreover, Fraifer may be continuing to improperly withhold information on the basis of the "capacity" argument previously used when responding to DISH's discovery. (*See* Dkt. 64 at 7-8.) Fraifer limits his response to Nos. 4 and 6 to information that he acquired in his individual capacity, in his capacity as President of TCI, and in his capacity as President of PTI. (App. at 2.) Consequently, there is a possibility that Fraifer has additional responsive information he acquired while allegedly acting on behalf of another company that is not a party to this litigation. (App. at 216 [listing additional Florida entities associated with Fraifer].) Fraifer must "provid[e] his full knowledge of the servers as well as the processes" inquired about in Nos. 4 and 6. (Order at 5.)

Finally, Fraifer was ordered to respond to RFP Nos. 4-7 and 9, or state "that he does not have possession or the ability to obtain such matters." (Order at 5; Dkt 64 at 6-7.) Fraifer did not produce documents identifying any specific servers in response to No. 4, or communications with the service providers listed in No. 5, even though such communications are known to exist based on subpoena responses from several of these same service providers, examples of which are cited above. Fraifer also did not produce documents concerning the processes by which channels are acquired and transmitted on the UlaiTV service, including documents identifying the source of the channels, as required by Nos. 6 and 9. Responsive documents exist because Maqsood produced a

diagram that he allegedly obtained from PTI concerning the channel distribution process. (App. at 204-205.) Fraifer also did not properly respond to No. 7, which requests documents that identify the channels transmitted on the UlaiTV service and the time period of the transmission. Fraifer's email to Tulix stating that certain Protected Channels "were removed from our list" indicates that Fraifer has responsive documents to produce. (App. at 147.)

In sum, Fraifer is in contempt of the Order by failing to respond properly to Interrogatory Nos. 4 and 6 and RFP Nos. 4-7 and 9.

2. **Discovery Concerning Manufacturers, Suppliers, And Resellers**

TCI was ordered to respond to Interrogatory Nos. 5 and 6 by identifying "the manufacturers and suppliers of the set-top boxes used in connection with its UlaiTV service (or any other television service carrying the so-called Protected Channels as identified by Plaintiff), as well as the persons or entities facilitating the retransmission of the Protected Channels as identified by Plaintiff, as well as the persons or entities selling or reselling and/or distributing the UlaiTV set-top box and any related service plan or service extension plan." (Order at 5-6.) TCI was required to provide complete contact information for each person and entity, and the total number of set-top boxes and service plans sold or distributed. (*Id.* at 6 n.7.) Fraifer was ordered to respond to Interrogatory Nos. 7-8 served on him, to the extent TCI's responses were incomplete. (*Id.* at 6.)

TCI's responses to Nos. 5 and 6 do not contain the information required by the Order, and instead appear to respond to entirely different interrogatories. (App. at 5.) TCI does not identify the total number of service plans sold or distributed anywhere in its responses. (*Id.*) The service plans are offered as standalone items, and thus the number of set-top boxes sold or distributed is not necessarily the number of service plans sold or distributed. (App. at 218-220.)

TCI also does not identify persons or entities facilitating retransmission of the Protected Channels, which would include the "vendors" discussed above. (App. at 5.) Nor does TCI identify the persons or entities selling, reselling, or distributing the set-top boxes and service plans. (*Id.*) TCI has this information because it previously objected to its production on the basis that "[t]he customer list of Telecenter, Inc. is a trade secret," which the Court overruled. (Dkt. 64 at 9; Order at 5.) And, as demonstrated in the motion to compel, some resellers are referenced on Defendants' website, www.ulaitv.com, while another unidentified person or entity involved in the distribution process is delivering products on Defendants' behalf from Laval, Quebec. (Dkt. 64-1 ¶¶ 15, 17, Exs. 21, 23.) TCI and Fraifer are withholding information identifying these persons and entities that are facilitating transmission of the Protected Channels and selling, reselling, and distributing the set-top boxes and service plans.

Separately, TCI was ordered to respond to RFP Nos. 38 and 41, which request documents identifying each source or supplier of the set-top boxes and service plans, and documents including emails exchanged with the sources or suppliers. (Order at 6; Dkt. 64 at 9-10.)[3] Fraifer was ordered to respond to RFP Nos. 34 and 37 served on him, to the extent TCI's responses were incomplete. (Order at 6.) TCI and Fraifer have not provided documents identifying sources or suppliers of the service plans, as required by Nos. 38 and 34. The invoices that were produced only pertain to the purchase of set-top boxes and do not reference any service plans. (App. at 18-23.)

