## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DISH NETWORK L.L.C.

          Plaintiff,                  Case No. 8:16-cv-02549-EAK-TBM

       v.

GABY FRAIFER, TELE-CENTER, INC.,
and PLANET TELECOM, INC.,
individually and together d/b/a
UlaiTV, PlanetiTV, and AhlaiTV,

          Defendant(s).

_____/

## DEFENDANT'S SECOND MOTION TO COMPEL AND FOR CONTEMPT, WITH REQUEST FOR A HEARING

    COMES NOW Defendant, PLANET TELECOM, INC., by and through undersigned counsel, hereby files Defendant's Second Motion to Compel and for Contempt, with Request for Oral Argument against Plaintiff, DISH NETWORK L.L.C., pursuant to Local Rules 3.01(a), (g), and 3.04, and Fed. R. Civ. P. 37, and hereby respectfully moves this Honorable Court to grant Defendant's Motion, and, in support thereof, states as follows:

### Background

1.    In early 2017, the Plaintiff filed its Amended Complaint for Damages and Injunctive Relief (hereinafter the "Amended Complaint") against Defendant pleading Count I Direct Copyright Infringement under 17 U.S.C. §501 (Doc 58-1).

2.    The Plaintiff, by and through its counsel, advances numerous pleading allegations under the Amended Complaint Section titled "Dish's Copyrights", whereby the Plaintiff alleges that the Plaintiff purchased from, and entered into written agreements with numerous audiovisual

networks granting the Plaintiff the "[e]xclusive right to distribute and publicly perform the works that air on the Protected Channels..." during all relevant time periods in support of the alleged allegations in the Complaint (Doc 58-1, at 3, ¶¶12-13)[1].

3.     In addition, the Defendant has an active counter-claim against the Plaintiff for breach of contract based on the Plaintiff's purchase of Defendant's products, and corresponding violation of the Defendant's contractual terms and conditions.

4.     The Defendant has diligently pursued, and repeatedly attempted to obtain from the Plaintiff relevant, and necessary documentation and information in relation to the active claims identified above during the discovery stage as ordered by this Court's Case Management Order (Doc 50).

5.     On November 21, 2017, the Defendant, PLANET TELECOM INC. (hereinafter "Defendant"), by and through undersigned counsel, timely and effectively served on the Plaintiff with its Second Set of Interrogatories, Planet Telecom, Inc. Interrogatories to Dish Network, LLC (hereinafter referred to as "Second Set") pursuant to Fed. R. Civ. P. 33. A copy of Defendant's Second Set of interrogatories is attached as Exhibit A and incorporated by reference herein.

6.     The Defendant's Second Set explicitly serves on the Plaintiff fifteen (15) interrogatories, specifically relating to the allegations set forth in the Plaintiff's amended complaint, and also to those allegations raised in the Plaintiff's Counter-Claim for breach of contract.

7.     The Plaintiff acknowledged receipt of the Defendant's Second Set on November 21, 2017.

---

[1] For example, the Plaintiff's Amended Complaint attaches the "Declaration of Timothy Frank", whereby Timothy Frank declares that "A paralegal in my office..." purchased from the Defendant a set-top box and identified various channels identified therein to advance and in support of the Plaintiff's Amended Complaint (Doc 58-2, at 2, ¶¶6-7).

8. The Defendant did not receive the Plaintiff's response to the Defendant's Second Set of Interrogatories by the response deadline of December 24, 2017, pursuant to Fed. R. Civ. P. 33(b)(2).

9. On January 11, 2018, the Defendant, by and through undersigned counsel, after his return from the long-noticed Christmas vacation, served on the Plaintiff written correspondence confirming that Defendant had not received Plaintiff's response to the Defendant's Second Set of interrogatories. A copy of Defendant's written correspondence dated January 11, 2018 is attached as Exhibit B and is incorporated by reference herein.

10. In the above correspondence, the Defendant re-requested from the Plaintiff its responses to the Defendant's Second Set of interrogatories, allegedly sent in correspondence dated December 22, 2017.

11. On January 23, 2018, Plaintiff, by and through its counsel, acknowledges receiving Defendant's correspondence dated January 11, 2018, and, on or about February 1, 2018, the Defendant finally receives from the Plaintiff its response to the Defendant's Second Set of interrogatories, among other things (hereinafter referred to as "Plaintiff's Response"). A copy of the Plaintiff's Response is attached as Exhibit C and is incorporated referenced herein.

