# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DISH NETWORK L.L.C.

        Plaintiff,

v.

GABY FRAIFER, TELE-CENTER, INC.,
and PLANET TELECOM, INC.,
individually and together d/b/a
UlaiTV, PlanetiTV, and AhlaiTV,

        Defendant(s).

Case No. 8:16-cv-02549-EAK-TBM

_____/

## DEFENDANTS'/COUNTER-CLAIMANTS' STATEMENT OF DISPUTED FACTS IN SUPPORT OF DEFENDANTS'/COUNTER-CLAIMANTS' RESPONSE TO DISH'S DISPOSITIVE MOTION FOR FINAL SUMMARY JUDGMENT [Doc 146]

COMES NOW Defendants/Counter-Claimants', TELE-CENTER, INC, and PLANET TELECOM, INC, and GABY FRAIFER (hereinafter the "Defendants"), by and through undersigned counsel, hereby file Defendants'/Counter-Claimants' Statement of Disputed Facts in Support of Defendants'/Counter-Claimants' Response to Dish's Dispositive Motion for Summary Judgment against Plaintiff, DISH NETWORK L.L.C. (hereinafter "Dish"). Dish filed its Statement of Undisputed Facts (hereinafter "SOUF"), identifying SOUFS 1 – 148. The Defendants'/Counter-Claimants' file its Statement of Disputed Facts (hereinafter "SDF") in response to each SOUF below, with either "Admitted" or "Disputed" and an explanation along with citations to the record.

- SOUF 1 - Disputed – SDF 1. Dish has not provided any objective reliable evidentiary basis in support of its size and subscribership. (Doc 50). Exhibits 1, and 2.

- SOUF 2 - Disputed – SDF 2. Dish's factual assertions rely on its provides copies of contracts

1

and amendments with - MBC (the "MBC Contracts"), Al Jazeera (the Al Jazeera Contracts), World Span (the World Span Contracts), Dream (the "Dream Contracts"), and IMD (the "IMD Contracts"). These contracts are redacted, signed without any witness signatures, notary acknowledgment, nor any verification that the signatory is an authorized agent. (Doc 146-13; Doc 146-14, 15, 16, 17, 18, 10, at 2-105).

Dish also relies on copies of an additional contracts: (1) additional World Span contract, Exhibit 1, World Span, Decl. (Doc 146-21, at 3-8); (2) additional MBC contract, Exhibit 2, MBC Decl. (Doc 146-9, at 3-9; 146-10, at 2-12); (3) additional IMD contracts, Exhibits 1-9, IMD Decl. (Doc 146-6, at 2-41; 146-7, at 2-51) (hereinafter referred to as "Extra Contracts"). The Extra Contracts also are redacted, signed without any witness signatures, notary acknowledgement, nor any verification that the signatory is an authorized agent. (see *id.*). The Extra Contracts are now being provided for the first time and were not provided during discovery. (Doc 50). See Exhibit 2.

Also, Dish relies on additional declarations of: (1) John Whitehead, dated April 6, 2018 (MBC) Whitehead, Decl. (Doc 146-8); (2) Haytham Elmokadem, dated April 4, 2018 (World Span) Elmokadem, Decl. (Doc  146-20); (3) Eithar Ali Mohamed Abutaha, dated March 29, 2018 (Al Jazeera) Abutaha, Decl. (Doc 146-3); and (4) Pierre Ayoub, dated April 5, 2018 (IMD) Ayoub, Decl. (Doc 146-5); (hereinafter Extra Declarations). Each of these Extra Declarations identify material witnesses not disclosed prior to the discovery deadline (Doc 50). See Exhibit 3.

- SOUF 3 - Disputed – SDF 3. Dish's claims to any exclusive license have not been established, as stated therein. See explanation and citations in SDF 2 and incorporated hereto.

- SOUF 4 - Disputed – SDF 4. Dish's claims to its alleged exclusive rights during the alleged

time-period have not been established, as stated therein. This factual assertion cannot be accepted due to evidentiary considerations. See explanation and citations in SDF 2.

- SOUF 5 - Disputed – SDF 5. MBC as an organization, and its rights in the alleged Protected Channels have not been established. See explanation and citations in SDF 2; see *id.*

- SOUF 6 - Disputed, in part – SDF 6. It is admitted with respect to information reflected on the surface of the four registration certificates, but it is disputed with respect to the substantive merits underlying the content of these certificates. Doc 146-12, at 53-56.

- SOUF 7 - Disputed, in part – SDF 7. Dish has not established that episodes identified therein are part of a series. This factual assertion cannot be accepted due to evidentiary considerations. See *id*; see also explanation and citations in SDF 2, and 6; see also Extra Declarations.

- SOUF 8 - Disputed – SDF 8. Dish has not established that MBC produced the alleged works, as stated therein. See explanation and citations in SDF 2, and 6; see also Extra Declarations.

