# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DISH NETWORK L.L.C.

        Plaintiff,

    v.

GABY FRAIFER, TELE-CENTER, INC.,
and PLANET TELECOM, INC.,
individually and together d/b/a
UlaiTV, PlanetiTV, and AhlaiTV,

        Defendant(s).

Case No. 8:16-cv-02549-EAK-TBM

_____/

## DEFENDANTS'/COUNTER-CLAIMANTS' RESPONSE TO PLAINTIFF'S DISPOSITIVE MOTION FOR FINAL SUMMARY JUDGMENT [Doc 146]

COMES NOW Defendants/Counter-Claimants', TELE-CENTER, INC, and PLANET TELECOM, INC, and GABY FRAIFER (hereinafter the "Defendants"), by and through undersigned counsel, hereby file Defendants'/Counter-Claimants' Response to Plaintiff's Dispositive Motion for Summary Judgment against Plaintiff, DISH NETWORK L.L.C. (hereinafter "Dish"), pursuant to Rule 3.01(b), Middle District of Florida, and hereby respectfully moves this Honorable Court to deny Dish's Motion, and, in support thereof, states as follows.

### Standard of Review

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998); see Fed. R. Civ. P. 56. The moving party bears the initial burden of informing the court of the basis for its

1

motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact. *Id.*; see also *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); see also *Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 968 (E.D. Mich., 2007). To survive Dish's Motion (Doc 146), the Defendants need only present evidence from which a jury might return a verdict in his favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the Defendants present such evidence, then…"there is a genuine issue of fact that requires a trial." *Id.* The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. See *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (citing *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368-69 (11th Cir.1982))."

## Argument

### I.  Dish Should Not Be Granted Summary Judgment on its Copyright Infringement Claim.

"To make out a prima facie case of copyright infringement, a *plaintiff must show* that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work]." See *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1301 (11th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). *Emphasis added.* Contrary to Dish's position, there is a genuine issue of material fact as to whether these necessary elements are satisfied when all justifiable inferences are drawn in the Defendants' favor and therefore this case must proceed to trial. (Doc 146, at p. 2).

### A.  Dish Fails to Establish Ownership of Valid Copyright in the Works.

Dish claims it owns the exclusive right to distribute and publicly perform all foreign works

airing on the Protected Channels in the United States, by and through executed written agreements/contracts with international networks. See (Doc 146, at 2-5); see also see §201(d)(1) ("ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law."). Accordingly, Dish emphasizes these written agreements, and delineates between those foreign works registered in the United States (the "Registered Works") and those unregistered (the "Unregistered Works"). (Doc 146, at 2-4). Dish's contracts contain many material redactions, authentication and evidentiary issues. (Statement of Disputed facts hereinafter referred to as SDF 2-33). Dish also presents numerous documents in support of its alleged rights under the Registered Works and Unregistered Works for the very first time, including various declarations identifying potential witnesses not previously disclosed by Dish to the Defendants during the discovery period despite multiple requests – Extra Declarations. (SDF 2); see also Exhibit 1; and additional contracts provided for the first time well after the discovery cutoff deadline (Doc 50) – Extra Contracts. See *id.*[1]

Dish's Extra Contracts and Declarations should not be relied on for purposes of summary judgment as they were not provided before the discovery deadline, and therefore denying the Defendants opportunity to depose these newly identified witnesses and evaluate relevant documents. See Fed. R. Civ. P. 26, 37 and 45. Nevertheless, the Extra Contracts also reflect material redactions, authenticity and evidentiary issues, including the absence of the signatory authority and agent verification for each respective company, notary acknowledgement nor any signature witnesses. (SDF 2-6). The Extra Declarations also raise the same authenticity and evidentiary concerns. See *id.* Dish has not provided sufficient documentation to establish that it

---

[1] Dish never produced an exhaustive list of the works or EPGs identified in its contracts during discovery, but if revealed, *may* show an exclusivity conflict to any or all foreign works allegedly conveyed therein. (SDF 2). Timely disclosure of the material witnesses now identified in the Extra Declarations would have provided a meaningful opportunity to pursue and evaluate. See *id.*

owns a valid copyright to prevail on its Motion for summary judgment. (SDF 2-33). There is a genuine issue of material fact as to whether Dish owns an exclusive right under 17 U.S.C. §106.

