UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DISH NETWORK L.L.C.,
        Plaintiff,

v.

                                   Case No. 8:16-cv-02549-EAK-TBM

GABY FRAIFER, TELE-CENTER, INC.,
and PLANET TELECOM, INC.,
individually and together d/b/a
UlaiTV, PlanetiTV, and AhlaiTV,
        Defendant(s).

**DEFENDANTS'/COUNTER-CLAIMANTS' MOTION TO STRIKE PLAINTIFF'S EXTRA DECLARATIONS AND EXTRA CONTRACTS FILED IN SUPPORT OF PLAINTIFF'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT [Doc 146]**

COMES NOW Defendants/Counter-Claimants', TELE-CENTER, INC. and PLANET TELECOM, INC. and GABY FRAIFER (hereinafter the "Defendants"), by and through undersigned counsel, hereby files Defendants' Motion to Strike Plaintiff's Extra Declarations and Extra Contracts (as later herein defined) filed in Support of Plaintiff's Dispositive Motion for Summary Judgment (Doc 146) against Plaintiff, DISH NETWORK L.L.C., (hereinafter the "Plaintiff"), pursuant to Local Rules 3.01(a),(g), and 3.04, and Fed. R. Civ. P. 37, and hereby respectfully moves this Honorable Court to grant Defendants' Motion, and, in support thereof, states as follows:

## Background

1.    The Plaintiff's filed an Amended Complaint for Damages and Injunctive Relief (hereinafter the "Amended Complaint") against Defendant pleading Count I, Direct Copyright Infringement under 17 U.S.C. §501 (Doc 58-1).

2.    The Plaintiff's Amended Complaint plead numerous allegations under the section titled "Dish's Copyrights", whereby the Plaintiff alleges that it purchased from, and entered into

written agreements with numerous audiovisual networks granting the Plaintiff the "[e]xclusive right to distribute and publicly perform the works that air on the Protected Channels..." during all relevant time periods in support of the alleged allegations in the Complaint (Doc 58-1, at 3, ¶¶12-13).

3.      In addition, the Defendants have an active counter-claim against the Plaintiff for breach of contract, which is based on the Plaintiff's acquisition of, and violation of the Defendant's terms and conditions. (Doc 102, 104).

4.      The Defendants diligently pursued and repeatedly attempted to obtain from the Plaintiff relevant documentation and information in relation to the active claims identified above during the discovery stage and before cutoff deadline of March 3, 2018. (Doc 50).

5.      Specifically, the Defendants, by through undersigned counsel, served on the Plaintiff two (2) sets of interrogatories ("ROG") Fed. R. Civ. P. 34, and all interrogatories were designed to obtain information directly related to the claims in this case, and for the Defendants to meaningfully conduct discovery before the deadline of March 3, 2018. (Doc 50). A copy of the Defendants' first and second ROGs, are attached hereto as Exhibit 1.

6.      The Plaintiff served its responses to the Defendants first and second ROGs, but only incomplete and evasive responses were provided, and the requested information was not received. A copy of the Plaintiff's Responses to the Defendants' first and second ROGs are attached hereto as Exhibit 2.

7.      With the close of discovery fastly approaching, the Defendants were required to move this Court to compel the Plaintiff to provide adequate responses to the Defendants' first and second requests for ROGs, and the related issues set forth therein are being addressed between parties per this Court's order. (Doc 133).

8. The Defendants also served on the Plaintiff three (3) requests for production ("RFP") pursuant to Fed. R. Civ. P. 34, and each and request for production included requests for documents, contracts, and emails, all of which were designed to address the claims in this case and meaningfully conduct discovery as permitted per this Court's order. (Doc 50). A copy of the Defendants' first, second and third RFPs is attached hereto as Exhibit 3.

9. The Plaintiff served its responses to the Defendants' first, second and third RFPs, by providing voluminous number of pages, sent piecemeal, at times unorganized, and consisting of redacted copies of contracts along with evasive and incomplete objections to selective responses. A copy of the Plaintiff's response to Defendants' first, second and third RFPs is attached hereto as Exhibit 4.

10. The Defendants, by and through undersigned counsel, attempted to obtain the remainder of the requested information and documentation, but due to the then quickly approaching discovery deadline of March 3, 2018, the Defendants were forced to rely on the responses and documentation and prepare for depositions accordingly.[1]

11. On March 3, 2018, the discovery period effectively closed but was extended for a very limited purpose to March 23, 2018 to permit select depositions. (Doc 50, 130, 131).

