# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA (TAMPA DIVISION)

DISH NETWORK, LLC,
a Colorado limited liability company,

     *Plaintiff, Counterclaim-Defendant*,

                                     Case No. 8:16-cv-2549-EAK-CPT

v.                                       Honorable Elizabeth A. Kovachevich

                                       Magistrate Judge Christopher P. Tuite

GABY FRAIFER, an individual Florida resident,
PLANET TELECOM, INC., a Florida corporation,
and, TELE-CENTER, INC., a Florida corporation,

*Defendants, Counterclaim-Plaintiffs*.

_____/

## DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 56, Planet Telecom, Inc. ("PTI"), Tele-Center, Inc. ("TCI") and Gaby Fraifer ("Fraifer") ("Defendants"), by and through their undersigned counsel, hereby move for summary judgment on Count I of Dish Network, LLC's ("Plaintiff") Amended Complaint (Dkt. 62) ("Complaint") and in support, state as follows:

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Supreme Court recently resolved a split in the circuit courts and held that copyright registration is a is a mandatory precondition to the filing of a copyright infringement claim. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571 (U.S. March 4, 2019). Here, Plaintiff's assertion of the registered and unregistered foreign works is unsupported by any admissible evidence of ownership must, as a matter of law, be rejected for lack of standing. *Id.*

"To establish a claim of copyright infringement, a plaintiff must prove, first, that he owns a valid copyright in a work and, second, that the defendant copied original elements of that work."

*Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000). Accordingly, in order to state a valid claim for copyright infringement and provide fair notice of its claims and the grounds upon which such claims rest, a plaintiff must set forth facts in its complaint sufficient to allege, as to each individual defendant: (1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns valid copyrights to the protectable elements of the works allegedly copied; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts and during what time defendants allegedly infringed the copyright. See *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1479 (S.D. Fla. 1990); 3 Nimmer § 13.01[A] (1984) (ownership elements). Plaintiff also bears the burden of proving compliance with statutory formalities. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010).

Plaintiff has not sufficiently pled nor proven through admissible evidence the requisite elements of its direct infringement claim as to each defendant. A finding of summary judgment dismissing a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Glass Egg Dig. Media v. Gameloft, Inc.*, 2018 U.S. Dist. LEXIS 130219, at *4 (N.D. Cal. Aug. 2, 2018) (dismissing copyright claim on summary judgment for failure to establish copyright ownership under foreign law). As further explained herein, Plaintiff failed to: (a) specifically identify *even a single unregistered work* in its Complaint or during discovery; (b) establish ownership of valid copyrights from the initial author(s) under applicable foreign law; (c) identify the protectable elements of *any* of the works; (d) establish that the unregistered works are foreign works and exempt from the registration requirement, and (e) support through admissible evidence, facts establishing the specific acts, dates and times upon which each defendant allegedly infringed each asserted work by copying protected elements.

Moreover, record evidence overcomes the presumption of validity and establishes that the asserted registered foreign works are invalid and unenforceable on their face, as a matter of law because they falsely claim: (i) authorship, (ii) ownership under the work-for-hire doctrine, (iii) date and place of first publication and (iv) were the subject of an invalid transfer under UAE law. Accordingly, the claim of ownership of the registered works is invalid. Even after attempting to improperly shoehorn entirely new evidence unquestionably requested of Plaintiff during discovery into its Motion for Summary Judgment [Dkt. 146], Plaintiff still fails to provide *any* evidence of initial authorship or assignment of the works to the claimants of the registered works. Plaintiff cannot meet the threshold requirement of proving the ownership element of its prima facie case of copyright infringement and Defendants are entitled to summary judgment.

Additionally, because the registered works were offered to and prospectively assigned to Plaintiff for further distribution, by definition, they were "published" as of the date of their assignment. (SOUFs 3, 9-13, 30-35, 47, 57, 95-96, 115, 123) Thus, the date of first publication claimed on the face of the registered works is invalid. (SOUFs 30-35.) Moreover, because the uncontroverted evidence establishes that the unregistered works were each published globally and simultaneously on the Internet in non-treaty countries and the United States, the unregistered works are each unregistered United States works which pursuant to recent Supreme Court precedent and 17 U.S.C. 411(a), may not be asserted prior to registration. (SOUFs 9-14, 21, 26, 51, 99-100.) Finally, Plaintiff's copyright claims also fail because the "channels" and "signals" not protectable subject matter under the Copyright Act. 17 U.S.C. § 101. (SOUFs 9-14, 19-21.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when, based on admissible evidence in the record, "there is no genuine dispute as to any material fact and the [parties are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function on summary judgment is to determine whether there

exist any genuine issues of material fact to be tried, not to resolve any factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III.   PLAINTIFF CANNOT MEET ITS BURDEN TO ESTABLISH A PRIMA FACIE CLAIM OF COPYRIGHT INFRINGEMENT

### A. Plaintiff fails to state a claim for copyright infringement.

"To state a claim for copyright infringement a complaint must allege:  (1) the specific original work that is the subject of the copyright claim; (2) that the plaintiff owns the copyright in the work; (3) that the work in question has been registered in compliance with the statute; and (4) by what acts and during what time the defendant has infringed the copyright." *Sater Grp., Inc. v. Jack Bartlett Cust. Homes Creations, Inc.*, 2007 U.S. Dist. LEXIS 2353, at *2-3 (M.D. Fla. 2007) (J. Moody).

