## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | Case No. 8:16-cv-02549-TPB-CPT |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GABY FRAIFER, TELE-CENTER, INC., | ) | |
| and PLANET TELECOM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff DISH Network L.L.C. ("DISH") hereby responds to Defendants' objections (Dkt. 253, "Objs.") to Magistrate Judge Tuite's January 31, 2020 report and recommendation (Dkt. 246, "R&R") on the parties' motions for summary judgment.

Defendants do not object to the Magistrate Judge's determination that DISH is entitled to summary judgment on Defendants' breach of contract counterclaim, which entirely disposes of that claim.  (R&R at 51-57.)  Defendants' objections instead are limited to portions of the R&R regarding DISH's copyright infringement claim, where the Magistrate Judge determines that DISH is entitled to summary judgment on the first element of its claim because the undisputed facts show that DISH owns valid copyrights in the Registered Works and Unregistered Works.[1]  (*Id.* at 27-44.)  The Magistrate Judge also determines that DISH sufficiently pleads Defendants' infringement of the Unregistered Works, and that such works constitute non-United States works and therefore need not be registered with the Copyright Office.  (*Id.* at 10-27.)  The Magistrate Judge's findings in this regard are well-reasoned and correct; Defendants' objections should be denied.

---

[1] Capitalized terms are defined in the R&R (Dkt. 246) and the parties' MSJs (Dkts. 146, 150-151, 217, 224, 227, 237) and given the same meaning here.

Defendants' new argument claiming that DISH did not establish the Registered Works and Unregistered Works are substantially similar to the works that Defendants infringed need not be considered because the argument was not made to the Magistrate Judge and Defendants have no justification for waiting to make that argument.   Defendants' argument concerns the second element of DISH's copyright infringement claim – copying original elements of the copyrighted work – and thus does not impact any of the Magistrate Judge's findings on copyright ownership, registration, or pleading of the Unregistered Works.  Even considering Defendants' new argument, substantial similarity is irrelevant in this case because the undisputed facts establish that Defendants engaged in direct copying of the Registered Works and Unregistered Works that aired on the Protected Channels transmitted on Defendants' Services.   Accordingly, Defendants' objection claiming there is no evidence of substantial similarity is not only untimely, but completely without merit.

## I.      ARGUMENT

### A.      DISH Adequately Pleads Defendants' Infringement Of The Unregistered Works.

The Magistrate Judge correctly concludes that "DISH has sufficiently pleaded its copyright infringement claim, and that the Defendants' request for dismissal of this count should be denied." (*Id.* at 18.)  Defendants object that DISH, while properly identifying the Registered Works, did not give fair notice that DISH was claiming copyright infringement as to Unregistered Works.  (Objs. at 4-12.)[2]  Defendants' objections to this portion of the R&R should be rejected.

*First*, the Magistrate Judge correctly determines that Defendants' copyright infringement of the Unregistered Works was sufficiently pleaded under Rule 8 and the well-established pleading

---

[2] The Court denied Defendants' Rule 12(c) motion that made the same argument, finding the motion was "out of time" and "procedurally improper."  (Dkt. 209.)  Defendants previously challenged DISH's claim under Rule 12 with a motion to dismiss and motion for more definite statement and those two motions were likewise denied.  (Dkt. 48. at 4 [stating "the Complaint is sufficiently clear so as to allow Defendants to prepare a response"].)

standards set forth in *Twombly* and *Iqbal.* (R&R at 11.) DISH pleads that twenty-one Protected

Channels were transmitted without authorization to users of Defendants' Services. (*Id.* at 12; Dkt.

62, Am. Compl. ¶¶ 1, 18-24, 28.) DISH further pleads that it holds the exclusive right to distribute

and publicly perform in the United States the programs that aired on the Protected Channels, which

included "<u>unregistered copyrighted works</u>," pursuant to exclusive licensing agreements that DISH

entered into with the Networks. (R&R at 12; Am. Compl. ¶¶ 12-13 [emphasis added].) DISH's

complaint identifies the Networks and Protected Channels by name and lists specific representative

examples of copyrighted works aired on the Protected Channels that Defendants infringed. (*Id.*)

DISH's complaint provides more than enough to identify the works giving rise to DISH's

copyright infringement claim. *See Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*,

No. 12 C 10275, 2013 WL 4011052, at *3 (N.D. Ill. Aug. 6, 2013) (denying motion to dismiss,

rejecting argument that copyrighted works were not properly identified in complaint, and finding

"[i]t is enough for [plaintiff] to allege that [defendant] infringed on all of the programming on the

above-referenced television stations; there is no need to list each of the programs carried by those

stations"); *Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621, at *4 (N.D.

Ill. May 28, 2013) (same); R&R at 12 (citing these *Intercom* cases in concluding that Defendants

had "fair notice of the materials that are the subject of DISH's copyright claim").

