# *DISH NETWORK*

# *VS.*

# *FRAIFER*

**Deposition**

## *KEVIN MCMONNIES*

*03/23/2018*

---

# ***AB Court Reporting & Video***
*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

## Page 1

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

Case No. 8:16-cv-02549-EAK-TBM

_____

DEPOSITION OF KEVIN MCMONNIES
**CONFIDENTIAL**
March 23, 2018

_____

DISH NETWORK, L.L.C.,

Plaintiff,

v.

GABY FRAIFER, TELE-CENTER, INC.,
and PLANET TELECOM, INC.,
individually and together d/b/a
UlaiTV, PlanetiTV, and AhlaiTV,,

Defendants.

_____

APPEARANCES:

    HAGAN NOLL & BOYLE
      By Timothy Frank, Esq.
      820 Gessner Road
      Suite 940
      Houston, Texas 77024
      713.343.0478
      timothy.frank@hnbllc.com
      Appearing telephonically on behalf
      of Plaintiff

## Page 2

1   APPEARANCES (Continued):

2     FRANCIS R. LAKEL, ESQ.
3       P.O. Box 331120
       Miami, Florida 33233
4       305.854.2713
       frlesq@aol.com
5     and

6     DERRICK CLARKE, ESQ.
7       146 2nd St. North
       Suite 310
8       St. Petersburg, Florida 33701
       dclarke@dclarkelegal.com
9       Appearing telephonically on behalf of
       Defendants

10   HAGAN NOLL & BOYLE
11     By Chad Hagan, Esq.
      820 Gessner Road
12     Suite 940
      Houston, Texas 77024
13     713.343.0478
      chad.hagan@hnbllc.com
14     Appearing telephonically on behalf of the
      Deponent Kevin McMonnies

15  ALSO PRESENT:
16     Alex Fonoroff, Esq.

## Page 3

1       Pursuant to Notice and the Federal Rules of

2   Civil Procedure, the deposition of KEVIN MCMONNIES,

3   called by Defendants, was taken on Friday,

4   March 23, 2018, commencing at 1:32 p.m., at 216 16th

5   Street, Suite 600, Denver, Colorado, before Pamela J.

6   Hansen, Certified Shorthand Reporter, Registered

7   Professional Reporter, Certified Realtime Reporter

8   and Notary Public within Colorado.

9           * * * * * * *

## Page 4

1         I N D E X

2  DEPOSITION OF KEVIN MCMONNIE

3  EXAMINATION                 PAGE

4    MR. LAKEL                5

6       INDEX OF EXHIBITS

7                     INITIAL
   DESCRIPTION              REFERENCE

8  Exhibit 1   Invoice to McMonnies,    29
          7/10/2015

10  Exhibit 2   Priority Mail 2-day label   33

11  Exhibit 3   Checkout document      34

12  Exhibit 4   Checkout document      35

13  Exhibit 5   Invoice, 6/30/2016     41

14  Exhibit 6   7/6/2016 email        43

15  Exhibit 7   7/6/2016 email string    47

16  Exhibit 8   UlaiTV Receivers, 7/10/2015  48

17  Exhibit 9   USB               49

18  Exhibit 10  End user license agreement   50

Page 5

1          * * * * * * *
2          P R O C E E D I N G S
3          KEVIN MCMONNIES,
4   having been first duly sworn, was examined and
5   testified as follows:
6          EXAMINATION
7   BY MR. LAKEL:
8          Q    Okay.  State your name, please.
9          A    My name is Kevin James McMonnies.
10         Q    Spell your last name, please.
11         A    M-C-M-O-N-N-I-E-S.
12         Q    Okay.  And your address today?
13         A    9492 South Alyssum Way, Parker, Colorado
14  80134.
15         Q    Okay.  And your telephone number?
16         A    720-841-0406, that's my cell number.
17         Q    Okay.  720-841-72 --
18         A    0406 is the last four.
19         Q    What are the last four?
20         A    0406.
21         Q    0406.  Thank you.
22              Okay.  Your education, beginning with --
23  you have a high school degree?
24         A    No.
25         Q    What do you have?

