## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | ) No. 8:16-cv-02549-TPB-CPT |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| GABY FRAIFER, TELE-CENTER, INC., | ) |
| and PLANET TELECOM, INC., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION ESTABLISHING AMOUNT OF
## ATTORNEYS' FEES AND COSTS

Defendants were found at trial to have willfully infringed the copyrights of

Plaintiff DISH Network L.L.C. ("DISH") by transmitting to Defendants' STBs the

audiovisual works that aired on television channels exclusively licensed to DISH.

(*See* Doc. 337, Decision at 10-33.) DISH was awarded maximum statutory damages

of $600,000, a permanent injunction, and attorneys' fees and costs. (*Id*. at 36-38.)

Pursuant to the Decision, DISH files this motion establishing reasonable attorneys'

fees in the amount of $1,022,461.20 and taxable costs of $19,565.92.

## I.    Introduction

DISH prevailed at trial after nearly five years of hard-fought litigation. The

case involved complex and challenging legal and factual issues regarding copyright

ownership under international law and copyright infringement in the modern day

of the internet. (*Id*. at 10, 15.) The Court found that Defendants infringed DISH's

copyrights through their television streaming services and their infringement was

willful – for example, Defendants ignored well over 100 Infringement Notices and

took strategic measures to avoid the legal implications of such notices (whereas simple compliance may have avoided this action). Defendants' trial testimony was found "not credible," "at best, misleading," and showed "a general disregard for the legal system." (*Id.* at 19, 33-36, 38-39.) Establishing Defendants' lies and willful infringement was not easy as Defendants purposefully made the litigation difficult.

More than 60 motions were filed in this action, many of them on the merits. Defendants' filings included two motions to dismiss, a motion for judgment on the pleadings, four motions for summary judgment, two motions to strike summary judgment evidence, a motion for interlocutory appeal, a request to reconsider the summary judgment ruling, a late-stage motion to add affirmative defenses, and a *Daubert* motion – notably, each motion Defendants filed was denied. The parties also participated in four mediations or settlement conferences prior to trial.

Defendants were equally combative and unsuccessful in their efforts to stop DISH from establishing Defendants' lies and copyright infringement. Defendants' failure to respond to discovery resulted in DISH filing two motions to compel that were granted, while Defendants filed two motions to compel that were denied. And, Defendants' discovery tactics prompted DISH to serve 15 document subpoenas on third-parties. Defendants filed two motions for protective order to block DISH's subpoenas that were also denied. DISH produced nearly 7,000 pages of documents to Defendants, a number of them Defendants' own records that DISH was required to obtain from third-parties by subpoena.

Moreover, when it came to DISH's copyright ownership, Defendants would

not accept defeat and thus necessitated DISH's expenditure of additional legal fees. Defendants disputed DISH's copyright ownership, especially as to the Registered Works, in their fourth motion for summary judgment – and lost. Defendants filed objections followed by a motion for interlocutory appeal, each of which was denied. Defendants refused to enter pretrial stipulations concerning copyright ownership and instead took trial depositions of the Networks – clearly to continue disputing copyright ownership. After trial, Defendants moved for reconsideration of DISH's copyright ownership in their closing argument and that also was denied. (*Id.* at 10-14.) Defendants repeatedly contested DISH's copyright ownership in the two years after the summary judgment R&R establishing DISH's copyright ownership.

DISH's requested attorneys' fees are reasonable. The billing rates of DISH's counsel are well within the range of reasonable rates Tampa-area courts approved in intellectual property matters of similar complexity. DISH's counsel reviewed the time recorded and exercised billing judgment to deduct certain entries, including attorneys' fees associated solely with Defendants' counterclaims that were resolved in DISH's favor through motions to dismiss and summary judgment.

## II.   <u>Outcome Of Meet And Confer Efforts</u>

Defendants received DISH's attorney hourly rates on January 18, 2022 and a spreadsheet containing detailed, unredacted attorney time entries that establish the reasonableness of the number of hours expended on January 19, 2022. (Frank Decl. ¶ 17.) On January 26, 2022, DISH moved for a one week extension to file this motion solely to accommodate Defendants' request for additional time to meet and

confer, which the Court granted. (Doc. 346.) Defendants proposed conferring by telephone on January 31, 2022. (Frank Decl. ¶ 19.)

On January 31, 2022, the parties reached two agreements: Defendants do not oppose the reasonableness of the requested hourly rates for DISH's counsel; and Defendants do not oppose DISH's requested taxable costs. (*Id.*) Thus, the only unresolved issue is the number of hours that DISH's counsel reasonably expended in this case. (*Id.*) DISH provided Defendants an updated spreadsheet with attorney time entries (about 40 entries) because the spreadsheet sent on January 19, 2022 contained only entries through mid-month (about 2,100 entries). (*Id.* ¶¶ 17, 20.)