TCI and Fraifer also have not produced communications with these sources or suppliers of the service plans, or communications with the three alleged suppliers of the set-top boxes identified in the invoices, as required by Nos. 41 and 37. TCI has documents and communications responsive to No. 41 because it previously objected to producing them on the basis of undue burden and trade

---

[3] Pursuant to the Order, the parties conferred and agreed to limit No. 41 to exclude purely personal communications, as distinguished from business-related communications. (Frank Decl. ¶ 8.)

9

secret, which the Court overruled. (Dkt. 64 at 10; Order at 5-6.) TCI has acknowledged "[t]here is a possibility of the existence of emails" responsive to these requests. (App. at 73.) Neither TCI nor Fraifer have produced any emails in response to Nos. 41 and 37.

Altogether, TCI failed to respond properly to Interrogatory Nos. 5 and 6 and RFP Nos. 38 and 41, as required by the Order. Fraifer also failed to comply with the Order because he has not properly responded to the corresponding requests served on him, specifically Interrogatory Nos. 7 and 8 and RFP Nos. 34 and 37.

### 3. Discovery Concerning Profits

TCI was ordered to respond to Interrogatory No. 12, which calls for its revenues, costs, and profits from March 1, 2013 to present, and the documents relied on when preparing the response. (Order at 5-6; Dkt. 64 at 13.) TCI was also ordered to respond to RFP Nos. 33-36 and 39, which seek documents identifying its profits relating to the UlaiTV set-top boxes and service plans, the total number of products acquired or distributed, and each cost incurred and each payment received for these products. (Order at 6; Dkt. 64 at 13-14.)[4] Fraifer was ordered to respond to RFP Nos. 29-33 and 38, to the extent that TCI's responses were incomplete. (Order at 6.) TCI responded to Interrogatory No. 12 by generally referencing its document production, which consists in relevant part of profit and loss statements for the years 2013-2016, invoices and payments for set-top boxes, and payments to Tulix, Akamai/Octoshape, Verizon, and various consultants. (App. at 5, 15-16.)

TCI's profit and loss statements do not adequately identify its revenues, costs, and profits for the applicable time period. The statements do not contain any information pertaining to 2017. (App. at 61-64.) Moreover, the statements do not attach, or even identify, the materials relied upon when calculating the IPTV revenues and costs set forth in the statements for 2013-2016, as required

---

[4] The Order references RFP No. 39, though the RFP at issue was No. 37. (*See* Dkt. 64 at 14.)

10

by DISH's discovery requests. (*Id.*) Based on the limited documents produced by TCI, the costs claimed in the statements are grossly overstated. For example, the statements identify IPTV costs totaling over $1.56 million from 2013-2016. (*Id.*) TCI, however, produced set-top box invoices suggesting approximately $375,000 in costs, and payments to service providers and consultants of approximately $100,000, for a total of just $475,000 – roughly 30% of the IPTV costs claimed in TCI's profit and loss statements. (App. at 18-23, 35-59.) And even as to the set-top box invoices produced, TCI only provided records showing approximately $240,000 was actually paid. (App. at 25-33.)

Similarly, TCI has not produced any documents to support the IPTV revenues claimed in the statements. TCI must have records of the payments received. DISH cannot ascertain whether the revenues claimed in the profit and loss statements are accurate, nor can DISH respond to TCI's claim that 40% of the sales occurred outside the United States. (App. at 5.) TCI signaled that it will attempt to carve out revenues from sales taking place abroad in order to reduce its profits, and in turn DISH's potential recovery in this case. (*Id.*) TCI also did not produce documents reflecting its purchase or distribution of the service plans, as required by Nos. 35-37.