12. The Plaintiff's Response, unfortunately, is replete with evasive, blanket and incomplete objections, and, moreover, substantively ignores the specific requests advanced by the Defendant in each interrogatory set forth in the Defendant's Second Set of interrogatories.

13. In an ongoing effort to resolve all discovery matters amicably and without intervention, the Defendant, by and through undersigned counsel, has repeatedly requested adequate answers and responses from the Plaintiff for each interrogatory set forth in the Defendant's Second Set of interrogatories. The Defendant's attempts have been unsuccessful. Defendants simply asked the

Plaintiff's counsel to read the plain english contained in the Interrogatories and answer them simply, forthrightly and completely.

14.     To date, the Defendant still has not received any information from the Plaintiff in response to any of the interrogatories set forth in Defendant's Second Set of interrogatories, and thereby prejudicing the Defendant's meaningful discovery preparation before the discovery cutoff deadline of March 3, 2018. (Doc 50).

15.     The Plaintiff's Response to each interrogatory set forth in Defendant's Second Set of interrogatories relevant to the pending actions before this Court.

16.     The Defendant has diligently pursued, and repeatedly attempted to obtain from the Plaintiff relevant and necessary documentation and information in relation to the active claims in this case style during the discovery stage[2].

17.     The Plaintiff has repeatedly refused to cooperate with the Defendant's multiple attempts to obtain any information with respect to each and every interrogatory set forth in the Defendant's Second Set of Interrogatories, and has been evasive with its untoward objections, which leaves the Defendant with no other option than to file this Motion.

### Memorandum of Law

The Defendant, PTI, is entitled to receive from the Plaintiff complete answers to each of the fifteen (15) interrogatories it served on the Plaintiff on November 21, 2017[3]. Contrary to the Plaintiff's position, each of the 15 interrogatories is specifically tailored to obtain information relating to the allegations set forth in the Plaintiff's Amended Complaint and to those allegations raised in the Plaintiff's counter-claim for breach of contract[4]. Moreover, the Plaintiff not only fails to provide adequate responses but also conveniently ignores basic requests for information,

---

[2] See this Court's Case Management Order (Doc 50).
[3] See Fed. R. Civ. P. 33.
[4] See Exhibit A.

Each of the relevant interrogatories will be addressed in a later section as required pursuant to Rule 3.04, but the Defendant will first address the Plaintiff's inability make specific objections to any of the interrogatories in the Defendant's Second Set of interrogatories.

## I. Plaintiff's Objections Are Waived Pursuant to Fed. R. Civ. P. 33.

A responding party has a limited amount of time to respond to the serving party's interrogatories, specifically "[t]he responding party must serve its answers and any objections within 30 days after being served with interrogatories." See Fed. R. Civ. P. 33(b)(2). Importantly, the responding party must timely raise any and all objections to each interrogatory with specificity, otherwise said objections are treated as untimely and waived. See *id*.

On November 21, 2017, the Defendant served on the Plaintiff the Defendant's Second Set of interrogatories. Accordingly, the Plaintiff's deadline, with time for mailing, to timely raise any and all objections expired on December 24, 2017, but the Plaintiff failed to timely serve on the Defendant its required responses and objections to any of the interrogatories set forth in the Defendant's Second Set. The Defendant, by and through undersigned counsel, notified the Plaintiff in a letter dated January 11th, 2017, that the required discovery had not yet been received[5]. The Defendant did not receive the Plaintiff's Response until on or about February 1, 2018.

This Court should treat any and all objections raised in the Plaintiff's Response as untimely and forever waived. This is especially warranted due to the pressing discovery cutoff deadline of March 3, 2018[6]. Complete answers to each of the fifteen (15) interrogatories are essential for the Defendant to meaningfully prepare and move forward with discovery. The consequent delay in providing any responsive information to the Defendant's Second Set of

---

[5] See Exhibit B.
[6] See Case Management Order, March 3rd discovery deadline.

interrogatories continues to prejudice the Defendant's ability to conduct meaningful discovery. Nevertheless, the Plaintiff's untimely objections should not present an obstacle in compelling the Plaintiff to adequately respond each of the Defendant's Second Set of interrogatories.

## II.  Plaintiff Inappropriately Refuses to Provide Adequate Responses to the Defendant's Second Set of Interrogatories.