- SOUF 9 - Disputed – SDF 9. Dish has not established that the MBC Registered Works and Unregistered Works were first published as stated therein, nor in the manner specified therein. This factual assertion cannot be accepted due to evidentiary considerations. See *id.* See explanation and citations in SDF 2, and 6; see also the MBC Contracts, Extra Contracts, and Extra Declarations.

- SOUF 10 - Disputed – SDF 10. Dish has not established MBC's location, nor at the time of the alleged publication(s) due to evidentiary considerations. See *id.*

- SOUF 11 - Disputed – SDF 11. Dish has not established any MBC transmission, via satellite nor any other means to any users in the UAE, due to evidentiary considerations. See *id.*

- SOUF 12 - Disputed – SDF 12. Al Jazeera, as an organization, and its rights in the alleged

Protected Channel have not been established due to evidentiary considerations. See explanation and citations in SDF 2; see also the Al Jazeera Contracts, and Extra Declarations.

- SOUF 13 - Disputed – SDF 13. Dish has not established that Al Jazeera produced the alleged works due to evidentiary considerations. See *id*; see explanation and citations in SDF 2, 6.

- SOUF 14 - Disputed – SDF 14. Dish has not established that the Al Jazeera published the alleged Al Jazeera Unregistered Works, due to evidentiary considerations. See *id*.

- SOUF 15 - Disputed – SDF 15. Dish has not established Al Jazeera's location, nor at the time of the alleged publication(s), due to evidentiary considerations. See *id*.

- SOUF 16 - Disputed – SDF 16. Dish has not established any Al Jazeera transmission, via satellite nor any other means to any users in Qatar, due to evidentiary considerations. See *id*.

- SOUF 17 - Disputed – SDF 17. World Span, as an organization, and its rights in the alleged channels have not been established, due to evidentiary considerations. See explanation and citations in SDF 2, 6; see also World Span Contracts, Extra Contracts, and Extra Declarations.

- SOUF 18 - Disputed – SDF 18. Dish has not established that World Span owns exclusive rights in the alleged channels, due to evidentiary considerations. See *id*.

- SOUF 19 - Disputed – SDF 19. Dish has not established that Trenta produced the alleged works, due to evidentiary considerations. See explanation and citations in SDF 2, 6; see also the World Span Contracts, Extra Contracts, and Extra Declarations.

- SOUF 20 - Disputed – SDF 20. Dish has not established that Trenta published the alleged works due to evidentiary considerations. See explanation and citations in SDF 2, 6; see also *id*.

- SOUF 21 - Disputed – SDF 21. Dish has not established Trenta's location, nor at the time of the alleged publication(s), due to evidentiary considerations. See *id*.

- SOUF 22 - Disputed – SDF 22. Dish has not established any Trenta transmission, via satellite

nor any other means to any users in the Middle East, due to evidentiary considerations. See *id.*

- SOUF 23- Disputed – SDF 23. Dish has not established World Span's licensing agency for Dream or any assertions as stated therein. See explanation and citations in SDF 2, 6; see also World Span Contracts, Dream Contracts, Extra Contracts, and Extra Declarations.

- SOUF 24 - Disputed – SDF 24. Dish has not established that Dream produced the alleged works due to evidentiary considerations. See explanation and citations in SDF 2, and 6. See *id.*

- SOUF 25 - Disputed – SDF 25. Dish has not established that Dream published the alleged works due to evidentiary considerations. See *id.*

- SOUF 26 - Disputed – SDF 26. Dish has not established Dream's location, nor at the time of the alleged publication(s), due to evidentiary considerations. See *id.*

- SOUF 27 - Disputed – SDF 27. Dish has not established the alleged Dream transmission, via satellite nor any other means to any users in Egypt, due to evidentiary considerations. See *id.*

- SOUF 28 - Disputed – SDF 28. IMD, as an organization, and its rights in the alleged channels have not been established due to evidentiary considerations. See explanation and citations in SDF 2 and incorporated hereto; see also IMD Contracts, Extra Contracts, and Extra Declarations.

- SOUF 29 - Disputed – SDF 29. Dish has not established IMD's alleged rights, nor that said rights are in effect. This assertion cannot be accepted due to evidentiary considerations. See *id.*

- SOUF 30 - Disputed – SDF 30. Dish has not established the production of IMD's alleged works, as stated therein. This assertion cannot be accepted due to evidentiary considerations. *Id.*

- SOUF 31 - Disputed – SDF 31. Dish has not established the time of first publication of the IMD's alleged works, nor the manner of publication. See *id.*

- SOUF 32 - Disputed – SDF 32. Dish has not effectively established the Producers' location,

nor at the time of the alleged publication(s). See *id*.

- SOUF 33 - Disputed – SDF 33. Dish has not established any Producers' transmission, via satellite nor any other means to any users in Egypt, as stated therein. See *id*.

- SOUF 34 - Disputed, in part, SDF 34. Fraifer is the sole shareholder, and officer of TCI and PTI, but others were involved (i.e. employees and consultants). Fraifer Dep. 1,at 26; 1-5, 29: 1-11; see Exhibit 4, and 5.