1.    <u>Dish Fails to Establish an Exclusive Right in the Registered Works.</u>

Dish cites to four Registered Works with the United States Copyright Office ("USCO"); each of these Registered Works are episode specific constituting as a separate work and reflecting a date of first publication before the effective date of registration. See SDFs 6-7; see *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116 (1st Cir. 1993) (acknowledging a "work" if it is independently copyrightable); see also *MCA TV, LTD v. Feltner*, 89 F.3d 766, 769-70 (11th Cir. 1996). Dish references 17 U.S.C. §410(c), but the certificates do not automatically establish copyright ownership. See *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).

Dish's reliance on the MBC Contracts and its additional MBC contract as identified in Extra Contracts, along with its newly provided MBC declarations as identified under Extra Declarations, are insufficient to establish continuity of ownership with respect to Dish's purported exclusive rights in the Registered Works for the relevant time-period for the following reasons: (1) the MBC contracts, and additional MBC contract documents are materially redacted and do not identify a conclusive contractual term and corresponding payment schedules; (2) the MBC contracts, and additional MBC contract documents have not been authenticated, nor are they executed with authority verification, notary acknowledgment and any witnesses (signatures); (3) the MBC contracts, the additional MBC contract documents and MBC declaration are simply signed without any signatory authentication, nor sufficient evidentiary support that all signatories are authorized MBC agents and/or authorized for each of the respective entities; and (4) Dish has failed to provide sufficient evidentiary support that no third

4

parties ever acquired the rights to the Registered Works allegedly conveyed in the MBC contracts during the contract term (yet to be disclosed). (SDF 2-11)[2].

For Dish to sufficiently establish an exclusive right in the Registered Works under §106, the ownership chain for each of the Registered Works must not only be exclusive, but also direct and continuous throughout the relevant period giving rise to its Amended Complaint. See §106. A party cannot convey a right to another party it does not have. See §106; see also *Davis v. Blige*, 505 F.3d 90, 99-100 (2d Cir. 2007) (stating that "An owner may give a license to someone to exploit the work in some way, provided he owns that particular copyright interest."). Dish fails to conclusively establish that there was not any break in ownership or exclusivity with respect to any of the Registered Works during the relevant period, and, consequently, it remains very much uncertain as to whether MBC possessed the rights in the Registered Works airing on the Protected Channels for the entire relevant period, and, if yes, whether Dish's claim to exclusivity was severed by MBC for any of the Registered Works or by any other party during this period. (SDF 2-11).

Dish's reliance on unauthenticated, redacted copies of the MBC Contracts, additional MBC contract documents[3] and declarations[4] to establish continuity of ownership exclusivity with respect to the Registered Works is insufficient to prevail for purposes of summary judgment. See *id*. There is a genuine issue of material fact as whether Dish owned its purported exclusive rights in the Registered Works, and during the entire relevant period under §106.

2.    <u>Dish Fails to Establish an Exclusive Right in the Unregistered Works.</u>

Dish claims exclusivity to all the unregistered foreign works ("Unregistered Works")

---

[2] On behalf of MBC, John Whitehead explains that MBC acquires copyrights in *many* of the works; and not *all* of the works. See 146-8, at 1 §3. The specific works not identified therein. See *id*.
[3] See Extra Contracts, MBC; SDF 2.
[4] See Extra Declarations, Whitehead Decl.; SDF 2.

airing on the Protected Channels[5], allegedly acquired via contract with the MBC Contracts (and additional MBC contract), IMD Contracts (and additional IMD contracts), World Span Contracts (and additional World Span contract), the Al Jazeera Contracts, and the Dream Contracts. (Doc 146 at 3-4); (SDF 2-33).

Nevertheless, Dish's contracts above, along with the Extra Declarations in support of its alleged rights in the Unregistered Works are insufficient for purposes of summary judgment for the same reasons previously raised above with respect to Dish's alleged rights in the Registered Works; specifically, (1) the MBC, IMD, World Span, Al Jazeera, and Dream Contracts, and additional MBC, World Span and IMD contracts, are materially redacted and do not identify a conclusive contractual term and corresponding payment schedules; (2) these contracts, along with the declarations identified in Extra Declarations are signed without authentication, a notary acknowledgment, and without any supporting documentation that all signatories are authorized agents for each of the respective entities; (3) Dish has failed to provide conclusive documentation that third parties never acquired the rights to Unregistered Works allegedly conveyed in these contracts during the contract term. (SDFs 2-33). Contrary to Dish's position, the concerns alone warrant a trial and should not be resolved at summary judgment.