12. Throughout the discovery process, the Defendants also focused and relied in good faith on the Plaintiff's Rule 26(a) disclosures, namely the Plaintiff's initial disclosures served on or about January 16, 2017, and supplemental to its initial disclosures served on or about November 21, 2017, which identified generally the following networks but did not disclose the specific representatives by name[2]: (1) Al Jazeera; (2) MBC; (3) IMD; (4); World Span; (5) Dream

---

[1] The Defendants, by and through undersigned counsel, repeatedly requested the additional information and documentation from the Plaintiff but were unsuccessful.
[2] The Defendants, by and through undersigned counsel, requested the names of the individual representatives on behalf of the Networks during the discovery period. The Plaintiff did not provide.

(hereinafter the "Networks"). A copy of the Plaintiff's initial disclosures and supplemental initial disclosures are attached hereto as Exhibit 5.

13.     On April 6th 2018[3], after discovery had closed, the Defendants learned of the Plaintiff's newly discovered witnesses when the Plaintiff filed its Dispositive Motion for Summary Judgment (Doc 146), and attached additional declarations signed by previously unidentified corporate representatives for the Networks: (1) John Whitehead, dated April 6, 2018 (MBC), Whitehead, Decl. (Doc 146-8); (2) Haytham Elmokadem, dated April 4, 2018 (World Span, Dream), Elmokadem, Decl. (Doc 146-20); (3) Eithar Ali Mohamed Abutaha, dated March 29, 2018 (Al Jazeera) Abutaha, Decl. (Doc 146-3); and (4) Pierre Ayoub, dated April 5, 2018 (IMD) Ayoub, Decl. (Doc 146-5); (hereinafter "Extra Declarations").

14.     In addition, attached to the Plaintiff's Motion are also copies of newly provided contracts, which were previously requested in the Defendants' RFPs, but were never provided during discovery; specifically, the following: (1) additional World Span contract[4] (Doc 146-21, at 3-8); (2) additional MBC contract[5] (Doc 146-9, at 3-9; 146-10, at 2-12); and (3) additional IMD contracts[6] (Doc 146-6, at 2-41; 146-7, at 2-51); (hereinafter referred to as "Extra Contracts").

15.     On April 13, 2018, the Plaintiff strategically timed its disclosures and production, and well after the discovery stage, the Plaintiff served on the Defendants the Plaintiff's second supplemental initial disclosures to include the specific identity of the corporate representatives for the Networks. A copy of the Plaintiff's second supplemental initial disclosures is attached hereto as Exhibit 6.

---

[3] This is more than a month past the discovery cutoff deadline of March 2, 2018 (Doc 50).
[4] Elmokadem Decl., Ex. 1
[5] Whitehead, Decl., Ex. 2
[6] Ayoub, Decl., Ex. 1-9,

16.     The Plaintiff's failure to disclose the identity of the Network representatives identified in the Extra Declarations during the discovery period, in both its initial and supplemental disclosures and responses to the Defendants multiple ROGs, deprived the Defendants with a meaningful opportunity to investigate and depose these individuals and evaluate all documentation received during discovery, and now the Plaintiff presents the Extra Declarations as reliable evidence in support of Plaintiff's Motion for summary judgment.

17.     In addition, the Plaintiff's failure to provide the Extra Contracts during discovery period, despite the Defendant' multiple RFPs, severely restricted the Defendants' summary judgment preparation, as the Plaintiff now presents the Extra Documents as reliable evidence in support Plaintiff's Motion without any opportunity afforded to the Defendants to evaluate in preparation of its response to the Plaintiff's Motion. (Doc 146).