In order to state a claim, courts in this district have unequivocally required that a plaintiff "must allege [in its complaint] the ***specific*** original work[s] that [are] the subject of its copyright claim." *Id.*  Here, rather than specifically identifying any alleged unregistered works in its Complaint, Plaintiff merely alleges that a "vast number of additional, unregistered copyrighted works [] also aired on the … [c]hannels."  (SOUFs 2-6, Dkt. 62, at ¶13.)  Defendants requested that Plaintiff identify its unregistered works very early in this case.  (SOUFs 8, 10, n. 2.)  Plaintiff objected to the request, producing only copies of the registered works and heavily redacted contracts which also fail to specifically identify any of the registered or unregistered works.  *Id.* Although such information was under its direction and control, Plaintiff failed to specifically identify even a single unregistered work until the filing of its Summary Judgment Motion. (SOUFs 2, 10-12.) Without such information, Defendants were without notice of the claims against it and, thus, unable to test the evidence or develop its defenses throughout the entirety of this litigation.[1]  The uncontroverted evidence establishes that Plaintiff failed to meet its threshold

---

[1] Plaintiff's failure to specifically identify any unregistered works in its Complaint and throughout the course of discovery in this matter cannot be cured at the Summary Judgment stage and its attempts at trial by surprise in allegedly identifying unregistered works for the very first time in affidavits to its Motion for Summary Judgment [Dkt. 146] must be precluded as improper and prejudicial to Defendants. Fed.R.Civ.P. 37(a)(4), (b)(2)(A)(i-vii) &

burden in identifying the unregistered works that are the subject matter of its claim.  (Dkt. 62.)

Thus, as a threshold matter, "[s]ince, *inter alia*, plaintiff d[id] not identify the specific

[unregistered] works allegedly infringed by defendants in Count I[] of the amended complaint, it

fails to state a plausible claim of copyright infringement with respect to those unspecified 'Other

Works.'" *See Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 202 (E.D.N.Y. 2018)

(dismissing claims with prejudice). Plaintiff's cannot now add new claims to its suit.  (Dkt. 62.)

During discovery, Plaintiff's Corporate Representative could not identify any specific

works during her deposition and, instead, stated "you will have to refer back to the contracts to

see whether all of this content Dish has exclusive rights." (SOUF 2.) The contracts produced by

Plaintiff also fail to identify even a single unregistered work. (SOUFs 9, 11-12).[2]

## B.    Plaintiff Failed To Identify Any Of The Unregistered Works.

Defendants are entitled to partial summary judgment because the indisputable facts,

Complaint and admissible evidence of record establish that Plaintiff failed to specifically identify

even a single unregistered work.  (Dkt. 62, SOUFs 2-9, 11-12.)  First, the *Amended* Complaint

---

(c)(1), 56(c)(2) (such evidence is not evidence of record, but inadmissible hearsay, legal conclusion and opinion evidence offered without foundation or proper authentication. Discovery is long closed and Defendants were precluded from testing the veracity and developing its defenses to any such allegations.

[2] Courts have uniformly dismissed claims like those alleged here. *See e.g.*, *Cole v. John Wiley & Sons,* 2012 U.S. Dist. LEXIS 108612, at *36-37 ("Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim."); *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,* 2017 U.S. Dist. LEXIS 22548, *33-34 (finding nearly identical claims alleging infringement of unspecified foreign "programs" insufficient to meet Rule 8); *Master Sound Int'l, Inc. v. Polygram Latino U.S.*, 1999 U.S. Dist. LEXIS 6287, at *6 (dismissed for failure to identify the specific works that were the subject of the claim to allow determination of ownership of valid copyright under Mexican law); *Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942) (holding allegations that defendant copied unspecified episodes, characters and dialogues from any of six books lacked sufficient specificity); *Plunket v. Doyle*, 2001 U.S. Dist. LEXIS 2001, 2001 WL 175252, at *4 (S.D.N.Y. 2001) (as is the case here, holding claims insufficient that merely listed certain works, and then alleged the claim was also intended to cover "other" unidentified works); *DiMaggio v. Int'l Sports Ltd.*, 1998 U.S. Dist. LEXIS 13468, 1998 WL 549690, at *2 (S.D.N.Y. 1998) (concluding plaintiff failed to specify which original works were the subject of the copyright claim, where plaintiff merely referred to "nebulous multiple images"); *Lambertini v. Fain*, 2014 U.S. Dist. LEXIS 131390, at *6-9 (same)("[B]y failing to allege which specific original works are at issue in this case, the Court also cannot determine whether Plaintiff has properly alleged ownership in the copyrights that have allegedly been infringed." *Id.* at *7); *Calloway v. Marvel Entm't Group*, 1983 U.S. Dist. LEXIS 15688, at *6 (dismissal based on Rule 8 for failure to allege each specific work, the dates and acts substantiating the alleged infringement).

indisputably fails to allege facts sufficient to identify which, if any, of the registered works are the subject of Plaintiff's claim of copyright infringement in Count I.  (*Id.*) Plaintiff cannot state a valid claim under Rule 8 by simply alleging the mere existence of four registered works and a "vast number of unregistered works" leaving each defendant to guess what works it has allegedly infringed and if they are valid.  It is watershed case law that, at a minimum, the Complaint must give each defendant "fair notice of what the . . . claim is [as to each specific work] and the grounds upon which it rests." *Iqbal*, 556 U.S. at 698-99 (2009). Simply reciting the existence of copyrights is not enough. *Twombly*, 550 U.S. at 555 ("[F]ormulaic recitations . . . will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."); *Iqbal*, 556 U.S. at 678 (2009).

Courts, under nearly identical facts, have dismissed such pleadings in copyright infringement cases for failure to state a claim.  *See e.g., Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,* 2017 U.S. Dist. LEXIS 22548, at *30 ("*Infomir*") ("I agree that the Complaint … fails adequately to identify the works allegedly infringed, fails to allege the facts necessary to demonstrate that plaintiffs possess exclusive rights in those works under Russian law, and fails to show that the moving defendants provided the type of service that could constitute direct infringement under the Copyright Act.").  *See especially*, *Infomir*, at *34 (S.D.N.Y. 2017); *see also Mosley*, 794 F. Supp. 2d 1355, 1373 & n.1 (S.D. Fla 2011) (granting summary judgment and denying on similar facts Plaintiff's motion to amend the pleadings after close of pleadings and discovery cutoff "Defendants would be prejudiced by allowing an amendment to the complaint at this juncture."), *aff'd* 694 F.3d 1294, 1312 (11th Cir. 2012).