<u>Second</u>, the Magistrate Judge properly rejects Defendants' attempt to impose a heightened

pleading standard that requires DISH to allege "the specific original work that is the subject of the

copyright claim." (R&R at 13.) Defendants' reliance upon *Sater Group* for this "specific original

work" requirement is misplaced because that case not only pre-dated both *Twombly* and *Iqbal*, but

*Sater Group* was based upon a forty-year-old Pennsylvania district court case, *Gee*, that has not

even been followed within the Third Circuit where it originated. (*Id.* at 13-14.) Furthermore, the

district judge in *Sater Group* subsequently declined to impose the *Gee* type of heightened pleading standard advocated by Defendants – finding such standard supported "neither by the Federal Rules nor case law." (*Id.* at 14 [quoting *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *2 (M.D. Fla. Apr. 8, 2009)].) No Eleventh Circuit decision has adopted Defendants' proposed heightened pleading requirements for copyright infringement claims, and district court decisions post-*Twombly/Iqbal* have rejected such a heightened standard. *See Arbitron Inc. v. Renda Broad. Corp.*, No. 3:13-cv-716-J-34JRK, 2014 WL 1268587, at *4 (M.D. Fla. Mar. 27, 2014); *see also 3Lions Publ'g, Inc. v. Marketresearch.com, Inc.*, No. 8:15-cv-356-MSS-JSS, 2015 WL 12843856, at *2 (M.D. Fla. Sept. 2, 2015) ("The bar to state a claim for copyright infringement . . . is a low one."); R&R at 13-14 (citing additional cases that have rejected a heightened pleading standard for copyright infringement claims).

Defendants' argument that the "specific original work" must be pleaded under *Klinger* fails for the same reasons the Magistrate Judge identified. (Objs. at 7-8 [citing *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1481 (S.D. Fla. 1990)].) As with *Gee*, *Klinger* is an out-of-district case decided nearly two decades before *Twombly* and *Iqbal* and relies solely on *Gee* in stating the complaint must identify the "specific original work." 747 F. Supp. at 1481. Defendants' reference to a pair of more recent district court cases citing *Klinger* is therefore equally unconvincing – the "specific original work" requirement in *Klinger* comes from *Gee* which has not been followed by courts in the Third Circuit in light of more recent Supreme Court precedent (and accordingly there is no reason for this Court to do so either).[3]

*Third*, the Magistrate Judge properly finds that "[e]ven if *Gee's* heightened pleading had

---

[3] Defendants' argument that DISH had an obligation to identify the Unregistered Works pursuant to Rule 9(a)(1)(A-B) is misplaced as that portion of Rule 9 addresses a party's capacity to sue or be sued that "a pleading need *not* allege" unless required to show jurisdiction. (emphasis added). Neither capacity nor jurisdiction is a disputed issue here.

any vitality, . . . its requirements are 'relaxed somewhat' where, as here, the basis of the copyright claim is 'the alleged wholesale infringement of a large number of copyrighted works." (R&R at 16-17 [quoting *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 696126, at \*14 (S.D.N.Y. Feb. 15, 2017), *adopted at* 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017). *Infomir* describes this "relaxed" version of the heightened pleading standard as follows:

> In this district, as elsewhere, copyright plaintiffs alleging that defendants unlawfully copied or retransmitted all or substantially all of their television programming typically provide representative, albeit "non-exhaustive" examples of the individual works broadcast. . . . Plaintiffs herein need not identify every program allegedly infringed by every defendant.

2017 WL 696126, at \*14 (citations omitted). DISH satisfies this standard by pleading Defendants' wholesale infringement of a large number of copyrighted works and providing specific examples of individual works aired on the Protected Channels that Defendants infringed. (R&R at 17.)

Defendants argue that the Magistrate Judge "erroneously relies on *Infomir*," yet Defendants asked the Magistrate Judge to rule in their favor based on *Infomir* in their own MSJ. (Objs. at 10; Dkt. 217 at 6-7.) Defendants also fail to distinguish *Infomir* on the basis that the plaintiff in that case moved for leave to amend its complaint to identify example works – DISH does not have to amend its complaint because representative works are already identified in the complaint. (Objs. at 10-11; Am. Compl. ¶ 13.) Put simply, *Infomir* stands for the proposition that in cases involving large-scale copyright infringement, like here, a relaxed version of the heightened pleading standard applies. DISH's complaint easily meets that standard. (R&R at 17; Am. Compl. ¶ 13.)[4]

As a final point, for the purpose of determining whether DISH adequately pleads the basis for its copyright infringement claim, it is immaterial that the representative works identified in the

---

[4] Defendants incorrectly state that the *Infomir* court "dismissed the copyright count . . . and required Plaintiff attach [a] representative list of works from each of the channels;" the court actually denied the motion to dismiss and required "a representative listing for *each plaintiff*." *Compare* Objs. at 10, *with* 2017 WL 696126, at \*6, 14 (emphasis added). DISH is the only plaintiff in this case and pleads a representative list of its copyrighted works as established above.

complaint are programs registered with the Copyright Office, as opposed to unregistered programs aired on the Protected Channels, because the character of these works is the same.  (R&R at 17-18 [citing *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1299 (M.D. Fla. 2015) (finding copyright infringement was sufficiently alleged where works were generally identified by "form and nature")].)  Defendants received fair notice of the subject matter on which DISH's copyright infringement claim rests – the registered and unregistered works aired on the Protected Channels – and Defendants do not demonstrate otherwise.  (R&R at 17; Objs. at 11.)  Defendants' allegation of "ambiguity" fails because the complaint makes clear that DISH claims infringement as to "<u>unregistered copyrighted works</u>," and includes a separate request for monetary relief based on Defendants' "infringement of <u>unregistered works</u>."  (Objs. at 11; Am. Compl. ¶ 13, Prayer for Relief § C [emphasis added].).  Unregistered copyrighted works were clearly at issue.