Page 6

1          A    I have an MBA.
2          Q    Okay.  So you have a high school degree
3   before you got your master's degree, correct?
4          A    I have a GED before I joined the military
5   at the age of 17.
6          Q    Okay.  Which branch of service were you
7   in?
8          A    United States Navy.
9          Q    Okay.  And how long were you in the Navy?
10         A    21 years.
11         Q    21 years?
12         A    Correct.
13         Q    Okay.  And you have an MBA now?
14         A    I do.
15         Q    Okay.  Where does that come from, what
16  university?
17         A    University of Phoenix, San Diego branch.
18         Q    Okay.  And do you have an undergraduate
19  degree?
20         A    I do.
21         Q    What's that?
22         A    It's an undergraduate degree in liberal
23  arts from Regents University, New York Regents.
24         Q    From Regens, R-E-G-E-N-S?
25         A    R-E-G-E-N-T-S.

Page 7

1          Q    Okay.  And where is that located?
2          A    It's a New York university.
3          Q    Okay.  All right.  And who do you work for
4   today?
5          A    I work for NagraStar.
6          Q    Okay.  How long have you worked at
7   Nagrastar?
8          A    It will be 11 years next week.
9          Q    Okay.  So you were in the Navy for 21
10  years and 11 years with Nagrastar.  Did you work with
11  anyone else besides Nagrastar after you left the
12  Navy?
13         A    Yes.
14         Q    Who?
15         A    I worked for Pacific Bell/Pacific Telesis
16  for about nine years.  Left there in 2003.  Went to
17  work for Qwest, which is now part of the conglomerate
18  of CenturyLink, for about 2-1/2, almost three years.
19         Q    And then you went to NagraVision?
20         A    NagraStar.
21              MR. HAGAN:  Objection, form.
22              THE REPORTER:  I'm sorry, was that
23  that --
24              MR. LAKEL:  Who gave the objection, and
25  what is the objection, please?

Page 8

1              MR. HAGAN:  That was Chad Hagan.
2   Mischaracterizes the testimony.
3          Q    (BY MR. LAKEL)  Okay.  Who did you work
4   for -- who are you working for now?
5          A    NagraStar.
6          Q    NagraStar.  Okay.  I'm sorry.  And you've
7   been there since you left Qwest?
8          A    I have been there since I left Qwest,
9   correct.
10         Q    Okay.  And your MBA, what's your MBA in?
11         A    Technology management.
12         Q    What is it you do for NagraStar?
13         A    I am currently the director of field
14  security and investigations.
15         Q    How long have you had that position?
16         A    Since April 1st, 2015.
17         Q    Okay.  Security -- would you -- would you
18  repeat that again, please?  I'm writing this down.
19  Director of what?
20         A    Field security and investigations.
21         Q    Okay.  Thank you.
22              And you've had that since April of 2015?
23         A    Correct.
24         Q    Okay.  What did you do for Qwest?
25         A    I was the director of investigations for

Page 25

1  my knowledge.
2      Q    Okay.  Do you know what his education is
3  or what his expertise is?
4      A    I do not.
5      Q    Did you ever work with Mr. Kuelling?
6      A    I have had a couple of meetings with
7  Mr. Kuelling over the last few years.
8      Q    Did you ever meet with him regarding this
9  case?
10     A    Never.
11     Q    Okay.  Did he go on these anti-piracy
12  raids with you?
13     A    No.
14     Q    Okay.  Who is Roger Lynch?
15     A    I only -- I think he was the CEO of Sling
16  at one time.  I've never met him.
17     Q    Okay.  You never met him, and you believe
18  he was the CEO of Sling, did you say?
19     A    Yeah, Sling.
20     Q    Okay.  Is Sling owned by Dish Network?
21         MR. HAGAN:  Objection, foundation.
22     Q    (BY MR. LAKEL)  Is it?
23     A    I don't have intimate knowledge of that.
24     Q    I didn't ask you for intimate knowledge.
25  Do you have any knowledge of it?

Page 26

1      A    I believe it is.
2      Q    Okay.  Thank you.
3          Do you know Izabela Slowikowska?
4      A    No.
5      Q    Did you ever deal directly with Dish
6  Network, LLC through NagraStar?
7      A    Dish Network, LLC is my primary customer
8  for anti-piracy.
9      Q    Okay.  That's the primary customer for you
10  as you work for NagraStar; is that correct?
11     A    That is correct.
12     Q    Okay.  How many customers does NagraStar
13  have besides Dish Network?
14     A    Okay.  For -- for anti-piracy purposes
15  that I have responsibility for, it would be Bell TV
16  Canada and Dish Network, LLC.
17     Q    Okay.  So two?
18     A    Yes.
19     Q    Bell TV Canada and Dish Network, LLC are
20  the two major ones, are the two.  Are there more than
21  that?
22         MR. HAGAN:  Objection, foundation.
23     A    No.
24     Q    (BY MR. LAKEL)  To your knowledge, is
25  there a contract you entered into whenever that STB