Defendants responded to a small portion of the time entries on February 2, 2022, the day before this motion was due and two weeks after receiving the entries, stating more time was required for their review despite the prior agreed extension. (*Id.* ¶ 21.) DISH made substantial reductions to the number of requested hours and Defendants' additional proposed reductions are unwarranted as explained below.

### III.   <u>DISH's Request For Attorneys' Fees</u>

Reasonable attorneys' fees are calculated using the lodestar – the number of hours reasonably expended at a reasonable hourly rate. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quotation omitted). The lodestar in this case yields at least $1,022,461.20 in reasonable attorneys' fees.

### A.   **Reasonable Hourly Rates**

A reasonable hourly rate is the prevailing rate in the Tampa area "for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *see Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (stating relevant market is "where the case is filed"). Reasonable rates are properly established "through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299.

DISH paid the following hourly rates for services of attorneys at Hagan Noll & Boyle, LLC ("HNB") that were admitted in this case:

| Attorney | Current Experience | Title | Discounted Hourly Rate |
|---|---|---|---|
| Joseph Boyle | 20 years | Partner | $396-$418.50 |
| Timothy Frank | 16 years | Partner | $337.50-$418.50 |
| Stephen Ferguson | 16 years | Partner | $418.50 |

(Frank Decl. ¶¶ 3-5, Exs. 1-3 [further discussing HNB attorneys' qualifications and experience].) DISH received a 10% discount on the hourly rates the HNB attorneys customarily charged and the discount is reflected in the requested rates above. (*Id.* ¶ 6.) The HNB attorneys' hourly rates are reasonable and <u>unopposed</u>. (*Id.* ¶ 19.)

*First*, the requested hourly rates are the agreed-upon rates that DISH paid to HNB throughout this case. (*Id.* ¶ 6.) "[T]he agreed-upon billing rate is a strong indication of a reasonable rate." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001); *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990) (observing plaintiff "paid its attorneys' fees throughout the litigation" and "a fee structure arrived at by private parties negotiating at arms length is highly persuasive" in assessing the prevailing market rate); *Dillard v. City*

*of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate . . . .").

*Second*, the HNB attorneys' hourly rates ranging from $337.50-$418.50 are less than or comparable to rates found reasonable for attorneys litigating copyright or trademark infringement cases in the Tampa area, which are at least $400-$550 for partners with similar experience. *See Intenze Prod., Inc. v. Dead Man Supplies Corp.*, No. 8:15-cv-1074-T-36AAS, 2017 WL 759036, at *3-4 (M.D. Fla. Feb. 9, 2017) (approving $475 hourly rate for partner in relatively *uncontested* copyright infringement case); *Healthplan Servs., Inc. v. Dixit*, No. 8:18-cv-2608-SDM-AAS, 2021 WL 4927434, at *16-18 (M.D. Fla. May 27, 2021) ($400-$550 for partners in copyright infringement and business torts litigation resolved by default); *Deltona Transformer Corp. v. Odes Indus. LLC*, No. 6:20-cv-527-Orl-40GJK, 2021 WL 1819231, at *2 (M.D. Fla. Jan. 26, 2021) ($410-$425 for partner with twelve years of experience in trademark infringement case).

*Finally*, awarding fees based on the HNB attorneys' discounted hourly rates is conservative. Indeed, as shown by the cases approving $400-$550 hourly rates, even the HNB attorneys' $375-$465 non-discounted rates are reasonable. (Frank Decl. ¶ 19, Ex. 44.) DISH is authorized to pursue the full hourly rate, but elects to request only the discounted hourly rate. *See Griffith v. McDonough*, No. 20-14464, 2021 WL 4461605, at *1 (11th Cir. Sept. 29, 2021) ("A court . . . can award a fee above the contracted rate if the higher award is a reasonable hourly rate."); *RDP Royal Palm Hotel, L.P. v. Clark Const. Grp.*, 168 F. App'x 348, 355 (11th Cir. 2006)

6

(affirming award of fees where, "[a]lthough [law firm] discounted its hourly rates, the district court found that the usual billing rate was reasonable and approved that rate absent any discount").

The Court should approve the HNB attorneys' discounted hourly rates that ranged from $337.50-$418.50 because such rates are reasonable and unopposed.

## B.   Reasonable Hours Expended

This complex and challenging case spanned more than five years, features a docket with over 350 entries (and counting), and resulted in a decision awarding DISH maximum statutory damages for Defendants' willful copyright infringement. The HNB attorneys' detailed billing entries filed in support of this motion establish the reasonableness and necessity of the 2,745.4 hours spent prosecuting DISH's copyright infringement claim that are requested in this motion.

### 1.   Voluntary Reductions To the Hours Expended

Before turning to details on the hours requested, it is appropriate to observe that DISH excluded a substantial number of hours for three primary reasons.