Lastly, Fraifer has not provided his federal income tax returns for 2013-2015, as required by RFP No. 38. As set forth in DISH's motion to compel, tax returns will show financial benefits that Fraifer received from TCI, PTI, and potentially other companies through which he carried out the infringing activities, which is relevant to his individual liability. (Dkt. 64 at 16 [citing cases]; Order at 5 n.6 [noting that a corporate officer may be individually liable for copyright infringement where he has an ability to supervise and a financial interest in the infringing activity].) Fraifer has been operating the UlaiTV service year after year since 2013, and started a second similar service called AhlaiTV during that time. Fraifer is hard pressed to claim these services did not financially

benefit him. Indeed, TCI's profit and loss statements show that it made salary payments totaling over $650,000 from 2013-2016. (App. at 61-64.)[5] Any confidentiality concerns Fraifer may have regarding his tax returns can be addressed through the Court's protective order. (Dkt. 96.)

For these reasons, TCI failed to respond properly to Interrogatory No. 12 and RFP Nos. 33 and 35-37, as required by the Order. Fraifer also failed to comply with the Order because he has not properly responded to RFP Nos. 29, 31-33, and 38.

**B.      Defendants Refuse To Comply With Related Discovery Requests**

DISH filed its motion to compel on March 21, 2017, approximately one week after it filed the amended complaint adding PTI and allegations regarding the AhlaiTV service. (Dkt. 62, 64.) On March 23, 2017, DISH served its Second Set of Interrogatories and Second Set of Requests for Production on TCI and Fraifer, which are similar to the original requests but pertain to AhlaiTV. (App. at 77-87, 95-105.) That same day DISH served its First Set of Interrogatories and First Set of Requests for Production on PTI, addressing both UlaiTV and AhlaiTV. (App. at 110-123.)

PTI responded prior to the Court entering the Order. (App. at 125-133.) PTI's responses mirror the responses of TCI and Fraifer, which the Court found deficient in granting the motion to compel. (*Compare* App. at 125-133 [PTI responses], *with* Dkt. 64 [setting out responses of Fraifer and TCI].) DISH requested that PTI supplement its responses based on the Order. (App. at 137.) In fact, the Order noted that "discovery from PTI is pending [and] the Court would anticipate that the rulings made herein will likely guide the production required by PTI." (Order at 2 n.1.) PTI, nevertheless, refuses to correct its deficient responses. (Frank Decl. ¶ 13.) Accordingly, the Court should compel PTI to respond to Interrogatory Nos. 3-4 and RFP Nos. 8-11 and 13 (concerning

---

[5] DISH served interrogatories asking TCI to identify its employees and payments provided to them, agreeing to limit the scope to employees involved with UlaiTV, and to date only Fraifer has been identified. (*See* Dkt. 64-2 at App. 27, 32, 69.)

channel distribution), Interrogatory Nos. 5-6 and RFP Nos. 38 and 41 (concerning manufacturers, suppliers, and resellers), and Interrogatory No. 12 and RFP Nos. 33-37 (concerning profits).

TCI and Fraifer responded in part to DISH's Second Set of Interrogatories and Second Set of Requests for Production concerning the AhlaiTV service, after the Order was entered. (App. at 89-93, 107-108.) Interrogatory Nos. 14-16 to TCI, and Nos. 18-20 to Fraifer, ask for identification of the processes and the persons involved in transmitting the Protected Channels on the AhlaiTV service, as well as persons manufacturing, supplying, selling, and distributing the AhlaiTV set-top boxes and service plans. (App. at 85, 103.) The Court ordered Fraifer and TCI to answer similar interrogatories concerning the UlaiTV products and services, as discussed above. TCI states that information "will be provided within the near future and no later than June 13, 2017." (App. at 107.) Fraifer claims that "[a]ny activity that he undertook . . . was taken solely and exclusively in his capacity as the corporate President of TCI or PCI." (App. at 92.) June 13 has come and gone, and neither TCI nor Fraifer provided supplemental responses to these interrogatories. (Frank Decl. ¶ 13.)

Likewise, TCI did not respond to DISH's Second Set of Requests for Production focusing on the AhlaiTV service. (*Id.* ¶ 11.) TCI is required to respond to each request in writing under Fed. R. Civ. P. 34(b)(2). Fraifer should also be ordered to respond to the requests that were served on him, in particular RFP Nos. 40-41 and 43 (concerning channel distribution), RFP Nos. 60 and 63 (concerning manufacturers, suppliers, and resellers) and RFP Nos. 55-59 and 64 (concerning profits). (App. at 78-81.) Fraifer's claim that "such documents would only be in the possession or under the control of the Defendant corporations TCI or PCI" is insufficient because the concept of control is much broader, as noted in the Order which compelled Fraifer to respond to equivalent requests concerning the UlaiTV products and services. (App. at 89; Order at 4.) This is especially

13

true given that TCI completely failed to respond to DISH's requests for production concerning the AhlaiTV products and services, and PTI provides essentially the same responses the Court already found insufficient when granting DISH's motion to compel, as explained above.