The Defendant's Second Set of interrogatories are not only relevant to the pending actions before this Court but are essential to expeditiously move discovery forward as set forth in the Court's Case Management Order. (Doc 50). Specifically, the Plaintiff's claims for copyright infringement rely heavily on allegations that said Plaintiff has legal standing to enforce said copyrights, and to what extent the Plaintiff is damaged, if at all, and that the responsible parties for any alleged damage are properly identified[7]. Moreover, the Defendant's active counter-claim for breach of contract against the Plaintiff is also intricately related to those allegations identified above[8]. Complete answers and information to each interrogatory set forth in Defendant's Second Set of interrogatories is relevant and necessary to the pending case, and the Plaintiff's wrongful failure to adequately respond is an attempt to evade the established system of discovery in the Federal system should not be tolerated by the Court.

### A.  The Defendant's Second Set of Interrogatories in Dispute

The Plaintiff wrongfully deprives the Defendant of any response to each interrogatory outlined below. The Defendant carefully crafted each interrogatory in order to solicit relevant information to the active claims pending in this case style, and the Plaintiff evasively passes over and ignores each request, often repeating its objection verbatim.

---

[7] See allegations set forth in Plaintiff's Amended Complaint.
[8] See allegations in Count III, Defendant's Amended Counter-Claim; see also allegation with respect to the Plaintiff's activity in purchasing from the Defendant various set-top boxes, and the subsequent use of these boxes in order to enforce the Plaintiff's alleged rights

Defendant's Interrogatory No. 1 (hereinafter "Int. No. 1") is relevant to both the allegations in the Plaintiff's Amended Aomplaint and the Defendant's counter-claim, and Plaintiff's corresponding response misses the mark and is disappointing, as follows:

Int. No. 1:

"Please describe exactly how any why the Plaintiff decided which URLs are/were in alleged violation of U.S. copyright laws."[9]

Plaintiff's Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it is not limited to URLs corresponding with the Protected Channels that are the subject of this case. DISH also objects to the phrase "how and why the Plaintiff decided which URLs are/were in alleged violation of U.S. copyright laws" as vague and ambiguous because DISH's copyright infringement claim is based on Defendants' distribution and public performance of the works aired on the Protected Channels. DISH objects to the extent this request calls for information protected by privilege."[10]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA."[11]

The Plaintiff's response is evasive and should not be allowed. *See Essex Builders Grp, Inc v. Amerisure Ins Co*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (ruling that "answers to interrogatories must be responsive, full, complete and unevasive,..."). The Plaintiff's objections state that Int. No. 1. is somehow "...overly broad, and unduly burdensome, irrelevant, and not proportional to the needs of this case..." even though the Defendant is requesting relevant information in relation to the allegations set forth in the pending causes of action in this case

---

[9] See Exhibit A, at 1.
[10] See Exhibit C, at 1.
[11] See *id*, at 2.

style. The Plaintiff completely passes over the relevancy of the Defendant's counter claim for breach of contract. Furthermore, the Plaintiff conveniently omits its obvious involvement with respect to all of the Plaintiff's agents, which include any and all of the Plaintiff's memberships, agents, employees and contractual parties – namely, contractual parties such as Nagravision SA and NagraStar LLC. Furthermore, the Plaintiff's expert report of Nagravision SA does not adequately address these issues, and evasively employs yet another stall tactic. The Plaintiff continues to not only wrongfully assert the Defendant's conduct with respect to all matters in this case style, but substantively fails to provide material information that adequately satisfies Defendant's Int. No. 1.

More of the same type of responses from the Plaintiff with respect to the Defendant's Interrogatories Nos. 2, 3, 4, 5, and 6 (hereinafter "Int. No. 2", "Int. No. 3", "Int. No. 4", "Int. No. 5", and "Int. No. 6"), as follows:

Int. No. 2:

"Explain why Dish does not believe that the attached list of URLs are not proprietary and confidential to Defendants. (See attached list of URLs.)."[12]

Plaintiff's Response:

"DISH objects to the request as vague and ambiguous because it makes the false assumption that DISH does not believe the URLs corresponding with the unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services are or were controlled by Defendants. DISH has consistently maintained that Defendants control or controlled these URLs, and to that extent the URLs are "proprietary" to Defendants. DISH objects to the extent this request calls for information protected by privilege."[13]

"Subject to and without waiving these objections, the URLs identified in DISH's subpoenas to Verizon, Tulix, Internap, and Akamai are not "confidential to Defendants" because the URLs are shared with end users of Defendants' UlaiTV and AhlaiTV services in the course of retransmitting the Protected Channels. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA. Defendants have not identified any measures