- SOUF 35 - Disputed, in part - SDF 35. TCI and PTI should be viewed as the same company, because TCI pays for PTI's expenses and operation. Fraifer Dep. 1, at 29: 7-25.

- SOUF 36 - Admitted.

- SOUF 37 - Disputed, in part – SDF 37. All employees and consultants reported to Fraifer, as President of TCI and PTI, but others communicated with the CDNs. Employees and consultants perform work independently, and Fraifer, as President of TCI and PTI, approved their work as needed. Fraifer, as President of TCI and PTI, did not earn a W-2 salary from TCI. Fraifer Dep. 1, at 28:15-19, 29:3-22, 30:9-12, 42: 1-17 (statements regarding Adib Sfeir communicating with CDNs); Maqsood Dep at 39:1-8. Fraifer, Dep. 1, Ex. 18 (Doc 146-28, at 375 ¶5.).

- SOUF 38 - Admitted.

- SOUF 39 - Disputed – SDF 39. Dish's has not established any transmission of the alleged channels, as stated therein, due to Dish's Joint-Venture (as later herein defined) and consequent evidentiary concerns with Dish's expert report and content. This factual assertion cannot be accepted due to evidentiary considerations. See explanation and citations in SDF 117-119.

- SOUF 40 - Disputed – SDF 40. Dish's has not established any transmission of the alleged Protected Channels. This assertion cannot be accepted due to evidentiary considerations. See *id*.

- SOUF 41 - Disputed – SDF 41. Dish's has not established any transmission of the alleged

Registered and Unregistered Works allegedly airing on the Protected Channels, as stated therein. This factual assertion cannot be accepted due to evidentiary considerations. See *id*; see also explanation and citations in SDF 2, and Extra Declarations.

- SOUF 42 - Disputed – SDF 42. Dish has not established any transmission of the alleged Registered and Unregistered Works allegedly airing on the Protected Channels, as stated therein. See *id*; see also explanation and citations in SDF 117-119.

- SOUF 43 - Disputed – SDF 43. Dish has not effectively established its assertions against the Defendants, as stated therein. This assertion cannot be accepted due to evidentiary considerations. See *id.;* see also explanation and citations in SDF 2, the MBC Contracts, Al Jazeera Contracts, IMD Contracts, World Span Contracts, Dream Contracts, Extra Contracts, and Extra Declarations.

- SOUF 44 - Disputed – SDF 44. Dish has not established its alleged exclusive rights, as stated therein. This factual assertion cannot be accepted due to evidentiary considerations See *id*.

- SOUF 45 - Disputed – SDF 45. Dish has not established that the Protected Channels were accessible on the UlaiTV and AhlaiTV STBs and services. This factual assertion cannot be accepted due to evidentiary considerations. See also explanation and citations in SDF 39, 117-119.

- SOUF 46 - Admitted.

- SOUF 47 - Disputed – SDF 47. The extended warranty for the STBs did not permanently impact any ability to receive channels. Fraifer Dep. 1, at 151: 1-25; 152: 1-25, 155:5-25.

- SOUF 48 - Disputed – SDF 48. The Defendants utilized the CDN services to improve quality output and not for transmission of the Protected Channels. Maqsood Dep. at 93, pp. 13-20; Fraifer Dep. 1, at 38: 3-25; at 39: 1-11; see also explanation and citations in SDF 76-77 (Cressida

provided the channels and CDN services were not utilized during this time; see Exhibit 6); see also explanation and citations in SDF 117-119 (Dish's expert is generated by Dish's Joint-Venture).

- SOUF 49 - Disputed – SDF 49. CDN services were used only to improve quality. See *id*.

- SOUF 50 - Disputed – SDF 50. The services are not dependent on the CDN services. Rather, CDN services can be used or not, and alternatively, only the internet is needed, to improve quality of what is already on the internet. Fraifer Dep. 1 at 224: 17-25; 225-27; 228: 1-13; see also explanation and citation in SDF 76-77.

- SOUF 51 - Disputed – SDF 51. Any ability to "stop" was dependent on the Channel Providers, and completed by them upon request. Fraifer Dep at 1 224: 17-25, 225: 1-8.

- SOUF 52 - Disputed – SDF 52. The CDN services were only used to improve quality of the STBs sold to customers inside or outside of the United States. Fraifer, as President of TCI and PTI, can identify approximately 60% of the total STBs sales were to customers located in the United States. Fraifer Dep. 1 at 224: 17-25; 225-27; 228: 1-13; Dep. 2 at 96-97, at 98: 6-25. Exhibit 7.

- SOUF 53 - Admitted.

- SOUF 54 - Disputed - SDF 54. Verizon CDN services were used to improve quality. Fraifer Dep. 1 at 224: 17-25; 225-27; 228: 1-13.

- SOUF 55 - Disputed – SDF 55. Akami/Octoshape CDN service, like any other CDN service, was used to improve quality. Fraifer Dep. 1 at 171-72; 224: 17-25; 225-27; 228: 1-13.