Apart from above, Dish does correctly reference that the '[i]nitial ownership of a copyrighted work is determined by the laws in the work's country of origin.'" See *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290-92 (11th Cir. 2011) *emphasis added*; see also *Lahiri v. Universal Music & Video Distribution, Inc.*, 513 F. Supp. 2d 1172, 1176 (C.D. Cal. 2007)). However, Dish merely cites to unofficial, selective excerpts of the laws of the United Arab Emirates ("UAE"), Qatar, Lebanon, Egypt, Cypress, and Saudi Arabia to explain how MBC, Al

---

[5] Dish conveniently decides to not pursue its alleged rights for the Al Yawn, Protected Channel (allegedly acquired via contract between Dish and Gulf DTH LDC. See Dish's SUDF 2, n. 1. Dish's reason is due, apparently, to the alleged magnitude of the Defendants' alleged activity which is incorrect.

Jazeera, and Dream acquired in the initial copyrights in the Unregistered Works. (See Doc 146 at pp. 4-5); see Fed. R. Civ. P. 44.1. However, Dish has not provided anything official and therefore is unreliable to establish exclusive ownership in the Unregistered Works. See *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1367, and n. 6 (S.D. Fla. 2003) (noting that courts can independently determine issues of foreign law, outside of counsel presentation).

Moreover, while the Defendants certainly acknowledge 17 U.S.C. §101, §104, it should be emphasized that this District's opinion in *Dish Network L.L.C. v. TV Net Solutions, LLC et al*, is based primarily on a legal application to the allegations at dismissal, and not the on the *merits* of those allegations in any way whatsoever. 2014 U.S. Dist. LEXIS 165120 at *12, Case No: 6:12-cv-1629-Orl-41TBS (M.D. Fla., November 25, 2014) (citing *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 U.S. Dist. LEXIS 75032, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (holding that, in reviewing a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a]t this stage in the proceedings, [plaintiff] must simply allege, not prove, ownership . . . of a valid copyrighted work"). This case posture is well past the dismissal stage.

As with Dish's alleged claims to the Registered Works, Dish must establish an exclusive right in the Unregistered Works under §106, and such exclusive right must also be direct and continuous throughout the relevant period giving rise to its Amended Complaint. (Doc 58-1); see *Davis*, 505 F.3d at 99-100. Dish also fails to conclusively establish that there was not any break in ownership or exclusivity with respect to any of the Unregistered Works during the relevant period, and, consequently, it remains very much uncertain as to whether MBC, IMD, World Span, Al Jazeera, and Dream possessed the rights in all the Unregistered Works airing on the Protected Channels for the entire relevant period, and, if yes, whether Dish's alleged exclusive

rights in the Unregistered Works were ever severed during this period or the contractual term. (SDF 2, 12-33).

The Defendants certainly requested from Dish documentation supporting its alleged rights in the Registered and Unregistered Works, which would include supporting documentation regarding the direct ownership chain, beginning from the initial ownership of the foreign works to the owners of the Protected Channels, and subsequently to the contracts executed by Dish and relevant network parties. (SDF 2). Unfortunately, Dish refused to provide anything other than redacted copies of the MBC, IMD, World Span, Al Jazeera, and Dream Contracts until now, the Extra Contracts (also redacted) attached to its Motion for the first time. See *id.*

Regardless, Dish's reliance on unauthenticated, redacted copies of contracts and declarations to establish continuity of ownership exclusivity with respect to the Registered Works and Unregistered Works are insufficient to prevail for purposes of summary judgment. Without adequate and proper evidentiary support establishing the direct chain of ownership of the purported exclusive right in each of the foreign works, beginning from the initial owner of each of the relevant foreign works to the Plaintiff as required under §201(d)(1), the Plaintiff's claim to exclusivity is unsubstantiated for the relevant time-period and should be deemed unenforceable under the Copyright Act. And, without establishing ownership of an exclusive right under the Copyright Act, the Plaintiff cannot have standing under §201 and prevail on the merits of its claim for direct copyright infringement under the Copyright Act. There remains a genuine issue of material fact whether Dish's owned its purported exclusive rights under §106.