18.     The Defendants were denied any opportunity to effectively evaluate and contest the content of Extra Contracts and depose the newly identified material witnesses in the Extra Declarations, and, consequently, the Plaintiff should not be allowed to benefit from the Plaintiff's untimely disclosures and production, and the newly discovered Extra Contracts and Extra Declarations should be stricken from the summary judgment record, and the record entirely for all purposes,  and not be considered by this Court at any time.[7]

### Memorandum of Law

The Defendants are seriously damaged at the summary judgment stage and will continue to damaged at the trial stage, by the Plaintiff's failure to disclose all material witnesses and adequately respond to the Defendants' ROGs and RFPs during the discovery stage, before the deadline of March 3, 2018. (Doc 50, 131); see Exhibits 1-6. Each of the requests in the ROGs

---

[7] The Defendants strongly believe that the Plaintiff has additional documents not yet provided in response to its RFPs and ROGs; all of which are important to the material aspects of this case. See Fraifer, Dep. 2, 147: 9-14; See Exhibit 5, attached to Defendants' Response to the Plaintiff's Dispositive Motion for Summary Judgment.

and RFPs were all specifically tailored to obtain necessary, relevant information and documentation directly related to the allegations in both the Plaintiff's Amended Complaint and Defendants' Counterclaim, and, importantly to provide a meaningfully opportunity to prepare and conduct discovery in preparation for all dispositive stages in this case. This focus would most certainly include the summary judgment stage. The Plaintiff's should not be allowed to benefit at the summary judgment stage or any stage of these proceedings from its failure, seemingly orchestrated, to disclose and produce the Extra Documents and identity of the witnesses which weree suddenly identified in the Extra Declarations. (Doc 50).

A.    **Plaintiff's Extra Declarations and Contracts Should Be Stricken from the Record.**

The Plaintiff is required to provide the name of the individuals along with contact information and disclose all documents likely to lead to *discoverable information* and that Plaintiff *may use to support its claim* for direct copyright infringement which would certainly include the specific name of the Network representative. See Fed. R. Civ. P. 26(A) (…"without awaiting a discovery request") *emphasis added*; (Doc 50, 58-1). Such disclosures need to be timely for purposes of discovery and case management. See Fed. R. Civ. P. 26(c); see also 26(e) (noting that a party is not excused from timely Rule 26(a) disclosures because it did not investigate its case); see also *DS Waters of Am., Inc. v. Fontis Water, Inc.*, 2012 U.S. Dist. LEXIS 192614, at **55-56, Civil Action No. 1:10-cv-0335-SCJ (N.D. Ga., September 13, 2012) (ruling that a party could not rely on declaration and documents for summary judgment due to a party's failure to disclosure and produce during discovery). If a party fails to timely identify witnesses under Rule 26(a),(e), then the "party is not allowed to use that…witness to supply evidence on a motion…unless the failure was substantially justified or harmless". Fed. R. Civ. P.

37(c)(1); see also *Woods v. Austal, U.S.A., LLC*, 2011 U.S. Dist. LEXIS 42361, at **9-11, Civil Action No. 09-0699-WS-N (S.D. Ala., April 11, 2011).

It must be emphasized that the Plaintiff's Extra Declarations and Extra Contracts are all heavily used as evidentiary support for the Plaintiff's claims for direct copyright infringement in its Amended Complaint (Doc 58-1) and are now attempted to be used to prevail on its Dispositive Motion for Summary Judgment (Doc 146). In some instances, when reviewing the Plaintiff's Motion, the Plaintiff's evidentiary support appears to place a strong emphasis on documents reviewed after the fact, and these declarations may not necessarily be based on personal knowledge. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge ..."); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge."). Unfortunately, the Plaintiff now expects to benefit from the Plaintiff's failure to disclose the identity of these witnesses and adequately respond to the Defendants ROGs and RFPs during discovery, by heavily relying on the Extra Declarations and Extra Contracts to seek judgment as a matter of law. (Doc 146). This cannot be permitted.

1. The Extra Declarations.

The Plaintiff for the very first time attached to its Motion, the Extra Declarations – consisting of four Declarations in total[8]. The Plaintiff's initial disclosures were supplemented to include only the general names of the Networks, and not any individuals with specific knowledge who may have discoverable information in support of the Plaintiff's purported exclusive rights in alleged foreign works airing on the Protected Channels (as defined in its Amended Complaint; Doc 58-1). The Plaintiff also uses the Extra Declarations to establish that

---

[8] See *supra*, ¶13, Extra Declarations.

the Defendants infringed on the Plaintiff's alleged rights, which taken together, becomes the cornerstone of the Plaintiff's entire claim for direct copyright infringement against the Defendants.[9]