Plaintiff's Amended Complaint does not even attempt to identify *any* of the unregistered foreign works.  *See e.g.*, *Infomir*, at *33 ("[P]laintiffs never define the term 'Program,' and never

identify a single program as to which any of them claims to own exclusive rights infringed."). Without such identification, neither Defendants nor this Court, can even begin to evaluate whether the remaining elements of Plaintiff's claims – including ownership of exclusive rights under foreign law and infringement – have been met.  Thus, as a matter of law, Count I of the Amended Complaint must be dismissed with prejudice for failure to state a claim for infringement of the unidentified, unregistered foreign works.  *See Oravec v. Sunny Isles Luxury Ventures, LLC*, 527 F.3d 1218, 1231-2 (11th Cir. 2008); *Mosley*, 794 F.Supp.2d 1355, 1373.[3]

## IV.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON INFRINGEMENT BECAUSE PLAINTIFF CANNOT PROVE OWNERSHIP

### A.     Plaintiff Cannot Meet It's Burden To Prove Initial Ownership Under Foreign Law Of The Foreign Works And Cannot Establish Standing.

The exclusive rights of copyright owners granted by Congress under § 106 of the Copyright Act may only be enforced by an owner of the right.  *See* 17 U.S.C. § 501(b). The Copyright Act states that "a grant of exclusive licensee rights is considered a transfer of ownership rights and therefore must be in writing." *See Karlson v. Red Door Homes, LLC*, 611 F. App'x 566, 569 (11th Cir. 2015);17 U.S.C. §§ 101, 201(d) and 201(a). "***If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright.  Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act.***" *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985) (emphasis added) (citing *Bell v. Combined Registry Co.*, 397 F. Supp. 1241, 1245 (N.D. Ill. 1975), *aff'd*, 536 F.2d 164 (7th Cir. 1976), *cert. denied*, 429 U.S. 1001 (1976)).

---

[3] The same is true here.  The original complaint was filed in August 2016, 31 months ago, pleadings closed on February 17, 2017 and the discovery cutoff in this case was March 3, 2018.  Allowing amendment now would be manifestly unjust.  Defendants could not possibly marshal defenses to such newly identified claims, each of which would necessarily require extensive discovery efforts, including discovery of foreign networks under the Hague Convention, new 30(b)(6) depositions of Plaintiff and discovery of relevant third-parties.

In the Eleventh Circuit, in determining ownership of a foreign work, "courts focus on two distinct points in the chain of title: first, courts determine who *initially* owned the copyright; second, courts determine whether or not the initial owner [validly] *transferred* any of their exclusive rights." *RCTV Int'l Corp. v. Rosenfeld*, 2016 U.S. Dist. LEXIS 136867, at *16 (S.D. Fla. 2016)("*RCTV*") citing *Saregama*, 635 F.3d 1284, 1290, 1292 (11th Cir. 2011). Further, in determining initial ownership and the validity of each subsequent transfer of an author's exclusive rights, courts "look to the law of a foreign country where ownership of the work was established or transferred. . . even in the context of a U.S. infringement action." *Id.* ("Initial ownership … is determined by the laws in the work's country of origin."); U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 102.6 (3d ed. 2014)("USCO Compendium") (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 88-92 (2d Cir. 1998) ("*Itar-Tass*")(adopted by the 11th Cir. in *Saregama*).

Plaintiff's reliance on *Imperial Residential Design, Inc., v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) in an effort to avoid Defendants' meritorious challenge to its failure to establish ownership of the asserted works "is without merit." *See Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325, 1334 (S.D. Fla. 2009) *aff'd* 635 F.3d 1284 (11th Cir. 2011). As the court held in *Saregama*, Plaintiff "misquotes" *Imperial Residential*, this is not a case "where both the original owner and the transferee have joined as plaintiffs in the same lawsuit and the assignor re-assigned the copyright to the assignee immediately prior to the infringement giving rise to the case in order to cure any defect in a prior assignment." *Id.* (granting summary judgment to Defendants, where Plaintiff failed to meet its burden in proving license agreements established initial ownership of foreign works); *see also Triple Tee Golf, Inc. v. Nike, Inc.,* 511 F. Supp. 2d 676, 699-701 (N.D. Tex. 2007) (same) (discussing *Imperial Residential* at length). Additionally, a Plaintiff

asserting a foreign work must establish initial ownership.  Here, applicable foreign law prohibiting the very transfers relied upon by Plaintiff, coupled with the complete absence of any evidence whatsoever of a valid transfer of ownership from any of the authors of the works warrants summary judgment in favor of Defendants.

Plaintiff also misstates *Imperial Residential's* holding regarding *nunc pro tunc* or pre-suit curative assignments, which as the Court found, are valid if, and only if, executed *prior to infringement*, not during the course of an infringement suit.  *See Saregama*, at 1336 ("[D]iscovery has closed and [Plaintiff] is obligated to proffer evidence of ownership at this juncture in order to survive summary judgment.").  Likewise, as the Eleventh Circuit has held, Plaintiff cannot rely upon declarations concurrently filed with its statement of material facts that "baldly" contain "unsupported, conclusory, and general attestations" regarding initial ownership of foreign works. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1310 (11th Cir. 2012).  Such statements "lack[] probative value, and [are] insufficient to prevent a grant of summary judgment." *Id.*

In its Amended Complaint, Plaintiff baldly alleges, without any factual or evidentiary support of initial ownership or proof of a valid chain of title from the initial owners, the conclusory assertion that it received exclusive rights in foreign works from various agents and affiliates of the foreign networks who, in turn, allegedly acquired the works from others, who themselves claim to have received rights from still others.[4]  (SOUFs 1-13.) The record, however, is devoid of any

---

[4] Dkt.62, at ¶11-13 (Plaintiff fails to plead facts: (i) specifically identifying even a single unregistered work, (ii) the initial owners of any works under applicable foreign law, (iii) the chain of title showing ownership of any specific work under § 501(b), (iv) when, where, how and through what means any of the works were first published under § 101, (iv) identifying any protectable elements of any such works, or (v) any specific act, dates or times of alleged infringement of even one specific work.  Instead, the Complaint generically recites the mere existence of "[a] vast number of additional, unregistered [and unidentified] copyrighted works" that allegedly "aired" on any one or none of "hundreds of video and audio channels" aired by twenty-two different foreign networks. Such a pleading fails to state a claim because it fails to allege sufficient facts to even identify any specific work alleged to be infringed, initial ownership of all authors of each work under foreign law, a chain of title establishing Plaintiff's standing, exemption from the registration requirement of § 411(a), first publication in a foreign country, any acts, dates or times of alleged infringement by each defendant, for each work, and the grounds upon which each of its claims rest.

evidence establishing initial ownership in the authors of any of the foreign works under applicable foreign law.   (SOUFs 2, 9, 11-13, 45, 53-56, 59, 61-86, 95-105.) Plaintiff cannot rely upon downstream agreements to prove initial ownership, which fail to identify the initial owners or specific works and are each invalid as a matter of foreign law. (SOUFs 37-38.)