*Fourth*, the Court should reject Defendants' new argument (not presented to the Magistrate Judge) claiming that DISH was required to amend its complaint to identify the Unregistered Works before discovery closed and may not do so through the Network Declarations, which Defendants deem an improper attempt to now amend DISH's complaint.  (Objs. at 5-7, 9, 11-12.)  The Court "has discretion to decline to consider [an] argument when that argument was not first presented to the magistrate judge."  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).  Defendants' new argument should not be considered because it could have been made to the Magistrate Judge and there is no justification for Defendants not making the argument at that time.  *See Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, 89 F. Supp. 3d 1294, 1300 (M.D. Fla. 2015) (finding argument waived where it could have been presented to magistrate judge and the reasons for not making the argument – claiming to focus on other arguments and having different counsel – "are unpersuasive"); *Coppola v. Casaro Labs, Ltd.*, No. 12-81163-CIV, 2014 WL 12515258, at

*2 (S.D. Fla. May 16, 2014) ("To allow Plaintiff to inject a new argument . . . when there is no demonstrable reason that this argument was not raised before Magistrate Judge Hopkins, would undermine the very purpose of the magistrate judge system.  As such, the Court declines to exercise its discretion to consider this argument that should have, and could have, been previously raised.").

In addition to being improper new argument, Defendants do not provide any authority for their position that DISH had to amend its complaint before discovery closed to specifically identify the Unregistered Works by name.  (Objs. at 5-7, 9, 11-12.)  The cases Defendants rely on concern the plaintiff's evidentiary burden in establishing a prima facie case at summary judgment – not the pleading standard that tests the sufficiency of the complaint.  (*Id.* at 9 [citing appeals of summary judgment dispositions in *Saregama* and *Kernel Records*].)  "[U]nder a notice pleading system, it is not appropriate to require [DISH] to plead facts establishing a prima facie case." *Swierkiewicz v. Sorema N. Am.*, 534 U.S. 506, 510 (2002); *see Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Rather, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues." *Swierkiewicz*, 534 U.S. at 512.  DISH properly pleads Defendants' infringement of the Unregistered Works as established above.  And, for summary judgment purposes, DISH has proven copyright ownership in the Unregistered Works.  (R&R at 35-44.)  Thus, the pleading and evidentiary standard applicable to each stage of this case has been met.

Defendants are also incorrect in claiming the Network Declarations identifying the names of the Unregistered Works constitute an improper amendment of DISH's complaint.  (Objs. at 5, 10, 12 n.6.)  The *Gilmour* case that Defendants rely on involved an entirely new claim asserted at summary judgment.  (Objs. at 10 [citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-

15 (11th Cir. 2004) (rejecting attempt to assert a contract claim at summary judgment where the complaint only stated tort claims)].)  However, nothing prevents a party from presenting additional facts in support of an existing claim, provided the theory of the claim does not change.  *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 954 n.6 (11th Cir. 2016) (reversing district court and finding it took *Gilmour*'s bar on new claims at summary judgment "too far" when it determined "that a party cannot introduce additional facts at the summary judgment stage").[5]  Indeed, to hold otherwise would require pleading of all facts required to prove a prima facie case, which is exactly what the Supreme Court rejected in *Swierkiewicz*.  534 U.S. at 510.

DISH asserted a direct copyright infringement claim based upon the Registered Works and Unregistered Works aired on the Protected Channels from the outset of this case.  (Dkt. 1, Compl. ¶¶ 9-10; Am. Compl. ¶¶ 12-13.)  The Networks' identification of the names of the Unregistered Works is neither a new claim nor even a new factual theory for an existing claim – it merely adds factual details to what has always been alleged in DISH's complaint, which as demonstrated above sufficiently pleads Defendants' copyright infringement as to the Unregistered Works.  Therefore, DISH need not amend its complaint to name the individual Unregistered Works, and DISH makes no attempt to amend the complaint through its MSJ or the Network Declarations.[6]

*Finally*, the Magistrate Judge correctly determines there is no need to address Defendants' argument that DISH allegedly withheld information identifying the Unregistered Works during the discovery period.  (R&R at 10 n.5.)  The argument is irrelevant for purposes of assessing whether

---

[5] Defendants improperly rely on the district court ruling in *Fraca* that the Eleventh Circuit reversed.  (Objs. at 12 n.6.)

[6] As a result, this case is distinguishable from *Hurlbert v. St. Mary's Health Care Systems, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006), where the court refused to allow the plaintiff to alter the entire factual theory for his FLMA claim at summary judgment.  The case *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) is also inapplicable because, unlike the plaintiff in that case, DISH is not relying on its summary judgment briefing to cure a defect in its complaint and overcome a Rule 12(b)(6) motion to dismiss.  Rather, from the start of this case, DISH has sufficiently pleaded Defendants' copyright infringement of the Unregistered Works.