Page 27

1  was purchased from UlaiTV?
2          MR. HAGAN:  Object to form.
3      A    A contract with whom?
4      Q    (BY MR. LAKEL)  With either UlaiTV,
5  PlanetiTV, Planet Telecom, or TCI.
6          MR. HAGAN:  Object to form and foundation.
7      A    Could you rephrase the question?
8      Q    (BY MR. LAKEL)  Sure.  To your knowledge,
9  since you know a little bit about this, at your --
10  you directed Mr. Palka to buy that STB; is that
11  correct?
12     A    That is incorrect.
13         MR. HAGAN:  Object to form.
14     A    Incorrect.  I directed nobody.
15     Q    (BY MR. LAKEL)  Okay.  You directed nobody
16  to buy that.
17     A    That's correct.
18     Q    So they did it on their own?
19         MR. HAGAN:  Object to foundation.
20     A    They did it based on their own process --
21     Q    (BY MR. LAKEL)  You can answer that.
22     A    Okay.  They did it based on --
23     Q    Who purchased -- who did purchase the STB
24  from UlaiTV?
25     A    I believe it was Gary Palka.

Page 28

1      Q    That's what I thought.  And Mr. Palka
2  wasn't working for you, right?
3      A    He was not working for me.
4      Q    Okay.  Who directed Mr. Palka to buy the
5  STB?
6      A    I do not know.
7          MR. HAGAN:  Object to foundation.
8      A    I do not know.
9      Q    (BY MR. LAKEL)  Okay.  Did you ever see
10  any agreement or any contract or any terms of use
11  associated with that STB?
12     A    Only as a result of the documents that
13  were presented to me preparing for this deposition.
14     Q    Okay.  Who presented those documents to
15  you?
16     A    My attorney.
17     Q    Mr. Hagan?
18     A    Correct.
19     Q    Okay.  Did you call Mr. Hagan directly
20  when you were served with a subpoena?
21     A    I did.
22         MR. HAGAN:  I'm going to object to
23  privilege.  To the extent that you ask any
24  questions --
25         MR. LAKEL:  I'm not going to ask him about

AB Court Reporting & Video

## Page 53

1 the investigation or the analysis of these set-top
2 boxes?
3    A    Never.
4    Q    Okay.  And you never made -- you never
5 monitored the channels that came out of the set-top
6 box?
7    A    Never.
8    Q    Okay.  Who did --
9    A    My --
10    Q    -- if anybody?
11    A    My opinion or my assumption would be IBCAP
12 team members.
13    Q    Okay.  So you never watched the STB from
14 UlaiTV, did you?
15    A    Never.
16    Q    Okay.  Did you ever have a discussion, not
17 counting the attorneys, with Dish Network, LLC about
18 the STB that was purchased --
19    A    Never.
20    Q    -- in your name?
21    A    Never.
22    Q    Okay.  With IBCAP?
23    A    Never with an IBCAP member.
24    Q    Okay.  With anyone else from NagraStar?
25    A    Sure.  I had to inform my boss I was going

## Page 54

1 to be doing a deposition, but no details of the case
2 because we don't have any details of the case other
3 than what was presented to me by my attorney.
4    Q    Okay.  Okay.  NagraVision SA?
5    A    What about them?
6    Q    Did you ever have a discussion with any
7 representatives of NagraVision SA about the STB?
8    A    No.
9    Q    Okay.  Did you ever have a discussion with
10 any representative of Kudelski Group about the STB?
11    A    No.
12    Q    Okay.  Did you ever have a discussion with
13 any representative of Ethos Risk Services, LLC about
14 the STB?
15    A    No.
16    Q    Did you ever have a discussion with Pascal
17 Metral about the STB?
18    A    No.
19    Q    Okay.  Did you ever have a discussion with
20 Ms. Sarah Weller about the STB?
21    A    No.
22    Q    Did you ever have a discussion with
23 Mr. Gary Palka about the STB?
24    A    I did.
25    Q    Okay.  And what did you discuss?