*Timekeepers*. The requested hours are limited to only three HNB attorneys: Mr. Frank, who served as lead counsel throughout the litigation and billed the bulk of the hours requested; Mr. Boyle, who contributed to the decision making during the case and was involved in the trial; and Mr. Ferguson, who was admitted in the late stages of the case for trial depositions. (Frank Decl. ¶ 3.) Eight additional HNB attorneys billed approximately 450 total hours over the five plus years of litigation, having been called on to assist for limited, particular purposes such as consulting

on litigation strategy and supporting tasks during motion practice. (*Id.* ¶ 9.) HNB paralegals billed approximately 1,300 hours and local counsel The Boatman Firm billed approximately 75 hours for attorneys and paralegals. (*Id.*) These combined 1,825 hours were *excluded* from DISH's requested attorneys' fees. (*Id.*)

*Segregation*. The requested hours are reasonably limited to the prosecution of DISH's claim for infringement of the Registered Works exclusively licensed from the MBC Network. (*Id* ¶ 10.) Hours determined to be associated with Defendants' unsuccessful counterclaims were excluded. (*Id.*)[1] Additionally, though Defendants were found to have willfully infringed the Unregistered Works, hours determined to be associated with only the Unregistered Works – for example, significant time HNB attorneys spent to prepare for and attend trial depositions that Defendants' noticed for Networks that exclusively licensed only Unregistered Works to DISH – were excluded from the attorneys' fees calculation. (*Id.*) *See also* 17 U.S.C. § 412 (discussing copyright registration in the context of entitlement to attorneys' fees).

DISH was not required to segregate and exclude additional hours to account for the Unregistered Works, but did so nevertheless. Segregation among claims is unnecessary where the claims "involve a common core of facts or will be based on related legal theories" as "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it impossible to divide the hours expended." *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (quoting *Hensley v. Eckerhart*, 461 U.S.

---

[1] Defendants asserted counterclaims for conversion, trespass, and breach of contract based upon DISH allegedly "hacking" their STBs while investigating Defendants' copyright infringement.

424, 435 (1983).) DISH asserted a single claim for direct copyright infringement (that allowed for attorneys' fees) based on a common core set of facts establishing Defendants' infringement of the Registered and Unregistered Works. (Decision at 13-28.) And, there can be no genuine dispute that Defendants made the Registered Works the focus of this action and in turn the time the HNB attorneys reasonably spent in its prosecution. DISH is not required to exclude any additional hours that *might* concern both Registered and Unregistered Works, but additional hours were excluded nonetheless in the exercise of billing judgment. (Frank Decl. ¶ 11.)

*Billing Judgment*. The HNB lead attorney in this matter reviewed more than 4,600 time entries and, after categorically removing certain timekeepers and hours determined to not pertain to the Registered Works, excluded additional hours for tasks that may be viewed as excessive, duplicative, clerical, or unreasonable. (*Id.*) The excluded hours for the three HNB attorneys at issue in this motion, taking into account the hours segregated and hours eliminated as a matter of billing judgment, totaled approximately 1,750. (*Id.*)

Therefore, DISH's attorneys' fees request based on 2,745.4 hours represents approximately 55% of the total HNB attorney hours billed in this case (and, except for Jan./Feb. 2022 hours, all were paid). (*Id.* ¶ 12.) The attorneys' fees are set forth below in one-half year intervals and the hours requested are reasonable as shown in the HNB attorneys' detailed time entries filed with this motion. (*Id.*, Ex. 4.)

### 2.    Hours Reasonably Expended July 2016 – December 2016

| Attorney | Hours | Discounted Rate | Amount Requested |
|---|---|---|---|

| | | | |
|---|---|---|---|
| T. Frank | 127.8 | $337.50 | $43,132.50 |
| J. Boyle | 1.2 | $396 | $475.20 |
| Total | **129** | | **$43,607.70** |

HNB billed hours in relation to DISH's complaint and other case initiating documents; Defendants' default and setting it aside when Defendants appeared;[2] settlement discussions; written discovery and document subpoenas; and the case management conference. HNB responded to Defendants' first and second motions to dismiss DISH's complaint and each motion was *denied*. HNB also responded to Defendants' first motion for protective order to block DISH's subpoenas and that motion was also *denied*. Notably, Defendants were attempting to stop DISH from discovering information that included Defendants' emails with the Verizon CDN – key emails, previously unproduced, that DISH used at trial to establish Defendants' false testimony and copyright infringement. (Doc. 28; Decision at 19-21.)