In summary, TCI should be compelled to respond to Interrogatory Nos. 14-16 and DISH's Second Set of Requests for Production. Fraifer should be compelled to respond to Interrogatory Nos. 18-20 and RFP Nos. 40-41, 43, 55-60, and 63-64, to the extent that he has information not otherwise produced by Defendants. PTI should be compelled to respond to Interrogatory Nos. 3-6 and 12, and RFP Nos. 8-11, 13, 33-38, and 41, to the extent PTI has information not otherwise produced by Defendants.

### III. CONCLUSION

The Court should grant this motion and order TCI and Fraifer to comply with the Court's prior order granting DISH's motion to compel discovery, in particular:

- Interrogatory Nos. 4 and 6-8 to Fraifer;
- RFP Nos. 4-7, 9, 29, 31-34, and 37-38 to Fraifer;
- Interrogatory Nos. 5-6 and 12 to TCI; and
- RFP Nos. 33, 35-38, and 41 to TCI.

The Court should also compel responses to related discovery requests to TCI and Fraifer concerning the AhlaiTV service, and similar requests served on PTI, in particular:

- DISH's Second Set of Requests for Production to TCI;
- Interrogatory Nos. 14-16 to TCI;
- RFP Nos. 40-41, 43, 55-60, and 63-64 to Fraifer;
- Interrogatory Nos. 18-20 to Fraifer;
- RFP Nos. 8-11, 13, 33-38, and 41 to PTI; and

- Interrogatory Nos. 3-6 and 12 to PTI.

DISH should also be awarded attorney's fees incurred in filing the motion to compel and this motion for contempt, in an amount to be proven by DISH or agreed by the parties. The Court deferred ruling on DISH's request for attorney's fees when granting the motion to compel, and cautioned that "failure to fully respond will surely result in an award of fees on the instant Motion and any follow-up motion necessitated by a deficient response by Defendants." (Order at 7.) Defendants and their counsel should be jointly and severally responsible for the payment of these attorney's fees. *See* Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(C); *see also* Dkt. 64 at 17-18 (setting forth DISH's argument and case law supporting award of attorney's fees).

Finally, Defendants should be advised that failure to fully comply with the Court's order on this motion for contempt may result in the Court awarding additional relief or taking additional action, including that authorized by Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

## **RULE 3.01(g) CERTIFICATE**

The undersigned conferred with Defendants' counsel in advance of filing this motion but was unable to resolve the issues, as set out in his concurrently filed declaration.

Dated: July 18, 2017

>/s/ Timothy M. Frank
>Joseph H. Boyle (*pro hac vice*)
>Timothy M. Frank (*pro hac vice*)
>HAGAN NOLL & BOYLE, LLC
>Two Memorial City Plaza
>820 Gessner, Suite 940
>Houston, Texas 77024
>Telephone: (713) 343-0478
>Facsimile: (713) 758-0146
>Email: joe.boyle@hnbllc.com
>Email: timothy.frank@hnbllc.com

15

        James A. Boatman, Jr.
        Florida Bar No. 0130184
        THE BOATMAN LAW FIRM PA
        3021 Airport-Pulling Road North, Suite 202
        Naples, Florida 34105
        Telephone: (239) 330-1494
        Facsimile: (239) 236-0376
        Email: jab@boatman-law.com

        Attorneys for Plaintiff DISH Network L.L.C.

## CERTIFICATE OF SERVICE

I certify that on July 18, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide notice to Defendants Gaby Fraifer, Tele-Center, Inc., and Planet Telecom, Inc.

        /s/ Timothy M. Frank
        Timothy M. Frank (*pro hac vice*)
        HAGAN NOLL & BOYLE, LLC
        Two Memorial City Plaza
        820 Gessner, Suite 940
        Houston, Texas 77024
        Telephone: (713) 343-0478
        Facsimile: (713) 758-0146
        Email: timothy.frank@hnbllc.com

        Attorney for Plaintiff DISH Network L.L.C.