---

[12] See Exhibit A, at 1.
[13] See Exhibit C, at 2.

taken by Defendants to make the URLs confidential. Defendants also did not raise any confidentiality concerns in response to the more than 150 copyright infringement 3 notices sent to Defendants and non-party service providers between May 22, 2015 and May 5, 2017, which identified URLs of the Protected Channels."[14]

<u>Int. No. 3</u>:

"Explain the process Dish used or employed to find or uncover all of the Defendants' proprietary and confidential URLs (see attached list with alleged date and time that the URLs have been allegedly used by Defendants)."[15]

<u>Plaintiff's Response</u>:

"DISH objects to the phrase "Defendants' . . . confidential URLs" as vague and ambiguous because, as explained in the prior response, the URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services are not confidential. DISH further objects to the request as vague and ambiguous because it is premised on the false assumption that DISH engaged in a technical process to find or uncover these URLs. DISH objects to the extent this request calls for information that is confidential or protected by privilege."[16]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA.[17]

<u>Int. No. 4</u>:

"Explain, in detail, the process used or employed by Dish to find, learn or uncover any other Data from the defendants' CDN private networks thatb Defendants allegedly used in connection with the STB and its Application."[18]

<u>Plaintiff's Response</u>:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it is not limited to URLs corresponding with the 4 Protected Channels that are the subject of this case. DISH also objects to the

---

[14] See *id.*, at 2-3.
[15] See Exhibit A, at 1.
[16] See Exhibit C, at 3.
[17] See *id.*
[18] See Exhibit A, at 1.

undefined terms "CDN private networks," "Data," "STB," and "Application" as vague and ambiguous. Defendants appear to have intended to give specific meaning to the capitalized terms, yet failed to define them. DISH objects to the extent this request calls for information that is confidential or protected by privilege."[19]

"Subject to and without waiving these objections, DISH did not request data from any CDN concerning Defendants, except for information obtained via subpoenas properly issued in this case to Verizon, Tulix, Internap, and Akamai, which was previously produced to Defendants."[20]

Int. No. 5:

"Describe the reasons and the purpose DISH uncovered and/or retrieved all of the Attached
URLs and/or other confidential Data from the defendants' CDN private network used by Defendants in connection with the STB and its Application."[21]

Plaintiff's Response:

"DISH objects to the request as vague and ambiguous because it is premised on the false assumption that DISH uncovered or retrieved the URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services and other confidential data of Defendants. DISH also objects to the undefined terms "CDN private networks," "Data," "STB," and "Application" as vague and ambiguous. Defendants appear to have intended to give specific meaning to the capitalized terms, yet failed to define them. DISH objects to the extent this request calls for information protected by privilege."[22]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA. DISH did not request data from any CDN concerning Defendants, except for information obtained via subpoenas properly issued in this case to Verizon, Tulix, Internap, and Akamai, which was previously produced to Defendants."[23]

Int. No. 6:

---

[19] See Exhibit C, at 3-4.
[20] See *id.*, at 4.
[21] See Exhibit A, at 1.
[22] See Exhibit C, at 4-5.
[23] See Exhibit C, at 5.

"Identify the persons and entities, whether with Plaintiff's employ or not, who were involved in any way in the process with Plaintiff to uncover all the proprietary and confidential URLs and other confidential Data from Defendant CDN private network in connection with the STB and its Application."[24]

Plaintiff's Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it is not limited to URLs corresponding with the unauthorized streams of the Protected Channels that are the subject of this case, and because it seeks identification of all "persons and entities . . . involved in any way" without regard to the extent of their involvement. DISH also objects to the request as vague and ambiguous because it is premised on the false assumption that DISH was involved in uncovering the URLs and Defendants' confidential data. DISH further objects to the phrase "confidential URLs" as vague and ambiguous because, as explained in the response to No. 2 above, the URLs corresponding with the Protected Channels are not confidential. DISH objects to the undefined terms "CDN private networks," "Data," "STB," and "Application" as vague and ambiguous. Defendants appear to have intended to give specific meaning to the capitalized terms, yet failed to define them."[25]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA. Persons involved in this process were identified in DISH's supplemental initial disclosures. DISH did not discover data from any CDN concerning Defendants, except for information obtained via subpoenas properly issued in this case to Verizon, Tulix, Internap, and Akamai, which was previously produced to Defendants."[26]