- SOUF 56 - Disputed – SDF 56. The e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channel" in this e-mail. Fraifer Dep. 1, and Ex. 16 at 95; and Fraifer Dep. 2. See *id*.; see also

SDF 47-49, 52, and 67-68, (statement regarding CDN service used for quality); see also SDF 92 (regarding references to "I", "our", "your" or "we" used generally to mean our side, because the CDNs did not communicate with the Channels Providers).

- SOUF 57 - Disputed – SDF 57. The e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channel" in this e-mail. Fraifer Dep. 1, and Ex. 16 at Bates 101; see also explanation and citations in SDF 92.

- SOUF 58 - Disputed – SDF 58. This e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channel Al Jadeed" in this e-mail. Fraifer Dep. 1, Ex. 16 at Bates 135; see explanation and citations in SDF 92.

- SOUF 59 - Disputed – SDF 59. This e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channel Al Hayah and Al Arabiya" in this e-mail. Fraifer Dep. 1, and Ex. 16 at Bates 219; see also SDF 92.

- SOUF 60 - Disputed – SDF 60. This e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channels" in this e-mail. Fraifer Dep. 1, and Ex. 16 at Bates 225.  See explanation and citations in SDF 92.

- SOUF 61- Disputed – SDF 61. Verizon was forced by Dish to cutoff service to TCI and PTI. The CDN services preferred not to have a problem with Dish and were favored over small companies, TCI and PTI. Fraifer Dep. 1, at 232: 12-19; at 239: 13-23; at 240: 7-13; see also Exhibit 12 (correspondence acknowledging prior communications with Verizon).

- SOUF 62  - Disputed – SDF 62. Internap CDN was used only for testing; never formally acquired or used in production. Fraifer Dep. 1, at 297: 12-17; 236: 23-25; 237; 238: 1-13.

- SOUF 63 - Disputed – SDF 63. This e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channels" in this e-mail, and this is reflective of testing the service. Around this time, Tulix CDN services were being used. Fraifer Dep. 1, at 37-38; Frank Decl. ¶21 Ex. 17 at Bates 11; see also Exhibit 8.

- SOUF 64 - Disputed – SDF 64. The e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. There is no mention of the term "Protected Channels" in this e-mail, and this is reflective of testing the service. Tulix CDN services were being used at this time. Fraifer Dep. 1, and 2; Frank Decl. ¶21 Ex. 17 at Bates 27; see also Exhibit 8.

- SOUF 65 - Disputed – SDF 65. Internap CDN services are being used for testing purposes. These e-mails have not been authenticated and cannot be accepted due to evidentiary considerations. Fraifer Dep. 1, at 235: 17-25, at 236: 1-11; see also id.

- SOUF 66 - Admitted.

- SOUF 67 - Disputed – SDF 67. Tulix CDN services was used to improve quality. Fraifer Dep. 1 at 224: 17-25; 225-27; 228: 1-13; 253-55.

- SOUF 68 - Disputed – SDF 68. Tulix CDN services, like any other CDN service, was used to improve quality. See id. This e-mail has not been authenticated and cannot be accepted due to evidentiary considerations. The Defendants TCI and PTI owns the domain name, which is only part of the URLs. Fraifer Dep. 1, Ex. 25 at Bates 08-12.

- SOUF 69 - Admitted.

- SOUF 70 - Disputed – SDF 70. The Channel Providers "push", and the Defendants TCI and

PTI simply make the request. Also, this was for testing purposes only; unrelated to the alleged

Protected Channels. Fraifer Dep. 1 at 168. 184: 1-10; 168, 208; at 209-211, at 218: 21-25; at 219:

1-4. 221: 22-24; 222: 4-10, 22-24; at 228-230 (see statements referring to channel provider); and

Fraifer, Dep. 1, Ex. 16-18.

- SOUF 71 - Disputed – SDF 71. Assignment has not been confirmed, nor established.

Defendants are unaware how names were placed; the alleged admission is incorrect. Fraifer Dep.

1, at 210-11, at 212: 14-18. The reference to 91.151.145.43 is for telecommunications and

testing, outside the scope of this case, as explained therein. Fraifer Dep. 1, Ex. 16-18. All e-

mails, have not been authenticated and cannot be accepted due to evidentiary considerations. See

*id.*

- SOUF 72 - Disputed – SDF 72. The references to "I", "our", "your" or "we" do not mean the

Defendants, but, rather means 'our side' generally because the CDNs did not communicate with

the Channels Providers (as later herein defined – see SDF 92). The Channel Providers "push"

and perform the transaction and the work, and the Defendants TCI and PTI simply make the

request to the Channel Providers. Fraifer Dep. 1, at 206: 13-21; at 207: 6-10, 20-24. The term

"push" is defined by Fraifer. Fraifer Dep. 1 at 168. 184: 1-10; 168, 208; at 209-211, 221: 22-24;

222: 4-10, 22-24; at 228-230 (see statements referring to channel provider); and Fraifer, Dep. 1,

Ex. 16-18.