B. Dish Fails to Satisfy Its Burden in Establishing that the Defendants Infringed on its Rights.

Assuming, arguendo, that Dish establishes a valid ownership of an exclusive right under § 106, Dish still has not adequately established that the Defendants infringed on its rights. "[T]he owner of [a] copyright...has the exclusive rights to . . . distribute copies . . . of the copyrighted work to the public," "to perform the copyrighted work publicly," and "to display the copyrighted work publicly." 17 U.S.C. § 106.   "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright," and the owner of the copyright may "institute an action for any infringement of that particular right committed while he or she is the owner of it." § 501.

It must be emphasized from the outset that Defendants did not intercept or interfere with the encrypted service described in the Contracts. (see SDF 2, 39-45, 47-52, 54-65, and 67-68). The encrypted service allegedly being conveyed in the Contracts appears to be a specific package of foreign works airing on the respective channels (works are not specifically listed in the Contracts, nor has such a list ever been produced). See *id.* The encrypted service is the spirit and purpose of the Contracts, and the Defendants did not violate, intercept or interfere with the service nor its package associated with the public performance of these alleged works. See *id*; SDF 70-77 (explanations regarding the role of the Channel Providers).

Furthermore, and contrary to Dish's position, the Defendants TCI and PTI merely purchased from the Channel Providers and vendors the STBs and sold these STBs (hardware and software, only) to the consumers worldwide, and had no responsibility with respect to the creation of the initial URLs, nor any of the corresponding channels including the Protected Channels. (SDF 70-77). And, while the Defendants TCI and PTI did engage the (Content Delivery Network hereinafter referred to as CDN) to improve the quality of the initial URLs, they were only go-between facilitators or points of contact between the CDNs and Channel

Provider regarding this process. (SDFs 48-52, 54-65, 67-68, 70-77, and 92-93). The Defendants TCI and PTI sold the STBs provided by Channel Providers along with the initial set of URLs (also provided by said Vendors). See *id*; see also *Cartoon Network LP, LLLP*, 536 F.3d at 131-33 (requiring more than ownership of a machine used by other to make illegal copies to establish direct liability under the Copyright Act). The Channel Providers manufacture the STBs and create the initial URLs making the alleged "works" available on the internet to potential consumers worldwide including to those consumers located in the United States. (see SDF 70-77, and 92-93). TCI and PTI do facilitate communication between the Channel Providers and the CDNs to improve the data output quality of what is already made available by the Channel Providers on the internet, (Free to Air hereinafter referred to as FTA). See *id*.

Contrary to Dish's assertion, the Defendants did not "cause" anything, but rather the Protected Channels were already by the Channel Providers prior to the Defendants TCI and PTI purchasing and selling to the customers. See *id*. The Defendants TCI and PTI caused, if anything, through the utilization of the CDN services, was an improved data quality output corresponding to what was already made available by the Channel Providers; and all alleged works are also available FTA on the internet. See *id*.

Dish's reliance on *ALS Inc. v. Cloudfare*, Inc. is misplaced, as the court ruled on a cause of action against *Cloudfare, Inc.* different from the current action pending in this case. See No. 16-cv-05051-GW, 2017 U.S. Dist. LEXIS 46937 at *4 (referencing a previous ruling in the same case style, regarding claims against *Cloudfare Inc.* for contributory copyright infringement); see also

*Perfect 10, Inc. v. Amazon.com, Inc.* ("*Amazon*"), 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct

10

infringement by a third party."); see also *Subfilms*, 24 F.3d 1088, 1095 (9th Cir. 1994) (holding that U.S. copyright laws do not extend to extraterritorial acts of infringement even "where such acts result in adverse effects within the United States"). Dish's claims against the Defendants TCI and PTI are solely for direct copyright infringement, (Doc 58-1), and, therefore, the TCI's and PTI's acts of selling the STBs and utilization of CDN services to improve quality data output collectively do not constitute to a "volitional act" and therefore is no liability for direct copyright infringement. See *Cartoon Network LP, LLLP*, 536 F.3d at 131-33; see *Bwp Media United States v. T & S Software Assocs.*, 852 F.3d 436, 444 (5th Cir. 2017) (adopting the Volitional-Conduct requirement discussed in Aero, requiring a volitional act for infringement liability). Dish also fails to conclusively establish that the Defendant 'provided, controlled, and maintained any server for the alleged transcoded content. (Doc 146, at 8; SDFs 70-77).