Not that the Defendants needed to request such information to trigger the Plaintiff's obligation to disclose, but the Defendants did request the identity and names of any and all individuals relating to the contracts in its first ROGs, numbers 1, 3, and 7. (See Exhibit 1, at 1, 2 Int. Nos. 1, 3 and 7). In response, the Plaintiff simply objects and refers to its supplemental disclosures which do not provide the names of specific individuals which send the Defendants on an open-ended fishing expedition knowing that the Defendants have extremely limited financial resources. (See Exhibit 2, at 1, 3, 6 Reps. 1, 3 and 7). The Defendants then served on the Plaintiff the Defendants' second ROGs seeking information related to the alleged infringement activity and the Defendants' claim for breach of contract, but the Plaintiff simply continued with its objections failing to materially answer. (See Exhibit 1, at 3-4).

Anticipated responses to the Defendants first and second ROGs would certainly solicit or remind the Plaintiff of its duty to disclose the specific individuals with personal knowledge on behalf of the Networks during discovery period so that the Defendants can meaningfully conduct discovery and not be surprised at summary judgment (or at any dispositive stage in this case). See Fed. R. Civ. P. 26(a), (e). This is simply not harmless error on the part of the Plaintiff, as the Defendants' first and second ROGs were specifically designed to seek and evaluate the material witnesses now being relied on by the Plaintiff, well past the discovery deadline and for the very first time. See *DS Waters of Am., Inc.*, 2013 U.S. Dist. LEXIS 192614, at **55-56 (ruling that a party could not rely on documents provided for the first time, two months after discovery, on its motion for summary judgment because such failure was not harmless); (see Exhibits 5 and 6),

---

[9] See *supra*, ¶2.

And, any anticipated defenses with respect to the Defendants' motions to compel are irrelevant as the Plaintiff's responsibility to disclose specific names of material witnesses is independent of such consideration. See *id* at \*\*56-57 ("DS Waters's argument that the blame for its post-discovery production of relevant documents rests with Defendants [] is unavailing."); see also Fed. R. Civ. P. 26(a),(e). For the foregoing reasons, the Plaintiff should not be allowed to rely on its Extra Declarations attached and filed in support of the Plaintiff's Dispositive Motion for Summary Judgment. (Doc 146). The same is true with respect to the Plaintiff's Extra Contracts.

2. The Extra Contracts.

Attached to the Plaintiff's Dispositive Motion for Summary Judgment are also the Plaintiff's Extra Contracts, which were also previously requested during discovery and are now provided for the very first time. (Doc 146; 146-6, at 2-41; 146-7, at 2-51; 146-9, at 3-9; 146-10, at 2-12; and 146-21, at 3-8). The Extra Contracts are used in support for the Plaintiff's Extra Declarations, namely for World Span, IMD and MBC. See *id*.

The Defendants served on the Plaintiff multiple requests for production requesting documentation from the Plaintiff that would be used to support its claim for direct copyright infringement. (See, Defendants' first, second and third RFPs, Exhibit 3). The Plaintiff simply responded with the typical objections, and while the Plaintiff did provide copies of redacted contracts with the Networks, it did not provide copies of the Extra Contracts, nor any correspondence or e-mails directly related to the Extra Contracts, nor related to the Extra Declarations. (See Plaintiff's Responses 1, 2, and 3, Exhibit 4). This is important, as the Extra Contracts are necessary for the Plaintiff to establish that it has acquired an exclusive right to all the foreign works airing on the Protected Channels as alleged in its Amended Complaint. (Doc 58-1). Without establishing this right, the Plaintiff's claim to direct copyright infringement falls

and the Defendants cannot even evaluate the Extra Contracts as they were denied that opportunity during discovery.

As set forth in the Defendants' first RFP, the Defendants RFPs 1, 2, and 4 are all specifically requesting the documentation support that the Plaintiff is relying on for its claim for direct copyright infringement beginning with its alleged claim to owning a legal right to the copyright work. (Doc 58-1; see Exhibit 3, Defendants' RFP 1, at 1-2). The Plaintiff responds with various, typical objections, and while it appears to agree to provide the documents, the Plaintiff fails to disclose the Plaintiff's Extra Contracts. (See Exhibit 4, Plaintiff's Response 1, at 1-4). The Defendants continued to meaningfully conduct discovery by serving on the Plaintiff the Defendants' second RFP, and each of the requests for production therein should have solicited the production of the Extra Contracts during discovery, but, instead, the Plaintiff did not provide the Extra Contracts, nor the specific identity of any individuals clearly sought and now identified in the Extra Declarations. (See Exhibits 3 and 4, Defendants second RFP, and the Plaintiff's Response 2). Similar conduction and objections were also raised by the Plaintiff with respect to the Defendants' third RFP. (See Exhibits 5 and 6, Defendants third RFP, and Plaintiff's Response 3).