Moreover, the record evidence establishes that there is no genuine dispute that the agreements upon which Plaintiff relies, including underlying agreements between foreign third parties, fail to affect a valid transfer in *any* of the asserted works because they are each null and void *ab initio* as a matter of applicable foreign law. [5]  (SOUFs 36-37.) "Thus, not only is [Plaintiff] unable to prove the first element of a prima facie case of copyright infringement . . . but it also lacks statutory standing to bring this claim."  *Saregama*, 635 F.3d at 1297.

Controlling Eleventh Circuit and foreign law, Plaintiff's admissions and the evidence of record establish that the Registered Works are also invalid on their face because they each falsely claim: (i) authorship, (ii) ownership pursuant to the work-for-hire doctrine – expressly rejected and invalid under U.A.E. law, (iii) first publication in the U.A.E., and (iv) inaccurate dates of first publication.  Because the indisputable evidence and controlling case law establish Plaintiff cannot meet its burden to establish ownership, it does not have standing pursuant to 17 U.S.C. 501(b) and judgment should be entered in favor of Defendants on Count I of the Complaint.

**B.      Plaintiff does not hold any rights to the Registered Works because they were never validly transferred to Plaintiff and are invalid on their face.**

---

[5] Defendants have provided a declaration from a prominent U.A.E. Intellectual Property practitioner to assist the Court in its analysis of the foreign law at issue in this matter pursuant to Fed. R. Civ. P. 44.1. (SOUF) "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The Court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.  Rule 44.1 has "two purposes: (1) to make a court's determination of foreign law a matter of law rather than fact, and (2) to relax the evidentiary standard and to create a uniform procedure for interpreting foreign law." *In re Vitamin C Antitrust Litigation*, 837 F.3d 175 (2d Cir. 2016).

Plaintiff cannot rely on the Registered Works as prima facie evidence to avoid its burden in establishing initial ownership and a complete and valid chain of title in the foreign works it seeks to assert.  Courts in the 2nd, 9th and 11th Circuits have all held that in determining ownership of foreign works, "reliance on a copyright certificate as prima facie evidence [i]s inappropriate because '[i]ssuance of [a copyright] certificate is not a determination concerning applicability of the work-for-hire doctrine.' . . . a copyright certificate is not 'a resolution of any issue concerning ownership [under foreign law.]'" *RCTV*, 2016 U.S. Dist. LEXIS 136867, at *28 (S.D. Fla. 2016); *see also Lahiri v. Univ. Music & Video Dist., Inc.*, 513 F. Supp. 2d 1172, 1174 n.1 (C.D. Cal. 2007) (same) (granting summary judgment for Defendant).  Indeed, the USCO does not confirm whether a work is truly a work-for-hire, nor does it determine whether the doctrine is valid under the foreign law of the country of origin. (SOUFs 30-38)

The undisputed evidence of record and the relevant foreign law establish that each of the alleged transfers of the works, including those between foreign entities domiciled in the UAE, Egypt, Qatar, Lebanon and Saudi Arabia ("MENA Countries") and Plaintiff, are "null and void" and "invalid" *ab initio* under each MENA countries' applicable copyright laws. (SOUFs 36-37), Plaintiff alleges and, thus, has judicially admitted that the works at issue were all authored and created in MENA countries, by nationals of MENA countries, the subject of alleged subsequent transfers between entities wholly domiciled in MENA countries, are currently and allegedly owned by foreign networks located in MENA countries who simultaneously air such works on MENA-based channels in MENA countries, the United States and worldwide through the Internet, and have allegedly ***prospectively licensed all such works*** simultaneously airing on such networks' channels to Plaintiff. (SOUFs 9-21, 47-51, 55-59, 70, 76, 99-100, 115.)

Under such facts, courts apply foreign copyright laws in assessing the validity of such transfers of copyright ownership as such transfers pertain to questions of the validity of initial, subsequent and current transfers of "ownership" in the chain of title analysis required to determine whether a copyright Plaintiff can meet its burden in establishing current ownership and standing to sue.  *See Glass Egg Dig. Media v. Gameloft, Inc.*, 2018 U.S. Dist. LEXIS 130219, at *9 (N.D. Cal. 2018) (assessing validity of alleged transfers from initial authors under Vietnamese Copyright Law and holding, "Glass Egg's conclusory allegation that 'all rights in the [Works] were assigned to Glass Egg via written agreements' [] is insufficient to show the existence of a valid assignment agreement under Article 46. . . . courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'); *see also RCTV*.  Just as in *Glass Egg*, as expressly required under the laws of each relevant MENA country and under the U.S. Copyright Act, Plaintiff has failed to provide any written assignment agreements from the authors of any of the unregistered or Registered Works to the intermediaries or foreign networks.  "An assignee has no greater rights than his assignor[.]" *A&M Gerber Chiropractic, LLC v. GEICO Gen. Ins. Co.*, 2019 U.S. App. LEXIS 11400, at *10-11 (11th Cir. 2019) ("Article III standing must be determined as of the time that the plaintiff's complaint is filed."). Without establishing this crucial first link in the chain of title from the initial owners of the works, Plaintiff cannot begin to meet its burden in proving ownership of an exclusive right in the works.