DISH sufficiently *pleads* Defendants' copyright infringement as to the Unregistered Works in the

complaint.  Moreover, the argument that DISH purportedly withheld information identifying the

Unregistered Works was already considered and rejected in Judge Kovachevich's order denying

Defendants' motion to strike the Network Declarations from the summary judgment record.  (R&R

at 10 n.5 [citing Dkt. 187].)  Defendants' argument was rejected a second time in the Magistrate

Judge's report and recommendation to deny Defendants' motion for leave to amend their answer

and affirmative defenses, finding the information contained in the Network Declarations was not

improperly withheld from Defendants during discovery:

> Defendants do not show that they properly requested that information during the discovery
> period or that Dish Network was otherwise obliged to furnish it.  Indeed, the Defendants
> fail to specify any discovery request calling for the production of such information.
>
> Nor do they explain why they did not request this information directly from the third parties
> that possess it.  It appears to the Court in this regard that the Defendants were aware of the
> identity of these third parties since the date of Dish Network's supplemental Rule 26 initial
> disclosures in November 2017 – almost four months before the close of discovery.

(Dkt. 243 at 5-6; *see also* Dkt. 245 at 12-15 [establishing the Magistrate Judge's findings set forth

above are fully supported by the record and Defendants' contrary arguments lack merit].)[7]

Likewise, Defendants' claim that the Network Declarations were "objected to pursuant to

Rule 56(c)(2) and remain subject to credibility determinations and evidentiary challenges at trial"

fails for the same reason.  (Objs. at 5.)  Defendants' only objection to those portions of the Network

Declarations that identify the Unregistered Works consists of a general reference to "evidentiary

---

[7] Defendants recognize they could have asked DISH to identify the names of the Unregistered Works (Objs. at 5 n.2),
but Defendants failed to request that information from DISH in discovery as previously found by Judge Kovachevich
and the Magistrate Judge.  (Dkt. 187; Dkt. 243 at 5-6.)  Defendants' questioning of whether the Networks could have
identified the Unregistered Works had Defendants actually conducted discovery on them is nonsensical – the answer
is a clear affirmative because the Networks did so in their declarations based upon reviewing DISH's expert report
that had been timely disclosed to Defendants.  (Objs. at 5 n.2.)  Similarly, Defendants' argument that DISH did not
produce documents was not only rejected in the earlier rulings, but is irrelevant to the identification of the Unregistered
Works because Defendants fail to identify any documents allegedly withheld during discovery that name any of the
Unregistered Works.  (*Id.*)

considerations" raised in their motion to strike that was *denied*.  (Dkt. 150, SODF 2, 8, 13, 19, 24, 30.)  Also, the generic allegation that Defendants intend to pursue "credibility . . . and evidentiary challenges at trial" does not discharge their burden of establishing a genuine issue of material fact at this stage of the case, as required to avoid summary judgment.  In sum, Defendants' objections were already considered and rejected as the Magistrate Judge correctly finds.  (R&R at 10 n.5.)

Altogether, DISH properly pleads Defendants' copyright infringement of the Unregistered Works, even under the heightened pleading standard in *Infomir* that Defendants advocate.  DISH was not required to amend its complaint before discovery closed to incorporate every undisputed fact that appeared in DISH's MSJ – a new pleading standard Defendants propose to distract from their own failure to conduct discovery and which, if accepted, would necessitate requests for leave to make late-stage pleading amendments in virtually every case.  Defendants' argument that DISH purportedly withheld information concerning the Unregistered Works in discovery is irrelevant to determining if DISH sufficiently pleads infringement of the Unregistered Works in the complaint, and Defendants' argument already has been twice rejected in this case as meritless.  The Magistrate Judge's report and recommendation to deny Defendants' arguments challenging the allegations in DISH's complaint concerning the Unregistered Works should be adopted in full.

**B.     Defendants Engaged In Direct Copying Of The Registered And Unregistered Works.**

Defendants argue that the Magistrate Judge erred because DISH allegedly has no evidence to show the Registered Works and Unregistered Works are substantially similar to the programs retransmitted without authorization to users of Defendants' Services.  (Objs. at 13-16.)  Defendants present this argument for the first time – as demonstrated by the complete absence of any reference to this argument in their MSJ or Defendants' response to DISH's MSJ – yet Defendants could have made the argument to the Magistrate Judge and fail to provide any justification why the argument

was withheld.  (*Id.*)  Accordingly, the Court need not consider this new argument when ruling on

Defendants' objections.  *See Weaver*, 89 F. Supp. 3d at 1300; *Coppola*, 2014 WL 12515258, at *2.

Even if Defendants' untimely argument is considered, the argument fails as DISH provided

undisputed evidence that Defendants publicly performed *exact* copies of the Registered Works and

Unregistered Works.  (Dkt. 146-1, SOUF 41-42; Dkt. 150, SODF 41-42.)  The Networks reviewed

findings of DISH's expert that monitored the Services for the Protected Channels, which included

a voluminous number of screenshots, and from those findings identified the Registered Works and

Unregistered Works as being among the programs transmitted on the Services.  (Dkt. 146-1, SOUF

41-42 [citing Network Declarations].)  Defendants do not dispute that the Registered Works and

Unregistered Works were transmitted on their Services.  (Dkt. 150, SODF 41-42.)[8]  Defendants,

for example, do not claim to have created their own versions of the Protected Channels containing

television programs somewhat similar to, but not substantially similar to, the Registered Works

and Unregistered Works.  Quite the opposite, Defendants claim the Protected Channels transmitted

on their Services were obtained from the Networks that exclusively license the Protected Channels

to DISH.  (Dkt. 150, SODF 92; Dkt. 217-4 ¶ 8 [identifying Networks as the source of the Protected

Channels transmitted on Defendants' Services]; *see also* Dkt. 151 at 15 [claiming that "Defendants

. . . were able to access to [sic] the Unregistered Works and Registered Works on the internet"].)