## Page 55

1    A    I asked him if this was the box that he
2 had purchased, and he never gave me a solid answer.
3    Q    What do you mean -- what do you mean by
4 that?  I don't understand.
5    A    Well, in other words, I'm getting --
6    Q    I don't understand your answer.
7    A    Well, in other words, I'm getting a
8 subpoena for something that was purchased in my name
9 that I never looked at or remember, and obviously, in
10 my opinion, it would have been Gary Palka who would
11 have made the purchase.  So we did have a short
12 discussion over it.
13    Q    After you got the subpoena?
14    A    Correct.
15    Q    Not before?
16    A    No.
17    Q    Okay.  And where is Gary Palka located?
18    A    Englewood, Colorado.
19    Q    Englewood --
20    A    Englewood, Colorado.
21    Q    Okay.  What about Chris Kuelling,
22 K-U-E-L-L-I-N-G?
23    A    He is in the Denver, Colorado area.
24    Q    Okay.  And he works for IBCAP, is that
25 correct, or did I remember that incorrectly?

## Page 56

1    A    He is a consultant for IBCAP.
2    Q    Okay.  And Roger Lynch?
3    A    I believe he's moved on to another
4 company.
5    Q    And that company is?
6    A    I do not know.
7    Q    Okay.  And I believe you testified that
8 you don't know Izabela Slowikowska; is that correct?
9    A    That is correct.
10    Q    Okay.  Did you have any function at all in
11 generating the Kudelski report dated December 19th,
12 2017?
13    A    No.
14    Q    Okay.  Did you ever work as an employee of
15 Dish Network, LLC?
16    A    No.
17    Q    Did you ever work as an employee of Dish
18 Network, LLC affiliates?
19        MR. HAGAN:  Object to form.
20    A    Well, I believe the correct answer would
21 be that we are now partly owned by Dish Technology as
22 of sometime last year.
23        MR. LAKEL:  Okay.  I have no further
24 questions.
25        Mr. Hagan and Mr. Frank, you guys?

## Page 57

1    MR. FRANK: No. So, for the record, this
2  is Timothy Frank speaking. No, we don't have any
3  questions over here.
4    Mr. Lakel, I do think that you need to
5  discuss with Mr. Hagan how you want to handle this
6  transcript.
7    MR. LAKEL: Yeah, that will be done.
8    Mr. Hagan, do you have any questions?
9    MR. HAGAN: I have no questions at this
10  time. I will point out, though, on the record that I
11  think a couple of the areas in the transcript may
12  need to be designated pursuant to the protective
13  order. Probably the safest way to do that is
14  designate the entirety of it right now, and then if
15  you intend to use any of the testimony or the depo,
16  let me know what those are and I can work with you on
17  designations, redactions, anything of that nature.
18    MR. LAKEL: Okay. All right. Mr. Hagan,
19  I'm not going to -- you have the right to read or
20  waive. So let him know what you want to do.
21    MR. HAGAN: I think you -- I think you and
22  Mr. Frank had an agreement of 14 days from receipt to
23  read and sign, provide an errata sheet. So I think
24  we can abide by that. Let me know if you intend on
25  ordering the transcript, and then once I get a copy

## Page 58

1  we'll start the 14-day time.
2    MR. LAKEL: Okay. Well, once I order it,
3  okay, is that how you want to do it, or do you want
4  to do it from when you get the copy, I'll have her
5  email it to you. All right. That's okay with me.
6  14 days from when you receive it, and we'll send --
7  we will have it sent to you by email. Is that okay?
8    MR. HAGAN: That's fine. Just copy
9  Mr. Frank on it as well. Make sure we both get a
10  copy.
11    MR. LAKEL: I will.
12    And, Mr. McMonnies, you'll be notified if
13  I order a copy of this, and you'll have the
14  opportunity -- Mr. Hagan, do you want to talk to him?
15    MR. HAGAN: No, I can talk to him offline.
16  You'll have the opportunity to review and make any
17  edits or changes.
18    MR. LAKEL: Changes or corrections or
19  whatever. That's what the errata sheet is all about.
20    THE DEPONENT: Okay.
21    (The deposition concluded at 2:48 p.m.,
22  March 23, 2018.)
23    * * * * * * *
24
25