### 3.     Hours Reasonably Expended January 2017 – June 2017

| Attorney | Hours | Discounted Rate | Amount Requested |
|---|---|---|---|
| T. Frank | 245.2 | $337.50 | $82,755 |
| J. Boyle | 5.5 | $396 | $2,178 |
| Total | **250.7** | | **$84,933** |

HNB billed hours in relation to written discovery and document subpoenas; DISH's motion for leave to amend the complaint to add Fraifer's second company and rebranded streaming service that was *granted*; DISH's first motion to compel discovery from Defendants that was *granted*; and DISH's motion for protective

---

[2]Defendants denied being served – despite a process server leaving the documents with a person at Fraifer's home matching Fraifer's description who refused to identify himself. (Doc. 14-15.) The circumstances are very similar to when Infringement Notices were received at Fraifer's home but returned with the handwritten notation "Refused" or "Wrong Address." (Decision at 34-35.)

order that was *granted*. DISH's discovery-related motions each involved extensive meet and confer discussions with Defendants. HNB also responded to Defendants' second motion for protective order – another attempt to block DISH's subpoenas – and Defendants' motion was *denied*.

### 4.   Hours Reasonably Expended July 2017 – December 2017

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 224.2 | $337.50 | $75,667.50 |

HNB billed hours in relation to written discovery and document subpoenas; DISH's second motion to compel discovery from Defendants that was *granted*; the Nagravision expert report; and MBC Networks' copyrights arising under UAE law that were transferred to DISH – a complex subject as evidenced by the roughly ten pages in the summary judgment R&R on these issues. (Doc. 246 at 30-35, 41-44.)

HNB also conducted the deposition of Defendants' employee, Mr. Sfeir. The Court found "[b]oth his answers and his demeanor demonstrated he was being less than forthcoming" during the trial. (Decision at 21.) HNB prepared for the equally challenging deposition of Defendants' consultant, Mr. Maqsood, whose deposition testimony was used at trial to prove Defendants' infringement. (*Id.* at 20-21, 23.)

### 5.   Hours Reasonably Expended January 2018 – June 2018

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 544.2 | $337.50 | $183,667.50 |
| J. Boyle | 3.6 | $396 | $1,425.60 |
| Total | **547.8** | | **$185,093.10** |

Summary judgment motions were filed in April 2018, a year and a half after Defendants appeared in the litigation, and significant work was required in the first

part of 2018 to move the case to that point. HNB billed hours in relation to written discovery and document subpoenas; the deposition of Mr. Maqsood that was used to gut Defendants' story at trial; Defendants' depositions taken over two full days; a DISH representative deposition; and a non-party investigator deposition noticed by Defendants. HNB responded to Defendants' two motions to compel discovery that were *denied*. The parties engaged in an unsuccessful private mediation.

HNB also prepared DISH's motion for summary judgment that was *granted* as to DISH's copyright ownership. The summary judgment R&R found a fact issue as to Defendants' copyright infringement – arising directly from Fraifer and Sfeir's testimony that was later found to be not credible at trial (but it was enough to avoid summary judgment and prolong this case for another three years).

HNB responded to Defendants' first, second, and third summary judgment motions that were each stricken or otherwise *denied* (the second motion concerned the counterclaims and thus the hours put into the response are not included here). HNB responded to Defendants' first and second motions to strike DISH's summary judgment evidence and those motions were likewise stricken or *denied*.

### 6.   Hours Reasonably Expended July 2018 – December 2018

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 17.1 | $337.50 | $5,771.25 |
| J. Boyle | 1.1 | $396 | $435.60 |
| Total | **18.2** | | **$6,206.85** |

HNB billed hours in relation to settlement discussions with Defendants' new counsel; previous defense counsel's motion to withdraw; Defendants' request for a

trial continuance; Defendants' offer of judgment; and the parties' settlement status report. The parties were referred to Judge Flynn for a settlement conference.

### 7.    Hours Reasonably Expended January 2019 – June 2019

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 267.4 | $337.50 | $90,247.50 |
| J. Boyle | 2.6 | $396 | $1,029.60 |
| Total | **270** | | **$91,277.10** |

HNB billed hours in relation to the settlement conference with Judge Flynn and Defendants' motion for judgment on the pleadings that was *denied*. HNB also responded to Defendants' fourth motion for summary judgment that involved both substantial briefing and complex copyright ownership issues, primarily focused on the MBC Network's copyrights in the Registered Works and other similar works arising under UAE law and the transfer of those copyrights to DISH. Defendants produced a previously undisclosed international law "expert" to challenge the MBC Networks' copyrights and HNB spearheaded the efforts with MBC and its outside counsel in Dubai to respond on behalf of DISH.

HNB also prepared DISH's opposed motion for additional time to respond to Defendants' fourth motion for summary judgment and newly disclosed witness. DISH wanted two weeks (and that was *granted*), but Defendants would only agree to one week – despite Defendants themselves receiving extensions then totaling at least *23 weeks*. (Doc. 221.) The example is illustrative of Defendants' unnecessary combativeness and delay that has plagued much of this case.