The Plaintiff's responses to the Defendant's Int. Nos. 2, 3, 4, 5, and 6 mirrors its prior response to Defendant's Int. No. 1. The Plaintiff's Responses are wrongfully evasive and largely unresponsive, and completely ignore and pass over the Plaintiff's obvious involvement, especially with Nagravision SA and NagraStar LLC. Moreover, the Plaintiff's fail to mention nor identify any other individuals and/or entities involved in the "monitoring" process imposed on

---

[24] See Exhibit A, at 1.
[25] See Exhibit C, at 5-6.
[26] See *id.*

the Defendant and corresponding gathering of confidential and proprietary data and information. This is convenient for the Plaintiff, but such information precisely relates to the allegations in its Amended Complaint and is the subsequent basis for the Defendant's counter-claim for breach of contract. Again, the Plaintiff's expert report of Nagravision SA does not adequately address these issues and evasively employs yet another stall tactic. Defendant completely disagrees with the Plaintiff's categorical, unfounded assertions with respect to the Defendant's conduct.

The Plaintiff continues to ignore the Defendant's requests set forth in Defendant's Interrogatories Nos. 7 and 8 (hereinafter "Int. No. 7", and "Int. No. 8"), the Plaintiff demonstrates similar, unnecessarily evasive tactics, and states as follows:

Int. No. 7:

"Identify each and every person that the Plaintiff knows or believes purchased an STB which allegedly violated U.S. copyright laws from any of the Defendants in this case."[27]

Plaintiff's Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it is not limited to copyrighted works that are the subject of this case and because the requested purchaser information is already in the possession of Defendants. DISH also objects to the phrase "STB which allegedly violated U.S. copyright laws" as vague and ambiguous because DISH's copyright infringement claim is based on Defendants' distribution and public performance of the works aired on the Protected Channels."[28]

"Subject to and without waiving these objections, DISH obtained records through a subpoena properly issued to PayPal showing Defendants' sales of UlaiTV and AhlaiTV set-top boxes using the PayPal payment processor. DISH also obtained records through a subpoena properly issued to JP Morgan Chase showing additional transactions, which Defendants have represented constitute all UlaiTV and AhlaiTV set-top boxes purchased from Defendants via credit card. The PayPal and JP Morgan Chase subpoena responses were previously produced to Defendants. Defendants have represented that these subpoena responses identify all persons that purchased UlaiTV and AhlaiTV set-top boxes from Defendants."[29]

---

[27] See Exhibit A, at 1.
[28] See Exhibit C, 6-7.
[29] See *id.*

Int. No. 8:

"Specify which, if any, Defendant sold an STB which contained the alleged protected channels of the Plaintiff. Please provide the date and time and location of the alleged purchase."[30]

Plaintiff's Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because the requested seller information is already in the possession of Defendants. DISH also objects to the phrase "sold a STB which contained the alleged protected channels" as vague and ambiguous."[31]

"Subject to and without waiving these objections, UlaiTV and AhlaiTV set-top boxes were offered for sale on www.ulaitv.com, www.planetitv.com.au, www.tci-direct.com, and www.planetitv.com. These domain names are registered to Defendants Planet Telecom, Inc. and Gaby Fraifer. Defendant Tele-Center, Inc. received payments for and shipped UlaiTV and AhlaiTV set-top boxes sold through these domain names. Fraifer is the sole owner and officer in charge of Planet Telecom, Inc. and Tele-Center, Inc., which he operated as alter egos. All Defendants are therefore involved in the sale of UlaiTV and AhlaiTV set-top boxes. DISH is informed that the UlaiTV and AhlaiTV set-top boxes that Nagravision SA and NagraStar LLC used to monitor for the Protected Channels on the UlaiTV and AhlaiTV services are identified in records previously produced to Defendants."[32]

The Plaintiff restates its previous objections previously advanced, and, unfortunately, simply advances blanket and unfounded assertions as to the Defendant conduct instead of satisfying Defendant's Int. Nos. 7 and 8. The Plaintiff's Responses falsely assume the Defendant's involvement with respect to the matters identified above. Contrary to the Plaintiff's position, the Defendant has failed to receive copies of the subpoenas and information identified above, despite the Defendant's repeated requests[33]. The Defendant's Int. Nos. 7 and 8 both directly relate to the allegations set forth in the pending claims in this case style, and, to date, the Defendant has not received any documentation containing the requested information.

---

[30] See Exhibit A, at 2.
[31] See Exhibit C, at 7.
[32] See *id.*
[33] The Defendant is file its motions to compel with respect to its requests for production, which include the subpoena information and documentation. This is addressed separate from this motion.