- SOUF 73 - Disputed – SDF 73. The STBs point to the internet, URLs. Fraifer Dep. 1, at 30:

8-25; 30: , Ex. 3. The UlaiTV STB and AhlaiTV STB each contain hardware and software,

only and an application pointing to the URL, which consist of a smart electronic device

receiver and an Android operating system equivalent to a regular computer, laptop, tablet or smart phone device. See *id*; Fraifer, Dep. 2, at 101: 22-24

- <u>SOUF 74</u> - <u>Disputed – SDF 74</u>. TCI paid for the Netup software, the license and service. Fraifer Dep. 1, at 265-66, 267, at p. 1-4.

- <u>SOUF 75</u> - <u>Disputed – SDF 75</u>. The Channel Providers update and stop service upon request. Defendants do not actually perform these activities. Fraifer Dep. 1, at 245: 9-14; at 246: 1-13; at 208: 6:12 (see statements referring to channel provider).

- <u>SOUF 76</u> - <u>Disputed – SDF 76</u>. The Protected Channels were provided by the Channel Providers, and phone calls were made by TCI and PTI to convey communications to the Channel Providers. Fraifer Dep. 1, at 265-66, 267, at p. 1-4. The channels are provided by Lenkeng and application vendors such as Netup (the "Channel Providers"). Fraifer, Dep. 1, at 235: 10-23; 247. The channels were initially provided by Cressida, as evidence by contract, the process continued thereafter with the Channel Providers; no CDN services were used. See Exhibit 6, at 2-3.

- <u>SOUF 77</u> - <u>Disputed – SDF 77</u>. The STBs point to the internet, URLs. The channel providers, such as Cressida and Zaap TV provided the channels per agreement. The channels continued to be provided by the Channel Providers in the same process, after Cressida. See *id*.; see Fraifer Dep. 1, at 30: 8-25; 30: 1; at 90: 1-5; at 95-96, 97:1-14; 168, 200-01; 222:4-10, 22-24, 223: 23-25, 224:1.

- <u>SOUF 78-80</u> - <u>Disputed – SDF 78-80</u>. Dish has not established that the alleged notices were sent, as stated therein. Any sent notices cannot be confirmed. Notices sent to counsel were received. However, notices allegedly sent to identified e-mails likely went to junk inboxes and were automatically deleted. Fraifer, Dep. 1, at 65: 23-25; at 66: 1-13. None of the alleged foreign works are specifically identified in the notices. (Metral Decl. ¶13, Ex. B-2.).

- SOUF 81 - Disputed – SDF 81. Dish has not established that the alleged notices were sent, as stated therein. Any sent notices cannot be confirmed. The notices allegedly sent to identified e-mails likely went to junk inboxes and were automatically deleted. Fraifer, Dep. 2, at 65: 23-25; at 66: 1-13. Any notices sent to a specific address were not received for reasons unknown and cannot be confirmed. Fraifer, Dep. 2, at 66: 14-25; 67: 1-12. TCI and PTI did cooperate with the CDNs timely to resolve any alleged issues. Fraifer Dep. 2, at 85-90. None of the alleged foreign works are specifically identified in any of the notices. (Metral Decl. ¶13, Ex. B-2.).

- SOUF 82 – Disputed – SDF 82. Dish has not established that the alleged notices were sent, as stated therein. Any sent notices cannot be confirmed. With respect to the content of the notices, none of the alleged notices identified the foreign works. See *id.*

- SOUF 83 - Disputed – SDF 83. The correspondence referenced has not been authenticated and cannot be accepted due to evidentiary considerations. Notices allegedly sent to identified e-mails likely went to junk inboxes and automatically deleted. Fraifer, Dep. 2, at 65: 23-25; at 66: 1-13.

- SOUF 84 - Disputed – SDF 84. Any notices sent to an address were not received for reasons unknown and cannot be confirmed. Fraifer, Dep. 2, at 66: 14-25; 67: 1-12; see *id.*

- SOUF 85 - Disputed – SDF 85. Fraifer as President of TCI and PTI, did not remember nor did he recall. Fraifer, Dep. 2, 67: 19-22.

- SOUF 86 - Disputed – SDF 86. Notices sent to counsel were received. Any notices sent to CDNs were timely resolved by TCI and PTI. Fraifer Dep. 2, at 85-90.

- SOUF 87 – Disputed – SDF 87. Any notices sent to CDNs were timely resolved by the Defendants TCI and PTI, Fraifer as President. It is uncertain how many notices have been sent; dates cannot be confirmed. Fraifer Dep. 2, at 85-90.

- SOUF 88 - Disputed – SDF 88. This timeline is largely due to the Channel Providers responsible for removing the alleged channels upon request. TCI and PTI did cooperate with the CDNs to resolve any issues. Fraifer Dep. 1, at 184: 1-10; at 208; at 209-211, at 221: 22-24; at 222: 4-10, 22-24; at 228-230 (see statements referring to channel provider); Fraifer Dep. 2, at 85-90.