While Dish, by and through its Joint-Venture, has produced an expert report authored by Pascal Metral, Nagravision SA, the report content and findings are easily challenged, inconclusive, and clearly biased and therefore unreliable[6]. (see SDF 39-45, and 117-130). Moreover, Dish's report was generated by the unlawful intrusion and "hacking" of the TCI's and PTI's CDN network and therefore further taints the reliability of its purported findings. See *id.* And, when reviewing the expert report carefully, Dish has not established that the Defendants TCI and PTI allegedly transmitted the Protected Channels. See *id.*

Dish must show direct, conclusive ownership from the initial owner of the exclusive rights to Unregistered and Registered Works airing on the Protected Channels allegedly conveyed in the Contracts, including the contractual term or applicable time-period, along with a material showing that the Defendants infringed on those rights during that period warranting protection under the Copyright Act. Without it, Dish cannot prevail on the merits of its claim for

---

[6] Federal Rules of Evidence, Rule 702; expert testimony factors.

direct copyright infringement. §201, §501. For the foregoing reasons, this Court should find that there does exist a genuine issue of material fact with respect to the dispositive issues underlying the Dish's claim against the Defendants' for Direct Copyright Infringement under §501. See *Dream Dealers Music*, 924 F. Supp. at 11450; see also *Fitzpatrick*, 2 F.3d at 1116-17. The Defendants deserve a trial to decide these dispositive issues on the merits, and are confident they will prevail.

## II.   Plaintiff Has Failed to Establish Any Liability on Behalf of Fraifer, Individually

Officers of a corporation may be held individually liable for the corporation's copyright infringement. See *Southern Bell Tel. & Tel. Co. Associated Tel. Directory Publishers*, 756 F.2d 801-811-12 (11th Cir. 1985) (stating that "An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement."); see also *Shady Records, Inc. v. Source Enters.*, 2004 U.S. Dist. LEXIS 26143 at 77-78** 03 Civ. 9944 (GEL) (S.D. NY, January 3, 2005) (acknowledging that "directors and officers may not be held liable based solely on a theory of control of the corporate entity,…).

While the Defendant Fraifer is the President and sole shareholder of TCI and PTI, it must be emphasized that Fraifer did not earn and or receive compensation directly related to the alleged infringement activity. (see SDF 36, 37, and 98-103). TCI certainly did not heavily profit (if at all, when factoring operating expenses), and such monetary value was a relatively small part of TCI's entire business during the relevant time-period. See *id*. And, it must be emphasized that Fraifer did not make every (day-to-day) decisions with respect to the alleged infringement activity. See *id*. Fraifer did not possess the requisite involvement nor direct financial interest with

respect to TCI's and PTI's alleged infringement activity and should not be held individually liable. There does exist a genuine issue of material fact. See *id.*

### III.   Dish Should Not Be Awarded Statutory Damages, Profits, and Attorneys' Fees

The Defendants TCI and PTI categorically dispute Dish's assertions that said Defendants infringed on its rights, and apparently did so on some sort of massive scale[7] continuously from June 25, 2015 and May 3, 2017. (Doc 146, at p. 10). As expected, Dish relies heavily on its expert report, by and through its, Joint-Venture, but said report remains unreliable for the reasons already previously raised herein. (See SDF 36, 37, and 98-103). Dish bifurcates its analysis into damages associated with the Registered and Unregistered Works, and the Defendants counter as follows.

### A.   Dish Should Not Be Awarded Statutory Damages for the Registered Works.

Dish asserts that the Defendants acted willfully under §504(c) and therefore claims that it should somehow be awarded maximum damages in the amount of $150,000.00 for each Registered Work infringed. Doc 146, at pp. 10-11. To the contrary, the Defendants' actions do not rise to the level of willfulness under §504(c) and Dish's claims are simply unobtainable. (see SDF 78-93, and 138). "[I]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed *willfully*, the court in its discretion *may* increase the award of statutory damages to a sum of not more than $150,000." See §504(c)(2). *Emphasis added*. However, merely proving willfulness does not automatically entitle a copyright holder to the statutory maximum under 504(c)(2) as this Court has emphasized that it retains *broad discretion* to determine an appropriate damages figure in each case. See *Quartet Music v.*

---

[7] Dish claims that it enjoys exclusivity, and benefits from not providing or sub-licensing the Protected Channels; Dish monopolizes the market in the United States. See SOUF 107, SDF 107; 15 U.S.C. §1.