As previously stated, the Defendants first, second and third RPFs were specifically tailored to solicit from the Plaintiff the evidentiary basis underlying its claims for direct copyright infringement, which it now attempts to rely on summary judgment and benefit from its failure to disclose. Moreover, the Defendants, to no fault of their own, and due to the Plaintiff's failure to disclose during the discovery period, were deprived of the ability to conduct meaningful discovery and depose any of the material witnesses now being identified in the Plaintiff's Extra Declarations and second supplemental initial disclosures. See Exhibits 5 and 6.

And, the Plaintiff's Extra Contracts are attached to the Extra Declarations, which raise additional concerns with respect to the extent of the personal knowledge of declarant executing the declarations and the content purported therein (and, in relation to the content in the Extra Contracts).

It should be noted that if the Plaintiff provided copies of the Extra Contracts during the discovery stage, the Defendants could have also properly evaluated the content therein including any claims to the Plaintiff's alleged initial ownership of the alleged foreign works, the production and publication of these foreign works, along with all related parties, agents, entities and subsidiaries identified therein.[10] All of which are material to the Plaintiff successfully supporting its claim for direct copyright infringement, and, importantly, are necessary for the Defendants' to evaluate and properly prepare for summary judgment and all dispositive stages of this case.

For the foregoing reasons, the Plaintiff's failure to provide the Extra Contracts, along with the identity of the material witnesses identified for the first time in its Extra Declarations, which also reference the Extra Contracts, severely injured the Defendants, and such failure should not be tolerated. The Plaintiff should not be able to rely on the Extra Declarations and Extra Contracts in support of the Plaintiff's Dispositive Motion for Summary Judgment (Do 146); see *DS Waters of Am., Inc.*, 2012 U.S. Dist. LEXIS 192614, at **55-56 (ruling that a party could not rely on documents provided for the first time, two months after discovery, on its motion for summary judgment because such failure was not harmless).

## CONCLUSION

Wherefore, the Defendant respectfully requests that this Honorable Court grant the Defendant's/Counter-Claimants' Motion to Strike Plaintiff's Extra Declarations and Extra

---

[10] The Extra Contracts and Extra Declarations name new entities not previously disclosed to the Defendants.

Contracts filed in Support of the Plaintiff's Dispositive Motion for Summary Judgment (Doc 146) against Plaintiff, DISH NETWORK L.L.C., (hereinafter the "Plaintiff"), and an execute an order striking the Plaintiff's Extra Declarations and Extra Contracts attached to the Plaintiff's Motion, identified as follows: (1) Whitehead, Decl. (Doc 146-8); (2) Elmokadem, Decl. (Doc 146-20); (3) Abutaha, Decl. (Doc 146-3); (4) Ayoub, Decl. (Doc 146-5); (5) additional World Span Contract (Doc 146-21, at 3-8); (6) additional MBC contract (Doc 146-9, at 3-9; 146-10, at 2-12); and (7) additional IMD contracts (Doc 146-6, at 2-41; 146-7, at 2-51).

## Rule 3.01(g) - CERTIFICATION

Pursuant to Local Rule 3.01(g), the Defendant hereby certifies that Defendant, by and through undersigned counsel, has conferred with Plaintiff's counsel throughout the discovery period in a good faith attempt to resolve the discovery issues raised by this Motion, and that agreement with respect to resolution could not ever be reached, and the Plaintiff is fully expected to object to the Defendant's position as filed herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of April, 2018, I electronically filed the foregoing document through the US District Court CM-ECF filing system which will electronically send copies to Plaintiff, by and through its counsel.

/s/ *Francis R. Lakel Esq.*
Francis R. Lakel, Esquire
P.O. Box 331120
Miami, Florida 33233
FBN: 351237
(305) 854-2713/(727) 856-6052 (Fax)
Attorney for the Defendants