Additionally, where, as here, the works at issue are alleged to be authored, created and transferred in a foreign jurisdiction, under that jurisdictions laws, and where the authors, initial owners, employee/employer relationships, alleged transferors and licensors are domiciled, there can be no question that the validity of a transfer of any such rights must be determined under the foreign copyright laws of those jurisdictions.  *See RCTV*, 2016 U.S. Dist. LEXIS 136867, at *37-

40 (S.D. Fla. 2016) (finding Venezuelan law governed "the issue of transfer and the scope of that transfer" where "the transfer occurred in Venezuela, and arose from an employer/employee relationship established and maintained in Venezuela")(heavily criticizing and rejecting the unpublished default holding in *Dish Networks, LLC v. TV Net Sols., LLC,* 2014 U.S. Dist. LEXIS 165120 (M.D.Fla. 2014) because it was unpersuasive and "engaged in a conflated analysis.")); *Glass Egg Dig. Media*, 2018 U.S. Dist. LEXIS 130219, at *6 (N.D. Cal. 2018) (In determining which country has the "most significant relationship" to the work, courts consider as relevant factors the alleged nationality of the author and the place of initial creation.).

## C.    As A Matter Of UAE Law, Plaintiff Cannot Meet Its Burden To Establish Ownership In The MBC Registered Or Unregistered Works

Courts apply the law of the country of a work's origin when interpreting ownership and foreign contracts transferring ownership because contract interpretation methods and copyright law can differ significantly from one system to another—especially, as in this case, between common and civil law systems.  Significantly, in the U.A.E.—and virtually all of the other civil law jurisdictions at issue in this case—copyright laws seek to protect author's rights and do not recognize the "work for hire" doctrine of ownership embedded in the U.S. Copyright Act and based on common law theories of agency.[6]  (SOUFs 36-37) *c.f* 17 U.S.C. § 201(b).  As evidenced by leading intellectual property Firms and practitioners in the UAE, the UAE Copyright laws (SOUFs 36-37): (i) vest initial ownership in the author of a work, (ii) require a writing with adherence to strict formalities in all transfers, (iii) severely limit and prohibit the wholesale prospective assignment of works, (iv) require confirmatory writings identifying specific works,

---

[6] See Copyright Law: How does the UAE compare with common law jurisdictions?, Lexology, February 16, 2017, Available at https://www.lexology.com/library/detail.aspx?g=f3d97ef5-d064-4db8-b028-f7e518507651 *See* U.A.E. Copyright Law § 1 (defining "Author"; "Joint Work"), § 2 (ownership in authors), § 5, 7, 9, 13 & 15 (SOUFs 36-38).

(v) recognize contributors in audio-visual works as co-authors and (v) prohibit assignment of inalienable moral rights (including the designation of authorship in a work of performers and other authors) (SOUFs 36-37):

> "Under the UAE Copyright Law, absent a written assignment of copyrights in employment contracts or commissioning agreements, the copyrights will not be passed through to the employer or commissioner of the work, and will remain with the employee or the independent contractor . . . A clause merely referring to the assignment of all the rights in the works as works 'made for hire' would be irrelevant and ineffective . . . [A] copyright assignment is only valid under the UAE Copyright law if it satisfies a number of conditions, including that the assignment should: be in writing, expressly specify the rights assigned, and include statements of the purpose for which the rights are assigned and the geographical area in respect of which the rights are assigned. . . . [A]n assignment of copyrights in more than [five] future works is null and void." *Id.* (SOUFs 36-37.)

**D.      Plaintiff has Failed to Establish Initial Ownership of the MBC Works.**

It is undisputed that copyrights initially vest in the author of a work under UAE Copyright laws (SOUFs 36-37). UAE law defines an author as "the [natural] person who creates the work, and the person who has his name mentioned on the work, or has the work attributed to him as its author at the time of publication, unless proved otherwise." Art. 1. (SOUFs 36-37, El Turk Decl. Ex. 2. at 460.) A "joint work" is defined as "the work compiled by a number of persons whether the lot of each one can be separated or not and which cannot be listed under the collective works." (*Id.* at 462.) UAE law makes clear that an author's work(s) are "not subject to prescription or assignment of the work" and include the right "to determine first publication of the work . . . [and] writing the work in his name." Art. 5.1 & 2; (SOUFs 36-37, El Turk Decl. Ex.2, at 461-462.) "Only the author and his successors or the holder of the right of the author can grant license for exploitation of the work by any means, particularly for copying including electronic loading or storing … broadcasting, re-broadcasting transmission, performance, public communication . . . rental, lending or publication by any means including provision of publication through computers

or information nets or communication nets or other means." Art. 7; (SOUFs 36-37.) "***Any action of the author in his all prospective intellectual works or in more than five such works is absolutely invalid.***" Art. 15; (SOUFs 36-37.) "A joint author in the audio-visual, audio or visual work can be: 1.  The scenarist. 2.  The one who modifies a literary existing work to an appropriate audio-visual method. 3.  The dialogist. 4.  Music composer if he composes it specifically for the work. 5. The director []."  Art. 27(1-5); (SOUFs 36-37.)

Although evidence establishes that each of the MBC Registered Works are joint audio-visual, audio or visual works with numerous co-authors, including performers, as a matter of UAE law, the Registered Works each fail to identify any of the true authors and initial owners of the works. (SOUFs 3, 13-14, 30-45.) Plaintiff has failed to produce even a scintilla of admissible evidence establishing the initial owners, pursuant to foreign law, of any unregistered works asserted in this matter, including the MBC Registered or Unregistered works. (SOUFs 2-3, 9, 12-14, 30-47, 115-125.) Defendants are entitled to summary judgment on Count I of the Complaint.

**E.      Plaintiff Cannot Establish a Valid Transfer of Ownership from the Initial Owners.**

It is indisputable that Plaintiff has failed to offer admissible evidence of valid transfers of ownership, in writing, of each initial owner, including any of the performers or other authors, and each subsequent transferee, pursuant to the formalities required under UAE law, establishing ownership of the exclusive rights in the MBC unregistered and Registered Works, which are joint works. (SOUFs 3, 30-38.) Plaintiff cannot establish, through admissible evidence, initial ownership in any works asserted in this litigation, including the MBC Unregistered and Registered Works, Plaintiff cannot begin to establish a valid chain of title proving ownership of valid exclusive rights required to sustain a prima facie claim of copyright infringement.  (SOUFs 2-3, 9,

12-14, 30-47, 115-125.) Defendants are entitled to summary judgment for failure to state a claim and lack of standing.