Regardless of where Defendants obtained the Protected Channels, the undisputed evidence

shows that exact copies of the Registered Works and Unregistered Works were publicly performed

to users of Defendants' Services as part of the Protected Channels transmitted on those Services.

(Dkt. 146-1, SOUF 39-42; Dkt. 150, SODF 39-42.)  Because this matter involves direct copying,

---

[8] Defendants instead contend that DISH's expert is biased, but Defendants fail to establish any alleged bias – let alone bias that might warrant excluding the documentary findings of the expert that the Networks relied upon to identify the Registered Works and Unregistered Works.  (*Id.*; Dkt 146-1 SOUF 41-42.)  *See Adams v. Lab Corp. of Am.*, 760 F.3d 1322, 1335 (11th Cir. 2014) (finding expert bias arguments inappropriate for summary judgment).

the cases Defendants rely on stating there must be "substantial similarity" between the copyrighted work and infringing work are inapplicable.  (Objs. at 13-14 n.8.)[9]  *See Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (holding similarity of works need not be analyzed in cases involving direct copying); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) (same).  Defendants' argument was rejected in a similar case involving direct copying:

> "Substantial similarity" is not an element of a claim of copyright infringement.  Rather, it is a doctrine that helps courts adjudicate whether copying of the "constituent elements of the work that are original" actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*.  . . .  A showing of "substantial similarity" is irrelevant in a case like this one, in which the Music Companies produced evidence that the public performances entailed direct copying of copyrighted works.  . . .  "Substantial similarity" is thus a red herring:  the proper question is whether infringing performances occurred *vel non*.

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).

The undisputed evidence from DISH's expert establishing that the Protected Channels were transmitted to users of Defendants' Services, and the Networks' undisputed evidence showing the Registered Works and Unregistered Works are among the programs documented by the expert as having aired on those Protected Channels, demonstrates there is no genuine issue of material fact concerning the direct copying of the Registered Works and Unregistered Works that were publicly performed on Defendants' Services.  (Dkt. 146-1, SOUF 39-42; Dkt. 150, SODF 39-42.)  *Range Rd. Music*, 668 F.3d at 1154 (finding defendants "cannot raise a genuine issue of material fact" on the issue of copying because investigator's uncontested "declaration, detailed investigative report, and deposition testimony were sufficient to establish that the works were publicly performed").[10]

---

[9] The *Indyne* case that Defendants rely on, for example, involved the court's application of the three-part Abstraction-Filtration Test used in comparing computer software, wherein the defendant did not dispute copying portions of the plaintiff's software but claimed to have not copied elements of that software subject to copyright protection.  (Objs. at 13.)  Defendants, in contrast, engaged in wholesale, direct copying of the Registered Works and Unregistered Works by transmitting the Protected Channels, which are audiovisual works protected under 17 U.S.C. § 102(a)(6).

[10] The investigator in *Range Road Music* testified that the copyrighted songs were publicly performed based on a live band at defendants' establishment announcing they were playing certain songs and his recognition of those songs, and

**C.     The Unregistered Works Are Non-United States Works Exempt From Registration.**

The Magistrate Judge correctly finds that "DISH has carried its burden of proving first publication of the Unregistered Works in foreign countries that are treaty parties" and "[a]s a result, these works are protected under the [Copyright] Act even though they have not been registered." (R&R at 26-27; *see* 19-25 [analyzing copyright registration requirement].)  Defendants' objections to this portion of the R&R merely regurgitate the same arguments briefed to the Magistrate Judge and are properly rejected for the reasons stated in the R&R.  (Objs. at 16-22.)

Defendants do not dispute that copyright registration under 17 U.S.C. § 411(a) is required only for a "United States work."  (R&R at 19-20; Objs. at 16-17.)  Defendants also do not challenge the Magistrate Judge's finding that a work first published in a treaty party (which includes the UAE, Qatar, Lebanon, Egypt, Cyprus, and Saudi Arabia that are parties to the Berne Convention) is *not* a United States work and therefore does *not* have to be registered with the Copyright Office. (R&R at 20-22; Objs. at 16-22.)  Defendants' objections instead focus on what act constitutes first publication of the Unregistered Works and where that act of first publication took place.  (Objs. at 17-22.)  "Publication" means (i) "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending" and (ii) "offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101.

*First*, the Magistrate Judge correctly finds that the Unregistered Works were first published when inserted into feeds of the Protected Channels and such publication occurred in the Network's home countries all of which are treaty parties, thus rendering the Unregistered Works non-United

---

the remaining songs with which he was not familiar based on a CD case identifying the titles of the works, which CD was played by a disc jockey at defendants' establishment.  *Id.* at 1151-52, 1154.  DISH's evidence of direct copying and public performance is more substantial than in *Range Road Music* because the Networks (the copyright licensors) identified each of the Registered Works and Unregistered Works based upon reviewing the findings of DISH's expert.