## Page 59

1    I, KEVIN MCMONNIES, do hereby certify that
2  I have read the foregoing transcript and that the
3  same and accompanying amendment sheets, if any,
4  constitute a true and complete record of my
5  testimony.
6
7
8
9    _____
     Signature of Deponent
10    ( ) No Amendments
     ( ) Amendments Attached
11    Acknowledged before me this
12    _____ day of _____, 2018.
13
14    Notary Public: _____
15    My commission expires _____
16    Seal:
17
18
19
20
21
22
23
24
25

## Page 60

1  STATE OF COLORADO)
2          ) ss.   REPORTER'S CERTIFICATE
3  COUNTY OF DENVER )
4    I, Pamela J. Hansen, do hereby certify that
5  I am a Registered Professional Reporter and Notary
6  Public within the State of Colorado; that previous to
7  the commencement of the examination, the deponent was
8  duly sworn to testify to the truth.
9    I further certify that this deposition was
10  taken in shorthand by me at the time and place herein
11  set forth, that it was thereafter reduced to
12  typewritten form, and that the foregoing constitutes
13  a true and correct transcript.
14    I further certify that I am not related to,
15  employed by, nor of counsel for any of the parties or
16  attorneys herein, nor otherwise interested in the
17  result of the within action.
18    In witness whereof, I have affixed my
19  signature this 28th day of September, 2018.
20    My commission expires September 3, 2022.
21
22    _____
23    Pamela J. Hansen, CRR, RPR, RMR
     216 - 16th Street, Suite 600
     Denver, Colorado 80202
24
25

AB Court Reporting & Video

## Page 61

```
 1   AB COURT REPORTING & VIDEO
     216 - 16th Street, Suite 600
 2   Denver, Colorado  80202

 3
     September 28, 2018
 4
     Kevin McMonnies
 5   9492 South Alyssum Way
     Parker, Colorado 80134
 6
     Re:  Deposition of KEVIN MCMONNIES
 7       Dish Network vs. Fraifer, et al.
         Case No. 8:16-cv-02549-EAK-TBM
 8
     The aforementioned deposition is ready for reading
 9   and signing.  Please attend to this matter by
     following BOTH of the items indicated below:
10
     _XXX_ Call 303-296-0017 and arrange with us to read
11        and sign the deposition in our office.

12   _____ Have the deponent read your copy and sign
          the signature page and amendment sheets, if
13        applicable; the signature page is attached.

14   _____ Read the enclosed copy of the deposition and
          sign the signature page and amendment
15        sheets, if applicable; the signature page is
          attached.
16
     _XXX_ WITHIN 30 DAYS OF THE DATE OF THIS LETTER
17
     _____ By _____ due to a trial date of _____
18
     Please be sure the original signature page and
19   amendment sheets, if any, are SIGNED BEFORE A NOTARY
     PUBLIC and returned to AB Court Reporting for filing
20   with the original deposition.  A copy of these
     changes should also be forwarded to counsel of
21   record.  Thank you.

22   AB COURT REPORTING & VIDEO

23
     cc:  All Counsel
24

25
```

- AMENDMENT SHEET -

Deposition of KEVIN MCMONNIES
March 23, 2018
Dish Network vs. Fraifer, et al.
Case No. 8:16-cv-02549-EAK-TBM

The deponent wishes to make the following changes in the testimony as originally given:

| Page | Line | Should Read | Reason |
|------|------|-------------|--------|
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |
| ____ | ____ | _____ | ____ |

Signature of Deponent: _____

Acknowledged before me this _____ day of

_____, 2018.

(seal)     Notary's signature _____

          My commission expires _____.

## Page 62

```
 1   AB COURT REPORTING & VIDEO
     216 - 16th Street, Suite 600
 2   Denver, Colorado  80202

 3

 4

 5
          KEVIN MCMONNIES
 6        March 23, 2018
     Dish Network vs. Fraifer, et al.
 7     Case No. 8:16-cv-02549-EAK-TBM

 8

 9   The original deposition was filed with

10   Derrick L. Clarke, Esq., on approximately the

11   28th day of September, 2018.

12   _____ Signature waived.

13   _____ Signature not requested

14   _____ Unsigned; signed signature page and
          amendment sheets, if any, to be filed at
15        trial.

16   _XXX_ Unsigned; original amendment sheets and/or
          signature pages should be forwarded to AB Court
17        Reporting to be filed in the envelope attached
          to the sealed original.
18

19

20   Thank you.

21   AB COURT REPORTING & VIDEO

22   cc:  All Counsel

23

24

25
```