### 8.    Hours Reasonably Expended July 2019 – December 2019

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 131.8 | $337.50 | $44,482.50 |

HNB billed hours in relation to DISH's motion for leave to file a surreply to Defendants' fourth motion for summary judgment that was *granted* and the filing of the surreply, which was required because of the evolving nature of the copyright ownership arguments advanced by Defendants. HNB continued to work with the MBC Network and its outside counsel to support the surreply arguments regarding UAE copyright law. The effort paid off: the Court rejected the copyright ownership arguments of Defendants and their international law expert and instead adopted DISH's arguments when it *granted* in part DISH's motion for summary judgment and *denied* Defendants' fourth motion for summary judgment.

HNB also responded to Defendants' motion for leave to amend their answers and affirmative defenses and that motion was *denied*. For the *third* time, the Court rejected Defendants' argument that DISH did not provide information requested in discovery (previously made in Defendants' motion to strike summary judgment evidence and Defendants' fourth motion for summary judgment that were *denied*). HNB also responded to Defendants' objections to the order denying leave to amend their answers and affirmative defenses.

### 9.   Hours Reasonably Expended January 2020 – June 2020

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 135.5 | $418.50 | $56,796.75 |
| J. Boyle | .8 | $418.50 | $334.80 |
| Total | **136.3** | | **$57,041.55** |

HNB billed hours in relation to the R&R on the parties' motions for summary judgment, including a response to Defendants' objections to the parts of that order granting DISH summary judgment on copyright ownership and DISH's objections to portions of that order finding a fact issue on Defendants' infringement. The fact issue was created by Fraifer and Sfeir's deposition testimony – telling essentially the same story the Court determined at trial was not credible. Had Fraifer and Sfeir testified truthfully at deposition there would have been no fact issue and this case would have been resolved in favor of DISH on summary judgment in early 2020. HNB also billed hours in relation to Defendants' motion to certify an interlocutory appeal of the summary judgment rulings that was *denied*; settlement discussions with Defendants; and trial scheduling and preparation as the case was then set for the November 2020 trial term.

### 10.    Hours Reasonably Expended July 2020 – December 2020

| Attorney | Hours | Discounted Rate | Amount Requested |
|---|---|---|---|
| T. Frank | 156.9 | $418.50 | $65,662.65 |
| J. Boyle | 13.4 | $418.50 | $5,607.90 |
| Total | **170.3** | | **$71,270.55** |

HNB billed hours in relation to planning and preparing for the November trial setting; Defendants' motions concerning *Daubert* challenges and remote trial; settlement discussions with Defendants and their financial disclosures; the parties' motion to stay pending settlement discussions, and a second settlement conference with Judge Flynn. As Judge Flynn stated, considerable resources were consumed by the settlement discussions including by having to undertake "a laborious ability-

to-pay analysis" based upon Defendants' financial disclosures. (Doc. 287).

**11.    Hours Reasonably Expended January 2021 –June 2021**

| Attorney | Hours | Discounted Rate | Amount Requested |
|---|---|---|---|
| T. Frank | 468.4 | $418.50 | $196,025.40 |
| J. Boyle | 164.3 | $418.50 | $68,759.55 |
| S. Ferguson | 22.9 | $418.50 | $9,583.65 |
| Total | **655.6** | | **$274,368.60** |

HNB billed hours in relation to scheduling and preparing for the June trial; DISH's motion for its expert witness to appear remotely at trial that was *granted*; Defendants' *Daubert* motion to exclude DISH's expert from trial that was *denied*; Defendants' motion to continue trial that was *denied*; settlement discussions with Defendants; and a third settlement conference with Judge Flynn.

Defendants conducted a trial deposition of the MBC Network (and multiple other Networks, but those hours were excluded from this request). The transcripts make clear that Defendants were fishing for information to again challenge DISH's copyright ownership – even though that issue was already decided in DISH's favor more than one year earlier in the summary judgment rulings. An additional HNB attorney, Mr. Ferguson, appeared in this case for the trial depositions.

HNB prepared all of the requisite pretrial filings, including a comprehensive trial brief. Hours were spent attempting to negotiate reasonable stipulations of fact and law with Defendants to narrow issues for trial. HNB planned for and attended the final pretrial conference and conducted the trial. Over the course of three days, testimony was received from nine witnesses, four live and five by deposition. There were 216 exhibits on the parties' lists, totaling nearly 6,500 pages.

After trial, HNB prepared DISH's written closing argument and responded to Defendants' 75-page closing argument. Defendants devoted roughly one-half of their closing argument to seek reconsideration of the Court's summary judgment ruling that established DISH's copyright ownership (and another 40 pages in their whopping 135-page proposed findings of fact and conclusions of law). Defendants' request for reconsideration was *denied*. (Decision at 10-14.) HNB also commenced preparing DISH's proposed findings of fact and conclusions of law.