Defendant's Interrogatory Nos. 9, 10 and 11 (hereinafter "Int. No. 9", "Int. No. 10", and "Int. No. 11") also attempts to solicit information directly related to the pending claims in this case style, and Plaintiff's corresponding response continues to disappoint, as follows:

Int. No. 9:

"Please describe the process used by DISH to determine, or learn, that the Defendants transmitted any of the so-called protected channels in the United States which violation is claimed in the Amended Complaint of Plaintiff."[34]

Plaintiff's Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because the same information is requested in No. 3, above." DISH also objects to the request as vague and ambiguous to the extent it is premised on the false assumption that DISH used a technical process to determine or learn that Defendants transmitted the Protected Channels. DISH further objects to the extent this request calls for information that is confidential or protected by privilege."[35]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA."[36]

Int. No. 10:

"Please identify the persons, whether with Plaintiff's employ or not, who Plaintiff believes or claims were involved in Plaintiff's determination that any or all of the Defendants transmitted the so-called protected channels."[37]

Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it seeks identification of all "persons . . . involved" without regard to the extent of their involvement, and because the same information is requested in No. 6, above. DISH also objects to the phrase "Plaintiff's

---

[34] See Exhibit A, at 2.
[35] See Exhibit B, at 7-8.
[36] See id., at 8.
[37] See Exhibit A, at 2.

determination" as vague and ambiguous because it can be read to give the false assumption that DISH used a technical process to determine that Defendants transmitted the Protected Channels. DISH further objects to the extent this request calls for information that is protected by privilege."[38]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA. Persons involved in this process were identified in DISH's supplemental initial disclosures."[39]

Int. No. 11:

"Please describe how this process of determination occurred to, or was used by, Plaintiff."[40]

Response:

"DISH objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it is not limited to the Protected Channels that are the subject of this case. DISH also objects to the phrases "this process of determination," "occurred to," and "was used by" as vague and ambiguous. DISH objects to the extent this request calls for information that is protected by privilege."[41]

"Subject to and without waiving these objections, the Protected Channels at issue in this case were identified based on the reports and screenshots provided by non-parties Nagravision SA and NagraStar LLC, which monitored the UlaiTV and AhlaiTV services for infringing content on behalf of the International Broadcaster Coalition Against Piracy, of which DISH is a member. The reports identified URLs corresponding with unauthorized streams of the Protected Channels on the UlaiTV and AhlaiTV services. Further details concerning this channel monitoring and URL identification process is set forth in the previously produced expert report of Nagravision SA."[42]

Contrary to the Plaintiff's position, the Defendant's requests set forth in Int. Nos. 9, 10,

and 11 directly relate to the Plaintiff's unsupported allegations set forth in its Amended

---

[38] See Exhibit C, at 8-9.
[39] See *id.*
[40] See Exhibit A, at 2.
[41] See Exhibit C, at 11.
[42] See *id.*

Complaint and to those pending actions and claims in this case style. Plaintiff's Reponses to Int. Nos. 9, 10, and 11 continue to disappoint by simply ignoring its involvement with its own investigatory efforts of the Defendant in relation to all of its employees, agents and/or contractors. Specifically, the Plaintiff refused to shed light on its involvement with Nagravision SA and NagraStar LLC and only referred to its export report of Nagravision SA which is unresponsive and does not adequately address the Defendant's requests. Unfortunately, the Defendant simply has yet to receive from the Plaintiff adequate responses to Defendant's Int. Nos. 9, 10, and 11.

Defendant's Interrogatory Nos. 12, 13, 14, and 15 (hereinafter referred to as "Int. No. 12", "Int. No. 13", "Int. No. 14", and "Int. No. 15") also attempt to solicit information directly related to the pending claims in this case style by identifying specific individuals, and Plaintiff's corresponding responses continue to disappoint, and as follows:

Int. No. 12

"Please describe what Ms. Sarah Weller did for Dish regarding her purchase of the STB from any of the Defendants. Please identify the Defendant which allegedly sold the STB to Ms. Geller."[43]

Response:

"DISH objects to the request as vague and ambiguous because it is premised on the false assumption that Ms. Weller was employed by or worked for DISH. DISH also objects to the phrase "the STB" as vague and ambiguous and will construe this phrase to mean the AhlaiTV set-top box purchased from Defendants on or about November 22, 2016. DISH further objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because the AhlaiTV set-top box is not at issue in Defendants' amended counterclaim, and because the requested seller information is already in the possession of Defendants."[44]

"Subject to and without waiving these objections, DISH is informed that its counsel of record in this case, Hagan Noll & Boyle LLC, employed Ms. Weller as a paralegal and the AhlaiTV settop box was purchased on behalf of counsel and subsequently provided to

---

[43] See Exhibit A, at 2.
[44] See Exhibit C, at 9-10.