- SOUF 89 - Disputed – SDF 89. All steps to remove the alleged channels were taken promptly, including the request to the Channel Providers. Fraifer Dep. 1, at 58-62; at 184: 1-10; at 208-211, at 221: 22-24; at 222: 4-24; at 228-230 (see statements referring to channel provider). See also explanations and citations in SDF 39-45.

- SOUF 90 - Disputed – SDF 90. The alleged channels are not advertised on www.ulaitv.com, buy maybe logos inadvertently placed.

- SOUF 91 - Disputed – SDF 91. The STBs are sold to customers located outside of the United States, and the CDNs for the alleged Protected Channels were not used except for any inadvertent mistakes outside of TCI's control. There is not mention as to the alleged "Protected Channels" in the correspondence, and the term "transmit" is improper; should be "pointed". Fraifer Dep. 1 at 30: 8-25; 30: 1.58:2-59:18, 62:25-63:3, 161:2-162:11; 168: 4-20: 254:18-255:9.

- SOUF 92 - Disputed – SDF 92. TCI and PTI sell the set-top boxes, and the channels are provided by the Channel Providers. Also, the alleged works are also available on the internet, free-to-air (FTA), worldwide. Fraifer Dep. 2, at 35 at 12-14; 36-37; see also www.mbc.net ; www.alarabiya.net ; www.mtv.com.lb ; www.aljadeed.tv ; www.nbn.com.lb ; www.lbcroup.tv ; www.al-nahar.tv ; www.wwitv.com. (not an exhaustive list)

- SOUF 93 - Disputed – SDF 93. TCI and PTI sells the UlaiTV and AhlaiTV STBs only, and the Channel Providers provide the channels. See *id.*

14

- SOUF 94 - Admitted.

- SOUF 95-97 – Disputed 95-97. The TCI's P&Ls and all schedules should be included; revenue and expense items should not be selectively removed. Fraifer, Dep. 2., 131, Ex. 2.

- SOUF 98 - Disputed – SDF 98. All STB costs, including cost of sales/goods sold (COS/COGS) and shipping costs and cost of support maintenance should be included. The TCI's P&Ls and all sales schedules should be included; no part selectively removed. Fraifer Dep. 1, Ex. 2.

- SOUF 99 - Disputed – SDF 99. These amounts do not reflect the total amounts paid as all expenses reflected on TCI's P&Ls and schedules should be included. Fraifer Dep. 1, Ex. 2.

- SOUF 100 - Disputed – SDF 100. The referenced amount does not reflect the shipping costs and general expenses (cost of support maintenance, and total amounts paid as all expense items reflected on the financial documentation provided should be considered. Fraifer, Dep. 1, Ex. 2.

- SOUF 101 - Disputed – SDF 101. The referenced documentation reflects all that could be Located at that time. The correct number will consider the P&Ls and schedules. Fraifer 1, at 85: 5-17; 88-89.

- SOUF 102 - Disputed, in part – SDF 102. The general expenses identified apply to the entire business, and any of these expenses should "net" against the IPTV revenues as a percentage of revenue. Fraifer, Dep. 2., 131, Ex. 2.

- SOUF 103 - Disputed – SDF 103. Fraifer, as President of TCI and PTI, can identity the total number of channels is about 250 (over), approximately. The ratio of the alleged Protected Channels (20/21 channels), allegedly infringed upon, to total channels is less than 10%. Fraifer Dep. 1, at 186-87 (describing number of channels); see Exhibit 6 at 4-10.

- SOUF 104 - Admitted.

- <u>SOUF 105</u> - <u>Disputed – SDF 105</u>. There is not any objective, reliable evidence to support this factual assertion. Slowikowska Decl. ¶ 8.

- <u>SOUF 106</u> - <u>Disputed – SDF 106</u>. Dish's factual assertion in that it benefits from 'exclusivity' presumes the legal determination sought and must be proven in this case. Doc 58-1; Doc 146.

- <u>SOUF 107-111</u> - <u>Disputed – SDF 107-111</u>. There is no objective, reliable evidence to support these factual assertions. Slowikowska Decl. ¶¶ 9-14.

- <u>SOUF 112</u> - <u>Disputed – SDF 112</u>. There is no objective, reliable evidence to support this factual assertion. Slowikowska Decl. ¶ 15; Metral Decl. ¶ 10.

- <u>SOUF 113, and 114</u> - <u>Disputed – SDF 113, and 114</u>. There is no objective, reliable evidence to support this factual assertion. Slowikowska Decl. ¶ 15.

- <u>SOUF 115</u> – Admitted, but the EULA is also available on planetitv.com.au.

- <u>SOUF 116</u> – Admitted.