*Kissimmee Broadcasting, Inc.*, 795 F. Supp. 1100, 1105-06 (M.D. Fla. 1992) (noting that the district court may exercise wide discretion in determining statutory damages). *Emphasis added.*

As a threshold matter, Dish cites to 17 U.S.C. §412 and references the three (3) month time-period allowed from publication in order to seek damages for any infringement activity *after* first publication. See §412(b); see (Doc 146-10). *Emphasis added.* However, based on Dish's position, the Defendants' alleged infringement activity would have occurred simultaneous with the day of first publication as indicated on each registration certificate and not after, and therefore entire purpose of registration of proper notice to the Defendants with respect to these Registered Works would not have obstructed. See *id.*[8]; SDF 6, 7. The effective date of these certificates of registration should control in this circumstance and statutory relief should not be permitted. See *X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 527-28 (E.D. Va. 2002); see also *Teevee Toons, Inc.*, 501 F. Supp. at 968 (ruling that the plaintiff was not entitled to statutory damages under §504 and attorney's fees under §505, after finding no genuine issue of material fact as to the defendant's activity commencing prior to the copyright registration date). Regardless, there is a genuine issue of material fact as to whether the Defendants acted willfully under §504(c)(2).

    i.   The Defendants' Did Not Act Willfully Under 504(c)(2).

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). Contrary to Dish's position, the Defendants simply did not possess the requisite knowledge, nor were their

---

[8] The Registered Works are episode specific, and Dish has not demonstrated that these works air between the reflective date of first publication and the date of effective registration. (See Doc 146-23, 24, 25, and 26).

14

actions the result of 'reckless disregard' for, or 'willful blindness' with respect to Dish's claims of copyright infringement during the relevant time period. (Doc 146, at p. 11); (see SDF 78-93, and 138).

While the Defendants acknowledge receiving a few of Dish's infringement notices containing allegations of copyright infringement, the Defendants simply did not understand the content of these notices, and, moreover even after reviewing the content is was very much unclear whether Dish possessed the rights alleged in said notices.[9] See *id.* This is especially true when considering the Defendants, along with the entire worldwide community including those located in the United States were able to access to the Unregistered and Registered Works on the internet, FTA[10]. (see SDF 92). Additionally, English is not Fraifer's native language which places a significant and material impediment to his actual knowledge of any infringement activity or ability to understand the content of these notices. (see SDF 138).

The Defendants did not take measures to only to 'appease' Verizon but acted in good faith to resolve the issue each and every time, and any activity thereafter was continued with the understanding that the issue was resolved. (see SDF 88-89). The Defendants TCI and PTI acknowledge Verizon's decision to terminate its CDN services, but it appears that Dish coerced, and forced Verizon into making that decision. (see SDF 61). The Defendants did not understand the content of these notices until well *after* working with the CDNs in good faith to satisfactorily resolve the issues raised. (see SDF, 62, 65, and 78). Once the Defendants retained legal counsel, the Defendants immediately began taking steps to cease the alleged activity with legal process then pending. (see SDF, 88-89). Dish's asserts eight (8) months to case activity after this case filing, but the Defendants TCI and PTI took immediate steps and any delay was outside their

---

[9] No works are specifically identified in the notices, therein.
[10] These works are available on the internet, FTA, and the Defendants will demonstrate at trial.

control, as this process is the Channel Provider's responsibility in coordination with the software vendors. (see SDF 77, 88-89). The Defendants acted in good faith and are not repeat offenders[11]. They did not "…[s]neer in the face of copyright owners and copyright laws."

For the forgoing reasons, the Defendants acted reasonably, and in good faith under the circumstances and their actions do not constitute 'reckless disregard" with respect to the Plaintiff's (alleged) rights. The Defendants' actions did not amount to "willful" conduct under §504(c). There does exist a genuine issue of material fact with respect to Dish's claiming damages under § 504(c).