F.      **The Agreements Plaintiff Relies Upon are Invalid as a Matter of Foreign Law.**

Notwithstanding the fact that Plaintiff cannot prove initial ownership or any valid transfers from the initial authors of any of the asserted works, including the MBC Works, the agreements Plaintiff relies upon as between foreign third parties (SOUF), including the foreign networks, also fail to establish a valid chain of title in the ownership of such works because the they are invalid under UAE and other applicable foreign copyright laws as they necessarily purport to assign "all" or "more than five works." Art. 15; (SOUFs 36-37, El Turk Decl. Exs, 2-3).   Accordingly, the contracts Plaintiff purports to rely upon to establish a complete and valid chain of title evidencing valid transfers of exclusive rights in the MBC Registered and Unregistered works asserted in this litigation are "absolutely invalid" or "null and void" as a matter of applicable foreign law because the undisputed evidence and Plaintiff's admissions establish: (i) the contracts seek to affect an invalid prospective assignment of exclusive rights in "all works" or "more than five works" (SOUFs 9, 12-14, 47, 57, 95-96, 115, 121, 123) and, (ii) fail to comport with the formal requirements for a valid transfer of such rights under foreign law (e.g., in a writing, identifying and conveying rights from each of the initial authors and owners of such rights, including the purpose, scope, term and identification of each of the specific works subject to such transfer). (SOUFs 36-37.)  The copyright laws of each of the relevant foreign countries in this case have corollaries to the laws of the U.A.E., including a strict prohibition on the prospective transfer of "all" works. (SOUFs 38.) Thus, for the same reasons, the transfer of all such works in the agreements Plaintiff depends upon are also invalid. (SOUFs 36-38.)

**V.      THE UNREGISTERED WORKS ASSERTED BY PLAINTIFF ARE ALL UNREGISTERED UNITED STATES WORKS SUBJECT TO 17 U.S.C. § 411(a)**

"Impelling prompt registration of copyright claims, 17 U.S.C. §411(a) states that "no civil action for infringement … shall be instituted until ... registration of the copyright claim has been made in accordance with this title." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571 (U.S. March 4, 2019). A plaintiff asserting an unregistered foreign work carries the burden of both identifying the specific works it seeks to allege in its complaint and establishing that such works are not United States works "within the meaning of § 101." *DigitAlb,Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018). A valid claim of infringement requires more than the recitation of conclusory and general allegations that unspecified works aired on unspecified channels and "were *also* distributed abroad." Complaint, at ¶12; *see also Id.* ("If a court were to woodenly accept that a work is exempt from registration based on the omission of allegations indicating that the work is a United States work, any party seeking to surmount the registration requirement could simply omit any allegation of first publication in the United States or first publication simultaneously within and outside the United States.").

**B.    The Unregistered and Registered Works Are United States Works Because They Were First Published Simultaneously In The United States And Abroad.**

The Eleventh Circuit has held that it is the Plaintiff's burden to prove where and when a foreign work was first published. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1303 (11th Cir. 2012) ("[P]roof of distribution or an offer of distribution is necessary to prove publication."); see also *Digitalb, SH.A v. Setplex, LLC*, 284 F. Supp. 3d 547, 555-6 (S.D.N.Y. 2018) (recognizing "§ 101 define[s] the "country of origin" as the United States for § 411 purposes based on where the work was "first published."); *accord* 5 Patry on Copyright § 17:77.

"[P]ublication is a legal word of art, denoting a process much more esoteric than is suggested by the lay definition of the term." *Mosley*, 694 F.3d at 1303 (11th Cir. 2012) citing *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211, 1214 n. 3 (11th Cir.1999);

*Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1349 (S.D. Fla. 2017).

The Copyright Act defines "publication" in relevant part, as:

> [T]he distribution[7] of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. ***The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.***

17 U.S.C. § 101 (emphasis added).

As is the case here, pursuant to Eleventh Circuit precedent, publication occurs "***when an authorized offer is made to dispose of the work in any such manner[,] even if a sale or other such disposition does not in fact occur.***"  *Brown v. Tabb*, 714 F.2d 1088, 1091 (11th Cir.1983); *see also Casa Dimitri Corp. v. Invicta Watch Co. of Am.,,* 270 F. Supp. 3d at 1349 (S.D. Fla. 2017) quoting same and finding ("[A]n actual sale is not necessary for publication—rather a mere offer is sufficient.").  Further, when copies are "given away" to the general public, a sufficient transfer of ownership has occurred to establish publication.  *Id.*

> For purposes of § 411, a work is a "United States work" if, (1) in the case of a published work, the work is first published — (A) in the United States; (B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;  (C) simultaneously in the United States and a foreign nation that is not a treaty party; or (D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States[.]  *See* 17 U.S.C. § 101.

The Complaint expressly alleges that the license agreements upon which it relies for exclusive rights, and which it allegedly received from the foreign networks, were each authorized offers and sales of *all* the foreign works—thus constituting "publication" as that term of art is

---

[7] The Copyright Act does not define the term "distribution."  Therefore, as the 11th Circuit has held the term should be given its plain meaning. *See Mosley*, 694 F.3d 1294, 1303, n.10 (11th Cir. 2012) (Black's Law Dictionary defines "distribute" as "[t]o deliver" or "[t]o spread out; to disperse." Black's Law Dictionary 543 (9th ed. 2009); Oxford English Dictionary Online, http://www.oed.com (defining "distribute" as "[t]o spread or disperse abroad")).

defined in the Act—for the express purpose of further commercial distribution and public performance of the works in the United States.  *See* Dkt. 62 at ¶12 (**"*DISH contracts for and purchases rights for the international channels distributed on its platform from network affiliates and their agents (collectively, the "Networks") [for all relevant "Protected Channels"].***"); ("***DISH entered into signed, written agreements with Networks, which were in effect at all relevant times . . . granting DISH the exclusive right to distribute and publicly perform the works that air on the Protected Channels in the United States by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet.***")  *Id.* at ¶13.  Moreover, the Amended Complaint also unequivocally alleges that **"*Networks' Arabic-language channels [including all relevant channels] … are also distributed abroad …***").  *Id.* at ¶12.  Given these allegations, there can be no question that the Complaint alleges U.S. publication under § 101(A).