States works exempt from registration.  (R&R at 22-26.)  The insertion of the Unregistered Works into the channel feeds, which were subsequently delivered to uplink facilities around the world for DISH and other broadcasters, constituted "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display."  (R&R at 22-23 [quoting 17 U.S.C. § 101].)  "Defendants d[id] not refute DISH's argument as to publication via insertion into the channel feeds."  (*Id.* at 25.)[11]

        *Second*, the Magistrate properly rejects Defendants' argument that the Unregistered Works were first published when DISH entered into exclusive licensing agreements with the Networks because this constitutes an "offering to distribute copies" of the Unregistered Works.  (R&R at 23-25.)  For publication to occur by "offering to distribute copies," the copies "must be in existence" and "ready for further distribution, public performance, or public display."  (R&R at 24 [quoting Compendium § 1906.3].)  "Offering to distribute copies . . . before they exist or before they are ready . . . does not constitute publication."  (*Id.* at 25.)  *See also* Compendium § 1906.3 ("Offering to distribute a motion picture that is currently in production does not constitute publication."); Copyright Office Circular 45 ("For an offering to constitute publication, copies must be made and be ready for distribution.").  The undisputed facts establish that the Unregistered Works were not in existence and ready for further distribution, public performance, or display when DISH entered into exclusive licensing agreements with the Networks.  (R&R at 24; *see also* Objs. at 21 n.13.)

        Defendants' objection claiming "all that is required for publication to occur is an 'offer'"

---

[11] Defendants' new argument that the insertion of the Unregistered Works into the channel feeds was "a transmission or performance" should be deemed waived.  (Objs. at 19.)  *See Weaver*, 89 F. Supp. 3d at 1300; *Coppola*, 2014 WL 12515258, at *2.  Furthermore, the transmission or performance of the Unregistered Works to the public comes after the works are inserted into the channel feeds and offered to DISH and other broadcasters, which is the first publication.  (R&R at 23, 25.)  *See ABC, Inc. v. Primetime 24, Joint Venture*, 67 F. Supp. 2d 558, 561 (M.D.N.C. 1999) (finding ABC "offers, on the date of broadcast, to distribute copies of its programs to entities in Canada and other countries for purposes of further distribution or public performance" and it is "clear that 'the distribution of copies of a motion picture to television stations for broadcast purposes constitutes an act of publication'"), *aff'd*, 232 F.3d 886 (4th Cir. 2000).

(whether or not the work is in existence and ready for further distribution, public performance, or display) also is not supported by the *Mosley* case on which Defendants rely. (Objs. at 21.) *Mosley* merely states the offer to distribute copies need not result in an actual sale or disposition of the work. 694 F.3d at 1303. *Mosley* does not eliminate the requirement that the work must exist and be ready for further distribution, public performance, or display when the offer is made; indeed, in *Mosley* there was no dispute that the work existed when the events alleged to constitute publication occurred. *Id.* at 1306-07, 1310. The Magistrate Judge properly concludes that DISH entering into exclusive license agreements with the Networks is not a publication because the undisputed facts establish that the Unregistered Works did not exist at that time. (R&R at 24-25.)[12]

*Third*, the Magistrate Judge correctly rejects Defendants' argument that the Unregistered Works were simultaneously published in the United States and the Middle East when broadcast to viewers in these countries. (R&R at 25-26.) "A public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101 (defining "publication"). Rather, the transmission of the Unregistered Works constitutes a public performance and not publication. *See Am. Broad. Cos. v. Aereo, Inc.*, 134 S.Ct. 2498, 2506-11 (2014) (streaming broadcast television programming infringed public performance right). Defendants now concede that broadcasting the Unregistered Works is not an act of publication. (Objs. at 19; R&R at 25.) And, the Magistrate Judge properly determines that any broadcasting took place after the Unregistered Works were inserted into feeds

---

[12] Because DISH entering into exclusive licenses with the Networks is not an offer to distribute copies, the Court does not have to address Defendants' argument that DISH is a "group of persons" to whom that offer was made. (Objs. at 20.) The argument also was not presented to the Magistrate Judge, but could have been, and should not be considered for that additional reason. *Weaver*, 89 F. Supp. 3d at 1300; *Coppola*, 2014 WL 12515258, at *2. The *Nazar* case that Defendants rely on is also distinguishable because there the work was offered to a school for the benefit of multiple teachers, students and the general public. 84 F.3d at 1198-99 (observing "[t]his is very different than a distribution to one person in a closed setting"); *see also* H.R. Rep. No. 94-1476, at 138 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5754 (stating "publication" occurs "when copies or phonorecords are offered to a group of wholesalers, broadcasters, motion picture theaters, etc."); Compendium § 1906.1 ("Publication occurs when a motion picture is offered to a group of movie theaters or television networks for the purpose of exhibiting or broadcasting that work.") (emphasis added).

Case 8:16-cv-02549-TPB-CPT   Document 255   Filed 03/16/20   Page 16 of 20 PageID 10696

of the corresponding Protected Channels, which is the true act of first publication.  (R&R at 25.)