### 12.   Hours Reasonably Expended July 2021 – December 2021

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 117.8 | $418.50 | $49,299.30 |
| J. Boyle | 5.4 | $418.50 | $2,259.90 |
| Total | **123.2** | | **$51,559.20** |

HNB billed hours in relation to preparing DISH's proposed findings of fact and conclusions of law – in essence the workload of another summary judgment – many of which the Court adopted in finding Defendants willfully infringed DISH's copyrights and their trial testimony was "not credible," "at best, misleading," and showed "a general disregard for the legal system." (Decision at 19, 33-36, 38-39.) DISH was awarded the *maximum* statutory damages of $600,000 for Defendants' infringement of the Registered Works, a permanent injunction, attorneys' fees, and costs. (*Id.* at 36-38.) HNB also billed hours to evaluating a potential appeal by Defendants (which Defendants have since noticed); DISH's proposed permanent injunction; and this motion for attorneys' fees and costs.

### 13.   Hours Reasonably Expended January 2022 – February 2022

| Attorney | Hours | Discounted Rate | Amount Requested |
|----------|-------|-----------------|------------------|
| T. Frank | 88.3 | $418.50 | $36,953.55 |

HNB billed hours in relation to DISH's proposed permanent injunction and DISH's motion for attorneys' fees and costs. Significant work went into preparing this motion – including a review of more than 4,600 time entries over the five plus years of litigation – and those hours are recoverable. *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010) ("[W]e have allowed parties to recover the cost of establishing their right to, and the amount of attorney's fees – the right to fees-on-fees."); *Embree v. Medicredit, Inc.*, 752 F. App'x 697, 700 (11th Cir. 2018) (finding court erred by not considering attorneys' fees incurred to brief request for fees).[3] HNB also worked on a response to Defendants' motion to stay pending appeal.

In sum, DISH requests 2,745.4 total hours for services the HNB attorneys provided in this long-running, complex, and hard-fought litigation in which DISH overcame Defendants' lies and established their willful copyright infringement at trial. Only some of the more time consuming tasks required in this case have been summarized above; the HNB attorneys' billing entries include additional details on the reasonableness of the hours requested in this motion. (Frank Decl. Ex. 4.)

## C.   No Reductions Warranted

DISH is entitled to attorneys' fees of $1,022,461.20 under the lodestar. (*Id.*) *Bivins*, 548 F.3d at 1350 (stating lodestar is presumptively reasonable). Reductions to the lodestar or other downward adjustments are unwarranted.

---

[3] Defendants waited until January 31 to stipulate to hourly rates and taxable costs – after DISH's original filing deadline and after DISH briefed those issues. (Frank Decl. ¶ 19, Ex. 4.)

*First*, there should be no reduction to the lodestar hours or hourly rate using the *Johnson* factors. The *Johnson* factors "are relevant only in the rare cases . . . because they are almost always subsumed in the lodestar." *Home Depot*, 931 F.3d at 1091 (noting the factors are usually used to adjust the hourly rate). This is not a rare case that warrants separate consideration of the *Johnson* factors and instead the relevant factors are addressed in the lodestar. *Id.* (stating courts need not "slog through the *Johnson* factors when those factors have little independent bearing on the analysis"). Additionally, the HNB attorneys' customary hourly rates are already reduced by 10% in calculating the lodestar and such rates are not opposed.

*Second*, there should be no reduction to the lodestar hours either on a line-by-line basis or a percentage reduction. *See Bivins*, 548 F.3d at 1350-52 (allowing courts to use either method to reduce unreasonably higher hours, but reversing the district court for doing both as it amounted to an improper double reduction). The lodestar hours were already significantly reduced on a line-by-line basis to exclude several timekeepers and further reduced for billing judgment. The lodestar hours represent a reasonable number of hours expended in this litigation.

Defendants' challenge to the lodestar hours (based on the less than 500 time entries they commented on) primarily falls into four categories: duplicative work; work not suitable for a partner; block billing; and work on settlement. (Frank Decl. Ex. 45.) Duplicative work is not one attorney, completing one task, one time, that happens to take more than one day to complete as Defendants mistakenly contend. Under Defendants' approach every task must be completed in a single day, which

is not practical. The correct approach is to determine whether the total hours billed to the task are excessive – an objection Defendants do not make.[4]

Likewise, there is no merit to Defendants' contention that a partner such as Mr. Frank may not charge any hours to drafting or reviewing discovery and instead these tasks must be undertaken by an associate. Mr. Frank served as lead counsel and performed the bulk of the work in this case; no associates were admitted and no associates regularly worked on the matter (likely also true for defense counsel). (*Id.* ¶¶ 3, 9.) Mr. Frank's handling of discovery-related tasks resulted in increased efficiencies – indeed, Defendants do not challenge the number of hours expended on these tasks. (*Id.* Ex. 45.) And, during the time the discovery-related tasks were performed, Mr. Frank, even though a partner, was billed at his prior associate rate of $337.50 – which was true throughout *three years* of this case. (*Id.* ¶ 7, Ex. 4.)