NagraStar LLC. DISH was not involved in purchasing the AhlaiTV set-top box and did not have possession of the product. DISH is informed that the AhlaiTV set-top box purchased by Ms. Weller is identified in the records previously produced to Defendants."[45]

Int. No. 13

"Please describe how MS. Wealler first discovered that any of the Defendants were selling the STBs."[46]

Response:

"DISH objects to the term "STBs" as vague and ambiguous and will construe the term to mean the AhlaiTV set-top boxes. DISH also objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because how Ms. Weller or any other person discovered that Defendants were selling AhlaiTV set-top boxes has no bearing on the claims or defenses in this case. Defendants do not deny selling the AhlaiTV set-top boxes, and openly advertised the products for sale on their websites identified in DISH's response to No. 8, above. DISH objects to the extent the request calls for information that is protected by privilege."[47]

"Subject to and without waiving these objections, DISH is informed that its counsel of record in this case, Hagan Noll & Boyle LLC, employed Ms. Weller as a paralegal and that she purchased an AhlaiTV set-top box on behalf of counsel, which was subsequently provided to NagraStar LLC. DISH was not involved in purchasing the AhlaiTV set-top box and did not have possession of the product. DISH is informed that the AhlaiTV set-top box purchased by Ms. Weller is identified in the records previously produced to Defendants."[48]

Int. No. 14

"Please describe what Mr. Kevin McMonnies did for Dish regarding his purchase of the STB from any of the Defendants. Please identify the Defendant which allegedly sold the STB to Mr. McMonnies."[49]

Response:

"DISH objects to the request as vague and ambiguous because it is premised on the false assumption that Mr. McMonnies was employed by or worked for DISH, and purchased a product from Defendants. DISH also objects to the phrase "the STB" as vague and ambiguous and will construe this phrase to mean the UlaiTV set-top box purchased from

---

[45] See *id.,* at 10.
[46] See Exhibit A, at 2.
[47] See Exhibit C, at 10-11.
[48] See *id.,* at 11.
[49] See Exhibit A, at 2.

Defendants on or about July 10, 2015. DISH further objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because the requested seller information is already in the possession of Defendants."[50]

"Subject to and without waiving these objections, DISH is informed that a credit card held in the name of Mr. McMonnies was used by Gary Palka to purchase the UlaiTV set-top box. DISH believes that Messrs. McMonnies and Palka are employees of NagraStar LLC. DISH was not involved in purchasing the UlaiTV set-top box and did not have possession of the product. DISH believes that NagraStar LLC purchased the UlaiTV set-top box on behalf of Nagravision SA. DISH is informed that the UlaiTV set-top box purchased by NagraStar LLC is identified in the records previously produced to Defendants."[51]

Int. No. 15

"Describe how Mr. McMonnies first discovered that any of the Defendants were selling the STBs."[52]

Response:

"DISH objects to the term "STBs" as vague and ambiguous and will construe the term to mean the UlaiTV set-top boxes. DISH also objects to the request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because how Mr. McMonnies or any other person discovered that Defendants were selling UlaiTV set-top boxes has no bearing on the claims or defenses in this case. Defendants do not deny selling the UlaiTV set-top boxes, and openly advertised the products for sale on their websites identified in DISH's response to No. 8, above. DISH objects to the extent the request calls for information that is protected by privilege."[53]

"Subject to and without waiving these objections, DISH is informed that a credit card held in the name of Mr. McMonnies was used by Gary Palka to purchase the UlaiTV set-top box. DISH believes that Messrs. McMonnies and Palka are employees of NagraStar LLC. DISH was not involved in purchasing the UlaiTV set-top box and did not have possession of the product. DISH believes that NagraStar LLC purchased the UlaiTV set-top box on behalf of Nagravision SA. DISH is informed that the UlaiTV set-top box purchased by NagraStar LLC is identified in the records previously produced to Defendants.[54]

The Plaintiff conveniently, albeit incorrectly, passes over each of Defendant's

interrogatories, Int. Nos. 12-15, with very similar "boilerplate" style objections. *See Arthex, Inc.*

---

[50] See Exhibit C, at 11.
[51] See *id.*
[52] See Exhibit A, at 2.
[53] See Exhibit C, at 11.
[54] See *id.*, at 12.