- <u>SOUF 117</u> - <u>Disputed – SDF 117</u>. Nagrastar LLC is the joint-venture entity, and its LLC members (ownership interest) are Dish and Nagravision SA (hereinafter "Joint-Venture"). Dish is also an organizational member of IBCAP, but Nagrastar LLC is 'monitoring' the rights that Dish contracts for. Slowikowska, Dep. at 32: 9-17 (see statements regarding Chris Kuelling holding executive positions at both IBCAP and Dish, simultaneously): at 35: 20-25; at 36: 1-12 (see statement regarding joint venture); at 17: 3-6 (Echostar is a sister company); see Exhibit 13; at 23: 1-10 (see statements regarding the IBCAP, Dish's involvement and Nagrastar LLC's role). Dish, with its membership interest, has a controlling interest in the activity of Nagrastar LLC. By and through Dish's Joint-Venture, Nagrastar LLC purchased the UlaiTV STB when: (1) Nagrastar LLC engaged Ethos Risk Services LLC to purchase the UlaiTV STB; and (2)

Nagrastar LLC directly purchased the UlaiTV STB using Mr. Kevin McMonnies' account. Exhibits 9, and 10. Dish is also represented by the law firm of Hagan, Noll & Boyle, and one of its paralegals at the time purchased the AhlaiTV STB which was paid for by the law firm partner account. See Exhibits 9, 10, and 11; see also Slowikowska, Dep. at 39: 4-10; at 41: 2-5; 41-42.

- SOUF 118 - Disputed – SDF 118. Checking "I agree" and consenting or agreeing to the EULA, Terms of Use is necessary for purchase of the UlaiTV and AhlaiTV STBs. Fraifer Dep. 2, 147: 20-25, 148: 1-3 (statements explaining that agreement to the EULA by checking the box is necessary to purchase: referring to both UlaiTV and AhlaiTV STBs). Consent to the EULA, Terms of Use was completed, by Dish's Joint-Venture, when Nagrastar LLC and its agents purchased the UlaiTV STBs, and Dish's law firm purchased the AhlaiTV STB. See *id.*

- SOUF 119 - Disputed – SDF – 119. Dish is responsible for its Joint-Venture, and by and through its Joint-Venture, Nagrastar LLC, did direct, supervise or control the purchasing of the UlaiTV STB. Dish is also responsible for the purchase of the AhlaiTV STB. See *id.*

- SOUF 120 - Disputed – SDF – 120. Dish has not provided any reliable, objective supporting documentation or evidentiary basis for this factual assertion. Fraifer Dep. 2, 147:9-14 (statements regarding Dish production).

- SOUF 121 - Disputed – SDF – 121. By and through Dish's Joint-Venture, Nagrastar LLC had possession of these UlaiTV and AhlaiTV STBs. See Pascal Metral, Expert Report, Doc 146-24, 25' See also Slowikowska, Dep. at 47: 18-23 (regarding Nagrastar LLC's possession of STBs).

- SOUF 122 - Disputed – SDF – 122. Possession of the booklet would have occurred with the

purchase of the UluaiTV and AhlaiTV STBs. TCI and PTI believe the booklet was provided, but Dish's Joint-Venture lost the copy. Fraifer Dep. 2, at 154: 10-17; at 155-56.

- SOUF 123 - Disputed – SDF 123. Fraifer, as President of TCI and PTI, believes the booklet was provided, and that it references its website. Fraifer Dep. 2, at 154: 10-17; at 155-56.

- SOUF 124 - Disputed – SDF 124. By and through Dish's Joint-Venture, the UlaiTV and AhlaiTV STBs were in possession of Nagrastar LLC, and Nagravision SA. Dish has an ownership interest in Nagrastar LLC, and did at the time of the activity described in Dish's expert report, authored by Pascal Metral. Such activity is greater than merely monitoring, rising to the level of hacking the TCI's and PTI's network. Pascal Metral, Expert Report Doc 146-24, 25. See also Slowikowska, Dep. at 47: 18-23 (statement that the STBs were in possession of Nagrastar LLC); see also definition of hacking - see https://www.merriam-webster.com/dictionary/hack.

- SOUF 125 - Disputed – SDF 125. By and through Dish's Joint-Venture, the UlaiTV and AhlaiTV STBs were in possession of Nagrastar LLC, and Nagravision SA. Dish has an ownership interest in Nagrastar LLC as LLC member, and did at the time of the activity described in Dish's expert report authored by Mr. Metral is reflective of activity greater than monitoring rising to the level of hacking of the TCI's/PTI's network. Dish's Joint-Venture and direct ownership in Nagrastar LLC relate to a controlling, supervisory and directional interest in such activity. See id.

- SOUF 126 - Disputed – SDF 126. Any identification of any URLs occurred pursuant to, and by and through Dish's Joint Venture. The report content is not objective, nor is it reliable due to Dish's Joint-Venture, especially with respect to the assertions regarding the URLs and alleged Protected Channels. See id.

- SOUF 127-128 - Disputed – SDF 127-128. By and through Dish's Joint-Venture, the UlaiTV and AhlaiTV STBs were in possession of Nagrastar LLC, and Nagravision SA. Dish has an ownership interest in Nagrastar LLC and did at the time of the activity described in Dish's expert report, authored by Pascal Metral. Such activity rises to the level of hacking the TCI's and PTI's network. See doc 146-24, 25; see also Slowikowska, Dep. at 47: 18-23 (STBs in possession of Nagrastar LLC); see also https://www.merriam-webster.com/dictionary/hack.