ii.   <u>Dish is Not Entitled to the Defendants', TCI's and PTI's, Profits.</u>

Dish limits its request for monetary relief to disgorgement of profits for the alleged infringement of the Unregistered Works. (Doc 146 at 13). While a plaintiff needs to only show revenues bearing some "reasonable relationship" to the copyright infringement under 17 U.S.C. 504(b), the Defendants TCI and PTI have the burden to prove its deductible expenses and any associated revenue components. See *Beasley v. LPF, Inc.*, 691 F.3d 747, 768 (6th Cir. 2012). Defendants TCI and PTI remain confident that they will be able demonstrate at trial the following pre-allocation deductions of revenue: (1) that approximately 60% of the number of TCI's sales of STBs were to customers located in the United States during the time period at issue; and (2) that Dish's identified Protected Channels (21 in total, Doc 58-1) consist of less than 10%, approximately, of the total channels accessible by the STBs (over a total of more than 250 channels). (see SDF 52, and 98-103). The removal of the Cost of Sales/Cost of Goods Sold hereinafter referred to (COS/COGS) figures from the STB sales is certainly necessary followed by the above percentage allocations and deductions for operating expenses related such alleged activity; and even when using Dish's alleged calculations, the profit or net result is virtually

---

[11] The Defendants have never been associated with any allegations of copyright infringement prior to this matter.

worthless after accounting for the allocation percentages above and deduction for operating expense allocation (and, negative in some calculations). SOUF 95-97, SDF 52, 98-103. There is a genuine issue of material fact whether any profits should be awarded, and if awarded, how much they would be, if any?.

### iii. Dish is Not Entitled to Attorneys' Fees and Costs Under §505.

It must be emphasized that any award for attorneys' fees and costs under §505 is not automatic, and is completely subject to this Court's discretion. See §505. Courts in this jurisdiction consider various factors when deciding to award attorneys fees and costs to the prevailing party, such as the "frivolousness, motivation, objective unreasonableness and the need in the particular circumstances to advance consideration of compensation and deterrence." See *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014). Contrary to Dish's position, the Defendants have acted objectively reasonable and in good faith, and have certainly incurred their share of unnecessary expenses associated with Dish's pursuit of this litigation and handling of discovery matters. See *Hartman v Hallmark Cards, Inc.* 833 F.2d 117, 124-25 (8th Cir. 1987) (losing party litigating in good faith was not ordered to pay prevailing party's fees and costs). There remains a genuine issue of material fact whether attorney's fees and costs should be awarded under §505.

## IV.     Dish Is Not Entitled to an Injunction Against the Defendants.

Dish references the appropriate factor elements, but there is a genuine issue of material fact as to whether a permanent injunction should be awarded under §502. (Doc 146, at p. 16); see also factor test in *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir.2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Dish's entire basis for the injunction is primarily dependent on this Court's determination in that it has prevailed on the its claim for

direct copyright infringement even though the Defendants have explained there exists a genuine issue of material fact regarding all underlying dispositive issues. Regardless, there too remains a genuine issue of material fact as to whether the required elements for an injunction under §502 have been satisfied.

**V.     Dish Should Not Be Granted Summary Judgment on Defendants' Counterclaim**

The elements of a breach of contract claim are (1) valid contract; (2) a martial breach; and (3) damages. See *Beck v. Lazrd Freres & Co., LLC*, 175 F.3d 913, 914-15 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992) (noting that "An agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered to be separate entity outside of the contractual relationship…"); see also *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977), and *Mettler, Inc. v. Ellen Tracy, Inc*, 648 So. 2d 253 (Fla. 2d DCA 1994). Contrary to Dish's anticipated position, by and through its Joint -Venture, as well as its current law firm agents, Dish is responsible for the purchases of the UlaiTV and AhlaiTV STBs, entering into the EULA, Terms of Use, and breaching the terms therein when intercepting and hacking into TCI's and PTI's CDN network. (see SDF 117-130, and 132-148). TCI's and PTI's business ceased, including those business relations and revenues unrelated to the sale of the STBs and corresponding network. (see SDF 148).

**A.     There is a Valid Contract.**

Dish claims that it has never entered into a contract with the TCI and PTI, because: (1) Dish did not purchase any of the STBs and did not agree to EULA, Terms of Use; (2) was not in possession of the STBs; and (3) lastly, checking the "I agree" box does not mean the purchaser entered into the EULA, Terms of Use. (Doc 146, at p. 18).