Thus, assuming the allegations as true, *arguendo*, each of the works asserted in this litigation—including both the registered and unregistered foreign works—were first published upon their sale for further distribution in the United States by Plaintiff, even before they aired for the first time.  Accordingly, as a matter of law, the unregistered foreign works asserted in this case are United States works pursuant to § 101, subject to the pre-suit registration requirement of § 411(a) and Defendants are entitled to summary judgment as a matter of law.

Alternatively, even assuming *arguendo* that the first publication of the foreign works occurred upon airing of the works, because the works were published simultaneously in the United States and abroad; the works are United States works.  *See* Dkt. 62, at ¶11 ("DISH … delivers copyrighted programming to millions of subscribers nationwide by means of satellite delivery and over-the-top ("OTT") services whereby ***programming is delivered using a public Internet infrastructure***."; ("DISH . . . ***distribute[s] and publicly perform[s] the works that air on the***

***Protected Channels in the United States by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet.***" *Id.* at ¶13; "***Networks' Arabic language channels . . . are also distributed abroad***." *Id.* at ¶12). Even under this scenario, the works are, as a matter of law, United States works. *See* USCO Compendium, 612.7(J) Nation of First Publication: Works Published in Multiple Countries (same day publication in two countries, is a U.S. Work).

Finally, Plaintiff's claims as to the unregistered works asserted in this litigation fail because the undisputed record evidence establishes that they are unregistered United States works because they were simultaneously published worldwide on the Internet and via satellite in the United States and throughout the Middle East, in non-treaty countries (9-21, 47-51, 55-59, 70, 76, 99-100, 115-125). The unregistered works were allegedly live streamed to millions of viewers by both Plaintiff and the Networks through means including OTT, IPTV and Internet, they were simultaneously published and made accessible for download, thus, effecting global and simultaneous publication of the foreign works. *See Kernel Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011) ("We hold that publishing [a work] on a website in Australia was an act tantamount to global and simultaneous publication of the work, bringing [the work] within the definition of a "United States work" under § 101(1)(C) and subject to § 411(a)'s registration requirement. [Plaintiff] elected to publish [the work] on the Internet and the legal consequences of that decision must apply."); see also *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) ("Getaped did "publish" its website … when its modified website first became accessible on the Internet."). Global publication invokes § 101(C); and the works are unregistered U.S. works.

Indeed, Plaintiff's agreements with all of the foreign networks expressly required that the networks ***simultaneously*** publish all of its programming in the United States and the Middle East. (SOUFs 17-21, 43-44, 50-51, 93-94, 99-100, 113-114, 118, 121-122) *See e.g.,* Dkt. 146, Ex. 9,

p.19, § 4.1.1. ("***The Signal shall be time delayed by Network so that the content as broadcast in its country of origin corresponds to the prevailing time on the east coast of the United States.***"); *see also* 17 U.S.C. § 101. The works were also simultaneously and publicly published globally through the Internet and via satellite transmission. (*Id.*; see also SOUFs 45-46) *see also* Dkt. 62, at ¶ 13 (***OTT, IPTV & Internet***). Worldwide publication necessarily includes publication in non-treaty countries. Moreover, because the unregistered works were also transmitted via satellite in the Middle East, including within non-treaty countries such as Iran and Iraq, they are considered United States works pursuant to 17 U.S.C. § 101. (*Id.*)

Accordingly, because there can be no question that the works were simultaneously published on the Internet and through satellite transmissions in the U.S. and non-treaty countries, because the contracts Plaintiff depends upon required the same, the unregistered works are all unregistered United States works. (*Id.*) Thus, Plaintiff lacks standing to assert them in this matter for failure to meet the registration requirement of 17 U.S.C. §§ 101, 411(a). ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). "Because the Copyright Act expressly prohibits bringing an infringement action without first obtaining registration, it is a mandatory precondition, and this action should be dismissed if it is not met." *Marc Anthony Builders, Inc. v. Javic Properties, LLC*, 2011 WL 2709882, at *2 (M.D. Fla. 2011).

## VI.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE REGISTERED WORKS ARE INVALID AND UNENFORCEABLE

While it is true that a registered copyright enjoys a presumption of validity, "[t]he presumption flowing from Sec. 410(c) is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 668 (3d. Cir. 1990); citing *Hasbro Bradley, Inc. v.*

*Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).  "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright . . . [where the issue is a matter of law] the defendant need not introduce evidence but instead must show that the Copyright Office erroneously applied the copyright laws in registering plaintiff's [works]." *Masquerade Novelty, Inc.*, 912 F.2d at 669 (3d. Cir. 1990).  Here, the presumption is overcome.

Partial summary judgment should be granted as to Plaintiff's claims in Counts I alleging direct infringement of the Registered Works as a matter of law, because the undisputed facts in evidence and controlling law establish that each of the Registered Works falsely claim: (i) authorship (SOUF 36; El Turk, Decl. Exs. 2-3); (ii) ownership by the copyright claimant pursuant to the work-for-hire doctrine (*Id.*); (iii) incorrect dates of first publication (SOUF – 9, 12-14.), and (iv) first publication in the United Arab Emirates (SOUFs 17-21). Additionally, Plaintiff offers no admissible evidence to establish: (i) initial ownership under U.A.E. law, (ii) a valid chain of title establishing valid assignments of the registered works (which are joint works) from the authors to MBC and, thus, fails to establish its alleged exclusive rights under U.A.E. law (SOUF 36; El Turk, Decl. Exs. 2-3), or (iii) admissible evidence infringement by Defendants (SOUFs 155-158). Thus, because Plaintiff cannot establish ownership or infringement, there is no genuine dispute Defendants are entitled to summary judgment.