Equally without merit is Defendants' argument that DISH's exclusive licensing agreements with the Networks required simultaneous publication in the United States and the Middle East, and DISH therefore allegedly admits such publication.  (R&R at 25-26; Objs. at 17-18 n.9, 20 n.12.) Defendants reference terms of the agreements between DISH and the Networks providing that (i) DISH will receive the same content the Network broadcasts in the Middle East, and (ii) the signal delivered from the Network to DISH will be "time delayed so that the content as broadcast in its country of origin corresponds to the prevailing time on the East Coast of the United States."  (Objs. at 17-18.)  The Magistrate Judge properly finds that neither of these provisions establishes a first publication because, as shown above, the Unregistered Works were first published when inserted into the channel feeds, which occurred prior to the Networks delivering the channels feeds to DISH – the subject of these provisions.  (R&R at 25.)[13]  Moreover, Defendants fail to explain how terms of DISH's exclusive licensing agreements that identify the programming DISH will receive, and stating that such programming is also broadcast in the Middle East, establishes a publication in the Middle East.  (*Id.* at 26.)  At best, these terms suggest the programming will be publicly performed in the Middle East – because as Defendants admit, broadcasting is not publication.  (Objs. at 19.)

*Fourth*, the Magistrate Judge properly rejects Defendants' argument based upon 17 U.S.C. § 104(b), which identifies published works protected under the Copyright Act and corresponding examiners' guidelines in Compendium § 612.7(J).  (R&R at 26 n.17.)  While section 104 describes when a work will be deemed first published in the United States or a treaty party, that description is limited and only applies "[f]or purposes of paragraph 2" of section 104(b).  Defendants do not

---

[13]A time delayed channel feed only further undermines Defendants' argument of simultaneous publication because, taking MBC as an example, it shows that the MBC Works are made available and broadcast first in the UAE (e.g., a primetime program will air 8:00 p.m. local time) and several hours later in the United States (8:00 p.m. Eastern time, rather than 11:00 a.m.).  (Dkt.  224-3 ¶ 22.)

dispute copyright protection under section 104(b)(2); rather, Defendants challenge registration of the Unregistered Works under section 411(a).[14]  Additionally, the description in section 104 is inconsistent with the definition of "United States work" in section 101, which the Eleventh Circuit uses in determining whether registration is required under section 411.  *Kernel*, 694 F.3d at 1304. (Dkt. 224 at 18 n.16; Dkt. 227 at 10 n.5 [examples of inconsistencies, including "simultaneously" in section 101 would have to be re-written as "within 30 days"];[15] *see also* R&R at 26 n.26 [noting inconsistences, which Defendants fail to address, and finding definition of "United States work" for registration purposes comes from section 101).  The Magistrate Judge correctly determines that Defendants' arguments based on sections 104(b) and 612.7(J) must fail.

*Finally*, the Magistrate Judge properly finds that, even considering Defendants' argument that the Unregistered Works were simultaneously published in the United States and the Network's home countries, the Unregistered Works still constitute non-United States works because the laws of those countries provide for a shorter term of copyright protection than under United States law. (R&R at 26 [referencing international laws identified in Dkt. 224 at 19].)  Defendants do not offer evidence showing a publication of the Unregistered Works occurred in Iraq, Iran, and Oman, much less evidence that this was the first publication of the Unregistered Works.  (Objs. at 17-18 n.9-10.)  Defendants' assumption that the Unregistered Works were broadcast in Iraq, Iran, and Oman is based on DISH's exclusive licensing agreements with the Networks stating DISH would receive the same content the Network broadcast in the Middle East, but even if that assumption is true, it

---

[14] Section 104 is satisfied because, regardless of where first publication occurred, one or more authors of the Registered Works and Unregistered Works was a national or domiciliary of a treaty party.  17 U.S.C. § 104(b)(1).

[15] "Simultaneous" has been construed to mean "existing or occurring at the same time: exactly coincident."  *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1366 (S.D. Fla. 2011), *aff'd on other grounds sub nom*, 694 F.3d 1294 (11th Cir. 2012).  Therefore, "simultaneously" as used in defining "United States work" in section 101 does not mean "within 30 days" – the result Defendants are attempting to achieve by borrowing out-of-context language from section 104(b) and the examiners' guidelines in Compendium section 612.7(J).

is irrelevant because broadcasting, as Defendants admit, is not a publication and any broadcasting

would take place after the Unregistered Works are offered to DISH and other broadcasters through

their insertion into the channel feeds in the Network's home countries, which constitutes the first

publication.  (R&R at 23, 25.)

**D.     DISH Owns Valid Copyrights In The Registered Works And Unregistered Works**

The Magistrate Judge correctly determines the Registered Works are entitled to statutory

presumptions of ownership and validity in 17 U.S.C. § 410(c).  (R&R at 26-30.)  Defendants do

not dispute the Magistrate Judge's finding in this regard, but instead claim the presumptions were

overcome because "the Registered Works each falsely claim … authorship; ownership . . . pursuant

to the work-for-hire doctrine . . . ; incorrect dates of first publication; and . . . first publication in

the U[AE]."  (Objs. at 24.)  Defendants also object that copyrights in neither the Registered Works

nor the Unregistered Works were properly transferred to DISH under international law.  (Objs. at

24-25.)  For each of these propositions – squeezed in the last three pages of their brief – Defendants

cite the entirety of their MSJ and Reply, among other portions of the summary judgment record,

as support.  (*Id.*)  Defendants' objections lacks the specificity required to invoke a *de novo* review

under Rule 72(b)(2)-(3).  *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016);

*United States v. Shultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) ("Frivolous, conclusive, or general

objections need not be considered by the district court.")