Defendants' argument that any time entry with more than one task amounts to improper block billing is also misplaced:

> Block billing occurs when multiple tasks are included in a single time entry, such that a court cannot distinguish between compensable and non-compensable time. . . . Counsel are not required to record in great detail how each minute of their time is expended, but counsel should at least identify the general subject matter of his time expenditures. . . . However, the mere inclusion of two tasks in a single entry is not, in itself, evidence of block billing. . . . When the tasks are intertwined, a thorough description of the activities clarifies, rather than obscures, the record.

---

[4] Defendants challenge certain other time entries as excessive, for example the time spent on the November 3, 2020 joint settlement status report. The fact this was a *joint* report is the explanation for the time billed: at least six drafts exchanged and more than a dozen emails and one telephone conference with Defendants' counsel before the joint report was filed. Defendants' new counsel that appeared just last month is likely not aware of the work performed. Hours that may be argued to be excessive were properly excluded as a matter of billing judgment.

*Carithers v. Mid-Continent Cas. Co.*, No. 3:12-cv-890, 2015 WL 12841075, at *2 (M.D. Fla. Nov. 13, 2015) ("[T]hough the entries may contain more than one task, [counsel] at least identifies the general subject matter of each time entry. That is sufficient under *Hensley*.") (internal citations omitted). The HNB attorneys' time entries do not combine unrelated tasks performed during a day into a single entry that lacks adequate description and thus do not constitute improper block billing. (Frank Decl. Ex. 4.)[5]

Equally unavailing is Defendants' attempt to exclude all hours pertaining to settlement efforts as Defendants do not believe those efforts were sincere. (*Id.* Ex. 45.) The mediation and settlement conference reports do not support Defendants' view and when specified state that DISH negotiated in good faith. (Doc. 129, 199, 280, 288.) Mr. Frank's dialogue with the Court at trial concerning the hypothetical resolution of this case with only an injunction and no damages, and how that would not deter Defendants or other similar infringers if they were allowed to reap the benefits of their infringement, does not impugn the genuineness of DISH's interest in settling this case prior to trial. As Judge Flynn observed (and without divulging settlement discussions), Defendants' payment of damages was a primary obstacle to settlement. (Doc. 287.) DISH was entitled to request just compensation during the settlement discussions and proceed to trial when Defendants refused.

---

[5] Defendants, for example, challenge the following .4 hour time entry listing email *and* telephone correspondence with the same non-party as improper block billing: "review/respond to multiple correspondence with tulix systems re: subpoena response; conference with tulix re: same." (Frank Decl. Ex. 45 at 11/7/16.) The foregoing illustrates Defendants' incorrect position on block billing.

_Third_, there should be no downward adjustment made to the lodestar. "[A] downward adjustment to a lodestar is merited only if the prevailing party was partially successful . . . ." _Resolution Tr. Corp. v. Hallmark Builders, Inc._, 996 F.2d 1144, 1150 (11th Cir. 1993); _see Bivins_, 548 F.3d at 1352 (reversing district court's downward adjustment to lodestar because it was not based upon a lack of success). DISH's rifle shot approach to this case was immensely successful: DISH asserted a single claim against Defendants for direct copyright infringement of the Registered Works and Unregistered Works and won. DISH was awarded _maximum_ statutory damages of $600,000, a permanent injunction, attorneys' fees, and costs. The case appears to have achieved something that the 182 Infringement Notices could not: Defendants ceased infringing DISH's copyrights (albeit eight months after the case was filed). DISH also prevailed on Defendants' counterclaims that wrongly accused DISH of "hacking" Defendants' STBs and was vindicated in that regard. _Alhassid v. Bank of Am., N.A._, 688 F. App'x 753, 760 (11th Cir. 2017) (finding "all measures of success" are properly considered including matters "outside of damages").

The lodestar is reasonable even though DISH was not awarded Defendants' profits relating to the Unregistered Works (which as the Court observed were less than the maximum statutory damages awarded). In fact, the HNB attorneys' hours were already reduced by segregating hours determined to be associated with only Unregistered Works and further reduced as a matter of billing judgment to account for such works. (Frank Decl. ¶¶ 10-11.) Any additional downward adjustment is not only duplicative but also unwarranted given the high degree of success that DISH

22

achieved in this action. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001) ("When the results achieved are excellent, 'the fee should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'") (quoting *Hensley*, 461 U.S. at 435.)

*Finally*, there should be no modification to the lodestar simply because the attorneys' fees exceed the damages awarded. *See Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 840 (11th Cir. 1990) (affirming attorneys' fees that were more than three times the damages awarded in copyright infringement case); *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1262 (11th Cir. 2014) (affirming fees that were double the damages awarded); *see also Dixit*, 2021 WL 4927434, at *25 (awarding $1.2 million in fees in copyright infringement case litigated for only about three years and did not even reach summary judgment).