*v. Parcus Med., LLC*, No. 2:11-cv-694-Ftm-29SPC, 2012 WL 5382050, at \*3-4 (M.D. Fla. Nov. 1, 2012) (stating that "objections stating that a request is 'vague', 'overly broad', or 'unduly burdensome' are meaningless standing alone"); and see Middle District Discovery (2015) at 16 ("All grounds for an objection must be stated with specificity"). While the Plaintiff attempts to support its boilerplate objections with specified reasons, such reasons are completely "evasive" and simply ignore the Plaintiff's involvement with each individual identified above in the Defendant's Int. Nos. 12-15 and should be "[t]reated as a failure to disclose, answer, or respond." *See* Fed. R. Civ. P. 37(4). Moreover, the Plaintiff refuses to provide adequate information and/or explain and/or address the extent of its involvement with respect to the requests in the Defendant's Second Set of interrogatories. Nevertheless, the Plaintiff's alleged, and sweeping concerns with respect to privacy and confidentially can all be easily resolved with a protective order and still allow the Defendant's discovery to proceed during this narrow, and soon to be expired discovery cutoff of March 3, 2018. (Doc 50).

This Court should compel the Plaintiff to provide the requested information with respect to each of the Defendant's Second Set of interrogatories – Int. Nos. 1-15. All information should be provided to the Defendant immediately in order to provide the Defendant with a meaningful opportunity to prepare and complete its discovery before the cutoff deadline quickly approaching. As previously mentioned in a prior section, the Plaintiff's objections were not timely served on the Defendant and therefore should be treated as waived pursuant to Fed. R. Civ. P. 33(b). Nevertheless, the Plaintiff's alleged objections should not prevent the Defendant from obtaining the necessary information relates to the claims and corresponding allegations in this case style.

III.    **The Defendant Should be Awarded Attorneys' Fees And Costs And Any Other Relief this Court Deem Appropriate**

The Federal Rules of Civil Procedure clearly permit a moving party to recovery for attorneys' fees and costs associated when a motion to compel is granted, "[t]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduction, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." *See* Fed. R. Civ. P. 37(a)(5)(A). Defendant should be awarded its attorneys' fees and costs associated with bringing this Motion.

In addition, the Defendant requests that the Plaintiff found in contempt pursuant to Fed. R. Civ. P. 37 due to its ongoing, unfounded actions in depriving the Defendant's basis information set forth in the Defendant's Second Set of Interrogatories, Int. Nos. 1-15.

## CONCLUSION

Wherefore, the Defendant respectfully requests that this Honorable Court grant the Defendant's Fourth Motion to Compel Discovery and for Contempt against the Plaintiff and Compel and order the Plaintiff to provide the requested information in response to each of the fifteen (15) interrogatories set forth in the Defendant's Second Set of Interrogatories, Planet Telecom, Inc. Second Interrogatories to Dish Network, LLC. This Court should also award the Defendant reasonable attorneys' fees in relation to bringing this Motion against the Plaintiff.

## Rule 3.01(j) - REQUEST FOR HEARING

Pursuant to Local Rule 3.01(j), the Defendant hereby requests a hearing in order to resolve all issues raised herein. The Defendant estimates that thirty (30) minutes is needed for the hearing.

## Rule 3.01(g) - CERTIFICATION

Pursuant to Local Rule 3.01(g), the Defendant hereby certifies that Defendant, by and through undersigned counsel, has conferred with Plaintiff's counsel in a good faith attempt to resolve the discovery issues raised by this Motion, and that agreement with respect to resolution could not be reached, and the Plaintiff objects to the Defendant's Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __ day of February, 2018, at true and correct copy of the these Second Set of Interrogatories from Defendant PTI to Plaintiff DISH has been sent to Timothy M. Frank, Esq. of Hagan, Noll & Boyle LLC, 2 Memorial City Plaza, 820 Gessner, Suite 940, Houston, Texas 77024 by U.S. Mail and by email to timothy.frank@hnbllc.com.

/s/ *Francis R. Lakel Esq.*
Francis R. Lakel, Esquire
P.O. Box 331120
Miami, Florida 33233
FBN: 351237
(305) 854-2713/(727) 856-6052 (Fax)
Attorney for the Defendants