- SOUF 129 - Disputed – SDF 129. By and through Dish's Joint Venture, Nagrastar LLC's activity amounted to more than monitoring, rising to the level of hacking TCI's and PTI's network which copied, damaged, impaired and/or disabled the quality of the URLs. Fraifer Dep 2, at 60: 17-21 (statements regarding hacking and interfering into the CDN network).

- SOUF 130 - Disputed – SDF 130. The AhlaiTV and UlaiTV STBs used in Nagrastar LLC's hacking consisted of two UlaiTV STBs and one AhlaiTV STB.

- SOUF 131 - Admitted.

- SOUF 132 - Disputed – SDF 132. The "I agree" checkbox was simultaneously available with the terms and conditions and the content on the website. The EULA, Terms of Use is/are necessary for purchasing the UlaiTV and AhlaiTV STBs. Fraifer Dep. 2, 147: 20-25, 148: 1-3).

- SOUF 133 - Disputed - SDF 133. The "I agree" checkbox was coupled with terms and conditions reference which correspond to the Terms of Use, End User License Agreement ("EULA") on the website (accessible on). The EULA, Terms of Use is necessary for purchase of the UlaiTV and AhlaiTV STBs. See Exhibit 9 (screenshots of Mr. McMonnies's purchase); Fraifer Dep 2, 191: 11-25 (statements regarding missing information on the screenshots provided).

- SOUF 134 - Disputed - SDF 134. The phrase 'terms and conditions' is synonymous with the

EULA, Terms of Use. Fraifer Dep 2, 183: 18-25; 184: 1-17; 186: 20-25.

- SOUF 135 - Disputed – SDF 135. Records were provided as available at that the time of request, including screenshots related to the purchases of the AhlaiTV and UlaiTV STBs. Fraifer, as President of TCI and PTI, explained that agreement to the EULA, Terms of Use was required to complete purchase transaction, at all times. Fraifer, Dep. 2, at 150: 1-17.

- SOUF 136 - Disputed – SDF 136. The EULA was revised, but Fraifer, as President of TCI and PTI, but he is not a lawyer. Dep. 2, 161:18-25; 164: 1-17 (statements regarding legal expertise).

- SOUF 137 - Disputed – SDF 137. All purchasers must agree to the EULA, Terms of Use to purchase the UlaiTV and AhlaiTV STBs, and in the EULA there is a modification acknowledgement section with respect to future revisions and compliance, and notifications to purchasers would be posted via website. Purchasers can visit the website at any time, but certainly visit the website when renewing the support/maintenance plan. Fraifer Dep. 2, at 204, 205: 1-13; Ex. 46.; See Exhibit 9, Mr. McMonnies.

- SOUF 138 - Disputed – SDF 138. The EULA was revised, but Fraifer, as President of TCI and PTI, is responding generally but he is not a lawyer. Dep. 2, at 161:18-25; 164: 1-17 (statements regarding legal expertise). Also, Fraifer was born in Lebanon and lived there until about 17/18 years-old. English is not his native language. Fraifer, Dep. 2, at 1:1-3; at 176-78.

- SOUF 139 - Disputed – SDF 139. Dish's referenced document is not authenticated. The versions of the EULA, Terms of Use was available on the websites at the time of those purchases, and contain the modification section. Fraifer Dep. 2, at 193-195, 204, 205: 1-13; Ex. 46, 54-55.

- SOUF 140-144 - Disputed – SDF 140-144. The Period Correct EULAs is the one attached to the Amended Counterclaim, and it applied to the identified purchases as the versions of the EULA Terms of Use were always available on TCI's and PTI's website for notification to purchasers and users of the UlaiTV and AhlaiTV STBs. Purchaser can visit the website at any time. Fraifer Dep. 2, at 193-195, 204, 205: 1-13; Ex. 46, 54-55.; see also Exhibits 9, 10, and 11.

- SOUF 145-146 - Disputed – SDF 145-146. The Period Correct EULA, Terms of Use is attached to the Amended Counterclaim, and any integration clause would be included as the up-to-date versions of the EULA, Terms of Use were always available on TCI's and PTI's website for notification to purchasers. see id..

- SOUF 147 - Disputed – SDF 147. The webpages for sale of the STBs and for the EULA and Terms of Use are all from the 'same' website. Fraifer, Dep. 2, at 181: 16-25.

- SOUF 148 - Disputed – SDF 148. The damages are the loss of business and time, away from business and family and more. Fraifer, Dep. 2, 179:17-25-180: 1-5; 209:1-14.


Certificate of Service

I Hereby Certify that on this 27th of April, 2018, I electronically filed the foregoing document through the US District Court CM-ECF filinf system which will electronically send copies to Plaintiff by and through its counsel.

/s/ *Francis R. Lakel Esq.*
Francis R. Lakel, Esquire
P.O. Box 331120
Miami, Florida 33233
FBN: 351237
Attorney for the Defendants