18

First, Dish's Joint-Venture, Nagrastar LLC, utilized its agents at its disposal to purchase the UlaiTV STBs. (see SDF 117-119). Pursuant to Dish's Joint-Venture, Ethos Risk Services LLC was engaged to purchase the UlaiTV STB. See SDF 117. Nagrastar LLC also directly purchased UlaiTV STBs, and explicitly checked the terms of use box. See *id*. And, Dish, by and through its then law firm's paralegal, Sarah Weller, purchased the AhlaiTV STB. See SDF 117-119.

Second, by and through Dish's Joint-Venture, Nagrastar LLC and Nagravision SA possessed the UlaiTV and AhlaiTV STBs. (SDF 121). Even if Dish did not review EULA terms of use booklet, the terms of use were posted on its website at all times and the purchaser is never expected 'hunt down' these terms. (Doc 146 at p. 18-19); (see SDF 133, and 137).

Lastly, TCI and PTI requires each and every purchaser of the STBs to agree to the EULA, Terms of Use by electronically checking the box, which the Purchasers freely agree to when purchasing each of the STBs; otherwise the transaction will not be completed. (see SDF 132-144). Contrary to Dish's position, a checkbox is always presented to complete purchasing, and TCI and PTI provided reasonable notice to the purchasers of the STBs when the EULA, Terms of Use on their website prior to, during and after checking the "I agree" box when purchasing the STBs. See *id*. Furthermore, TCI and PTI did revise the EULA, Terms of Use, but each purchaser agrees to such changes especially when electronically selecting the same check box for each annual warranty maintenance, support plan. (see SDF 139).

For the foregoing reasons, there is genuine issue of material fact as to whether is a valid contract. See *Whetstone Candy Co. v. Kraft Foods, Inc*., 351 F.3d 1067, 1074 (11th Cir. 2003).

B.      There is a Breach of Contract.

19

Dish claims that the Defendants, TCI and PTI, cannot establish a genuine issue of material fact as to whether DISH breached the EULA, Terms of Use for several reasons: (1) Defendants TCI and PTI cannot show that the EULA prohibits the alleged conduct; (2) Defendants cannot show that Dish breached the EULA by "hacking"; (3) Defendants' counterclaim is preempted by federal law to the extent it is based on URLs in the DCMA notices; and (4) Dish's actions are privileged under Florida's litigation privilege; and (5) the EULA cannot be upheld as a matter of public policy. (Doc 146, at pp.23-24).

With respect to the first and second reasons above, there is a material breach of the EULA, terms of use for UhlaiTV and AhaliTV STBs. By and through Dish's Joint-Venture and agents, Dish is responsible for accessing the UhaliTV and AhlaiTV STBs and applying the process described in Dish's expert report. (see SDF 117-130, and 132-148). As set forth in Dish's expert report, Wireshark technology was used to break into TCI's and PTI's network without authorization to retrieve network data in violation of the EULA, Terms of Use. This activity is not merely monitoring but amounts to hacking TCI's and PTI's network and is prohibited by the EULA , Terms of Use.

Contrary to Dish's assertions, the Defendants' amended counterclaim for breach of contract is not preempted by federal law because it is not based on URLs referenced in notices, nor is based on defective Digital Media Copyright Act (DMCA) notices. (Doc 146 at 23; Doc 102). Furthermore, Defendants' amended counterclaim is not based on any actions occurring "during the course of judicial proceedings" and therefore Dish's litigation privilege fails. (Doc 146 at p. 23). Lastly, Dish raises a public policy defense for a limited focus inapplicable to this case. See *id.*

By and through Dish's Joint-Venture, and its agents to the extent applicable, resulted in the hacking of TCI's and PTI's network resulted in relentless pressure on the CDNs to cease service. SDF 61, 117-130, 132-148. Dish's Joint-Venture and its agents relentlessly attacked the CDNs, forcing the CDNs to discontinue service to TCI and PTI. SDF 61. There does exist a genuine issue of material fact with respect to the Defendants' amended counterclaim for breach of contract.

## CONCLUSION

This Court should deny Dish's motion for summary judgment on its direct copyright infringement claim against the Defendants, and also deny Dish's motion for summary judgment on Defendants' amended counterclaim for breach of contract.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of April, 2018, I electronically filed the foregoing document through the US District Court CM-ECF filing system which will electronically send copies to Plaintiff, by and through its counsel.

*/s/ Francis R. Lakel Esq.*
Francis R. Lakel, Esquire
P.O. Box 331120
Miami, Florida 33233
FBN: 351237
Attorney for the Defendants