First, the works are invalid on their face because they cannot possibly rely upon the work-for-hire doctrine they claim to establish ownership because the work for hire doctrine is a legal concept expressly rejected as invalid under the copyright laws of the U.A.E. (SOUF 36; El Turk, Decl. Exs. 2-3).  This alone, overcomes the presumption of validity as it establishes, as a matter of law, that the basis claimed for ownership is false. *Id.*; *see also Malibu Media, LLC v. Weaver*, 2016 U.S. Dist. LEXIS 184157, at *7-8 (M.D. Fla. 2016) ("[T]he law in this Circuit [establishes] that a

defendant in a copyright infringement action may claim the benefit of the work-for-hire doctrine as a defense.") quoting *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1490 (11th Cir. 1990) ("[W]e hold that [defendant] does have the right to assert this defense. … [which] gives the putative infringer, rather than the creator of the work, the benefits of finding a work was not a 'work-for-hire.'").  Plaintiff has failed to provide any evidence of the true initial owners of the registered works and, thus, cannot establish ownership of its alleged exclusive license. (SOUFs 9, 12-14, 30-35.)  Additionally, the U.A.E. Copyright Act contains a strict prohibition on the prospective transfer of works which also conclusively invalidates Plaintiff's purported rights in the registered works. (SOUF 36-37s; El Turk, Decl. Exs. 2-3); thousands of works it claims to hold an exclusive right to. *Id.* at § 15.  The registered works are invalid on their face and unenforceable.

Second, the registered works were subject to the same prospective transfer of "all" copyrights from MBC to Plaintiff which as already discussed is "absolutely invalid" pursuant to applicable UAE copyright law. (SOUF 37; El Turk, Decl. Exs. 2-3). Accordingly, Plaintiff does not have valid ownership of an exclusive right in the Registered Works and, thus, lacks standing. *Id.*  Even considering U.S. law, because the MBC Agreements fail to identify the Registered Works, they also fail to establish Plaintiff's alleged receipt of exclusive rights in the Registered Works because Plaintiff cannot satisfy the requirement that an exclusive grant of the Registered Works be in writing pursuant to 17 U.S.C. § 204. (SOUFs 9, 11, 17-29.) Thus, Plaintiff cannot establish ownership or standing.

Third, the MBC Agreements, as a matter of law, do not grant Plaintiff an exclusive right because the licensor expressly "maintain[ed] its current distribution agreement with JumpTV for distribution via Internet streaming" in the same works to a third-party, allowing for distribution and public performance of the works on the Internet and, thus, simultaneously global publication,

distribution and performance worldwide. (SOUF) *See* Dkt.146, Ex.9, at p.12, "Exclusivity Limitation" *see also Hyperquest, Inc. v. N-Site Solutions, Inc.,* 632 F.3d 377, 385 (7th Cir. 2011) (holding license agreement that reserved rights for an existing licensee did not grant an exclusive license sufficient to establish statutory standing).   Instead, Plaintiff is, at best, a non-exclusive licensee of the registered works and lacks the requisite standing to assert the registered works.

Fourth, because the registered works were also simultaneously published worldwide, they are also United States works, not UAE works. Thus, the place of first publication noted on the face of the works is false. The undisputed record evidence and controlling UAE copyright law establish that the registered works were the subject of an invalid transfer of ownership (SOUF), and are also invalid because they are not works-for-hire (SOUF 36; El Turk, Decl. Exs. 2-3). The undisputed evidence also confirms that the registered works are invalid on their face as a matter of foreign law and because Plaintiff cannot prove the initial ownership, authorship, place and date of first publication of the registered works under UAE law. (Id.; SOUFs 30-35.)

## VII.    PLAINTIFF'S ALLEGED EVIDENCE OF INFRINGEMENT IS INADMISSIBLE

The evidence relied upon by Plaintiff in an attempt to show infringement is inadmissible. First, Mr. Metral, Plaintiff's purported expert expressly admits in his report that the alleged screen captures were acquired in Switzerland, where Nagravision, SA, a joint venture partner of Plaintiff, is situated. (SOUFs 126-138; Dkt. 146-24, Ex. A, at §§1 & 3.1 (admitting that a VPN in Switzerland was configured so it "would appear to be located in the United States" when, in reality, it was not).   Moreover, the screenshots are misleading and prejudicial as Mr. Metral also expressly admits that: (i) a browser window was opened to "show[] the current date and time in the city where the [admittedly falsified] VPN output is [alleged to be] located," and (ii) the screenshots were cropped to exclude data he unilaterally deemed to be "[ir]relevant data." Id. at §3.2(e).

Indeed, some of the screenshots were not properly cropped, and they reveal the computer's true Switzerland time, not the time manually set in a new browser by Nagravision to reflect a time and place within the United States. Mr. Metral also admits that the screenshots are inadmissible hearsay evidence, acquired by other unidentified employees, then attempts to shoehorn the photos into the business documents exception by making self-serving and conclusory statements. *Id.*, at §1.

Even setting aside the inadmissibility and apparent bias of the Metral Report, the screenshots were acquired extraterritorially and are not evidence of an infringing act in the United States. The 11th Circuit has affirmed the exclusion of such extraterritorial evidence under Fed. R. Evid. 401 and 403 because it holds "no probative value and as such [is] . . . substantially outweighed by [its] unfair prejudicial impact." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1276 (11th Cir. 2015) (affirming trial court's exclusion of photographic evidence in Canada). "Every court to have examined the issue has held that Congress did not intend the Copyright Act to be applied extraterritorially, beginning with the Supreme Court in 1908. Extraterritorial acts of infringement are, therefore, beyond the subject matter jurisdiction of U.S. federal courts." *Illustro Sys. Int'l, LLC v. IBM*, 2007 U.S. Dist. LEXIS 33324, at *37-38 (N.D. Tex. May 4, 2007) citing 7 William F. Patry, PATRY ON COPYRIGHT § 25:86 (emphasis in original); *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088, 1089 (9th Cir. 1994).

For the aforementioned reasons, Defendants respectfully request this Court grant its motion for summary judgment on Count I of Plaintiff's Complaint. Plaintiff lacks standing because it does not hold a valid exclusive right to the registered or unregistered works.

Dated: May 3, 2019                    By:  /s/ Joseph R. Sozzani
                                           Joseph R. Sozzani, Esq. (FBN: 120297)
                                           JSozzani@InfinityIPLaw.com
                                           222 West Bay Dr
                                           Largo, FL 33770

                                           Tel: 727.687.8814