Defendants' objection to copyright ownership in the Registered Works, even if considered,

stems from two findings by the Magistrate Judge:  (1) first publication occurred in the Network's

home country when the works were inserted into the channel feeds; and (2) the Registered Works

are Collective Works and not Joint Works under the laws of the UAE.  The first publication issue

has been discussed at length above, and the Magistrate Judge's findings as to first publication are

correct.  *See supra* Part I.C.  The Magistrate Judge also correctly determines that the Registered Works are Collective Works under UAE copyright law and the MBC Network is the initial owner of copyrights in the Registered Works.  (R&R at 30-34.)  Defendants argue the Magistrate Judge improperly made a "determination of fact, not law," but the facts are undisputed and only the law is debated, and thus the Magistrate Judge is authorized to find the Registered Works are Collective Works. (Objs. at 24; R&R at 33.)[16]  Defendants also fail to address DISH's alternative argument that even if the Registered Works are Joint Works, MBC acquired the applicable copyrights in the Registered Works by having produced these works.  (Dkt. 224 at 8; Dkt. 237 at 5-6.)

The Magistrate Judge's conclusion that the MBC Network is the initial owner of copyrights in the Registered Works (consistent with the statutory presumptions arising from the registration of these works) is correct.[17]  Notably, Defendants do not object to the Magistrate Judge's finding that MBC owned copyrights in the MBC Unregistered Works or that Networks other than MBC owned copyrights in their Unregistered Works.  (R&R at 35-36, *see also* 30-33 [applicable to MBC Unregistered Works].)  Thus, copyright ownership in the Unregistered Works is not at issue here.

In addition, Defendants' argument challenging the transfer of copyrights in the Registered Works and Unregistered Works from the Networks to DISH under "controlling foreign law" fails for the simple reason that United States law, not international law, governs these transfers.  (R&R at 37-39.)  Defendants do not dispute the Magistrate Judge's determination that United States law controls, other than generally stating the transfers "occur[ed] wholly within foreign jurisdiction"

---

[16] The Magistrate Judge properly finds that the screenshots provided by Defendants, even if admissible, are consistent with the Registered Works being Collective Works.  (R&R at 33 n.10; Objs. at 24 n.16.)  Likewise, Defendants' claim that certain screenshots identify "works produced by U.S. entities" fails as the works Defendants allege to be depicted in those screenshots are not any of the Registered Works or Unregistered Works at issue.  (Objs. at 6 n.3.)

[17] Defendants' conclusory statement that the registration certifications for the Registered Works allegedly misidentify the Registered Works as being works made for hire is incorrect because (i) the registration certificates were properly completed under principles of US copyright law as required; (ii) any alleged error does not invalidate the registrations; and (iii) Defendants' waived their right to challenge the registrations by failing to plead this affirmative defense.  (Dkt. 224 at 4-6; *see also* Dkt. 243 (R&R to deny Defendants' leave to amend answer to add copyright invalidity defenses).

and the Magistrate Judge "relied on inapposite law." (Objs. at 25.) Defendants fail to identify any specific law the Magistrate Judge relied on that was allegedly inapplicable. (*Id.*) And, Defendants' reference to the transfers taking "place between foreign nationals and entities in the Middle East" is a restatement of their argument that the Registered Works are Joint Works and not Collective Works under UAE law – an argument the Magistrate Judge properly rejects. (*Id.*; R&R at 30-34.)

Moreover, even assuming United States law did not apply to the transfer of copyrights in the Registered Works and Unregistered Works, the Magistrate Judge correctly determines there is no genuine issue of material fact that the transfers are proper under UAE law and that Defendants fail to make any argument concerning any other international law allegedly governing the transfer of copyrights in the Registered Works and Unregistered Works from the Networks to DISH. (*Id.* at 41-44 n.24.) Defendants do not rebut these findings by the Magistrate Judge. (Objs. at 25.)

## II.   CONCLUSION

The Court should deny Defendants' objections to the Magistrate Judge's R&R, modify the R&R as set forth in DISH's objections (Dkt. 250), and rule on the outstanding issues the Magistrate Judge did not reach in the R&R, which include Defendant Fraifer's individual liability, DISH's monetary recovery, and DISH's unopposed request for a permanent injunction.

Dated:  March 16, 2020

/s/ Timothy M. Frank
Timothy M. Frank (*pro hac vice*)
HAGAN NOLL & BOYLE, LLC
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile:  (713) 758-0146
Email:  timothy.frank@hnbllc.com

James A. Boatman, Jr. (FBN 0130184)
THE BOATMAN LAW FIRM PA
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone:  (239) 330-1494
Facsimile:  (239) 236-0376
Email:  jab@boatman-law.com

Attorneys for Plaintiff DISH Network L.L.C.