## IV.   DISH'S Taxable Costs

The Court properly found that DISH is entitled to taxable costs. (Decision at 38.) DISH's taxable costs fall into five categories and total $19,565.92. Defendants do not oppose the taxable costs requested by DISH. (Frank Decl. ¶ 19.)

1.   **Filing Fee**. The $400 case filing fee is a taxable cost under 28 U.S.C. § 1920(1). (Frank Decl. Ex. 5.) *Shropshire v. Towing & Auto Repair Mgmt. Corp.*, No. 8:20-cv-1931-TPB-CPT, 2021 WL 5496178, at *5 (M.D. Fla. Oct. 25, 2021).

2.   **Service Fees**. Fees for serving process or subpoenas through private process servers are taxable under 28 U.S.C.§ 1920(1) up to the Marshal's Service's rate of $65 per hour for each item served plus costs and expenses. *See E.E.O.C. v.*

*W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). DISH is properly awarded service fees <u>totaling $1,045</u> for 17 items that were served. (Frank Decl. ¶ 14, Exs. 6-22.)

3.     **Depositions.** Deposition costs are taxable under 28 U.S.C. § 1920(2) if "the deposition was wholly or partially 'necessarily obtained for use in the case.'" *E.E.O.C.*, 213 F.3d at 620-21 (quotation omitted). DISH is entitled to costs <u>totaling $15,520.07</u> for ten depositions that were used at summary judgment, trial, or both and were therefore necessary. (Frank Decl. ¶ 14, Exs. 23-36; Doc. 146, 164-165, 217, 298, 306-307, 310-311.)

Video recording the Fraifer, Sfeir, and Maqsood depositions is a taxable cost as the depositions were noticed for stenography and video recording, Defendants did not object, and video recording was necessary. (Frank Decl. ¶ 15.) *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996); *Doe v. Rollins Coll.*, No. 6:18-cv-1069-RBD-LRH, 2021 WL 3230424, at *6 (M.D. Fla. July 13, 2021).

Moreover, expedited transcript costs for the trial depositions of Whitehead, Abutaha, Elmokadem, and Ayoub are taxable (all others were standard). Expedited transcripts were necessary because Defendants took these depositions one to two weeks before trial and the transcripts had to be designated and filed with the Court shortly after the depositions were taken. (Doc. 306, 310.) *See McCullars v. Maloy*, No. 6:17-cv-1587-Orl-40GJK, 2020 WL 5822154, at *4 (M.D. Fla. Sept. 10, 2020).

4.     **Witness Fees.** DISH incurred witness fees <u>totaling $259</u>, consisting of a $40 attendance fee and mileage fees for four witnesses subpoenaed to testify at deposition or trial, which are taxable under 28 U.S.C. § 1920(3). (Frank Decl.

Exs. 37-40.) *See Pasternack v. Klein*, No. 8:16-cv-482-T-33CPT, 2019 WL 5111974, at *6 (M.D. Fla. Aug. 26, 2019) (taxing similar witness fees).

5.    **Trial Transcripts.** DISH incurred costs <u>totaling $2,341.85</u> for trial transcripts, consisting of $1,108.80 for a draft copy delivered the day after trial and $1,244.05 for the final transcripts received three weeks after trial. (Frank Decl. ¶ 16, Exs. 41-42.) The transcripts were used in preparing DISH's closing arguments and proposed findings of fact and conclusions of law. (*Id.*) Draft transcripts were necessary because DISH's closing argument was due two weeks after trial – before the final transcripts were delivered. (*Id.*) *See Luther v. Ouro Do Brasil*, No. 8:09-cv-2267-T35-TGW, 2013 WL 12156321, at *3 (M.D. Fla. Jan. 24, 2013).

## V.    <u>Conclusion</u>

DISH should be awarded reasonable attorneys' fees of $1,022,461.20 and taxable costs of $19,565.92.

## VI.    <u>Local Rule 3.01(g) Certification</u>

Filing Attorney certifies that he conferred with Defendants' counsel by email and telephone and the attorney hours requested in this motion are opposed.

Dated: February 3, 2022

/s/ Timothy M. Frank
Joseph H. Boyle (*pro hac vice*)
Timothy M. Frank (*pro hac vice*)
HAGAN NOLL & BOYLE, LLC
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Email:  joe.boyle@hnbllc.com
Email:  timothy.frank@hnbllc.com
*Attorneys for Plaintiff DISH Network L.L.C.*

James A. Boatman, Jr.
Florida Bar No. 0130184
THE BOATMAN LAW FIRM PA
3021 Airport-Pulling Rd. N., Ste. 202
Naples, Florida 34105
Telephone: (239) 330-1494
Email:  jab@boatman-law.com